UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER D. MAINS and LORI M. MAINS | : CASE NO. 3:01cv2402 (AWT) |
| Plaintiffs, | : |
| v. | : |
| SEA RAY BOATS, INC. | : |
| Defendant. | : AUGUST 30, 2006 |

**DEFENDANT'S OPPOSITION TO MOTION TO COMPEL**

This Court should deny Plaintiffs' motion to compel in its entirety because the discovery responses of the Defendant, Sea Ray Division of Brunswick Corporation (improperly designated in the Complaint as "Sea-Ray Boats, Inc.") ("Sea Ray"), at issue were fair and accurate and have been supplemented in an effort to resolve this dispute, Plaintiffs have unduly delayed the filing of this motion, and Plaintiffs either have known or have had access to the information that they now claim is new and justifies the relief that they seek for several years. Moreover, Plaintiffs' claims of wrongful discovery conduct on the part of Sea Ray and its counsel are completely unfounded. For all of these reasons, and because discovery closed on May 30, 2004, this Court should deny plaintiffs' motion to compel further responses and to reopen discovery.

**I.     INTRODUCTION**

Plaintiffs are seeking damages in connection with the purchase of a recreational boat (a Sea Ray Model 330DA) in 1998. They did not have an accident with the boat and did not sustain any personal injuries while using it. The boat simply did not perform as they expected. Plaintiffs are seeking in this case not only the return of their purchase price of this boat, but also seek to make a profit by asserting claims for attorneys fees and punitive damages. This is the

**ORAL ARGUMENT IS REQUESTED**

third time that Plaintiffs have purchased a recreational boat, and the Plaintiffs returned the two previous boats either for cash or credit toward a new boat.

This case sat dormant for well over a year until the Court issued an order earlier this year requiring the parties to submit a pretrial memorandum. In response, Plaintiffs sought an extension of that order so that the parties might explore settlement at a court-supervised settlement conference. That conference was held in May, but was unsuccessful.

Plaintiffs now seek to compel a further responses to Interrogatories 6-12 of Plaintiffs' Interrogatories of December 23, 2002, which concern complaints made by other consumers involving Sea Ray boats. Plaintiffs also seek to compel Sea Ray to provide a further expert disclosure. In addition, although discovery in this case has been closed since May 30, 2004, Plaintiffs request additional time in which to pursue further discovery.

In response to the pertinent Interrogatories, Sea Ray provided two responses, the first on March 21, 2003, and the second on April 20, 2004.[1] The latter response included a list of approximately one hundred thirty-three (133) complaints made by consumers concerning Sea Ray boats. (Ex. C to Mot. to Compel.) Although Plaintiffs now assert that they require more time to conduct discovery concerning the additional complaints as to which they seek disclosure, in the years since Sea Ray provided that list, Plaintiffs elected to conduct no further discovery, concerning either these 133 complaints or any other subject.

Plaintiffs have never served any requests for documents, nor have they taken any depositions. Although Sea Ray objected in part to Plaintiffs' Interrogatories, Plaintiffs elected not to challenge any of those objections or to move to compel any further response until more than two years after the close of discovery.

---

[1] The Supplemental Response is misdated April 20, 2003; it was actually served on April 20, 2004.

## II. ARGUMENT

### A. Plaintiffs' Motion to Compel Should Be Denied

Sea Ray's responses to Interrogatories 6-12 were fair and accurate, and any shortcoming in its expert disclosure has been rendered moot by Sea Ray's supplemental disclosure.

#### 1. Interrogatory 12

Plaintiffs' real issue in this motion relates to Sea Ray's response to Interrogatory 12, which requests that Sea Ray identify "consumer complaints, law suits or arbitration proceedings" made or brought against Sea Ray regarding any of ten specified problems, to the extent that it had not already done so in response to Interrogatories 6-11. In its responses of March 21, 2003, Sea Ray made a limited objection to Interrogatory 12 based on relevance:

> Sea Ray objects to this interrogatory insofar as it requests information pertaining to all models of Sea Ray boats. This request calls for information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. There are no additional consumer complaints other than those to be identified upon execution of a suitable protective order. There have been no such law suits or arbitration proceedings brought against Sea Ray.

(Sea Ray's Response to Interrog. 12.) Thus, as Plaintiffs acknowledge, Sea Ray has declined to provide information pertaining law suits against Sea Ray "on the basis that any other law suits do not pertain to the same model Sea Ray boat as the Plaintiff[s'] boat . . . ." (Mot. at 4.)

Plaintiffs assert that, following the execution to the Stipulation Regarding Confidentiality in 2004, they made further inquiries regarding law suits brought against Sea Ray, and that counsel for Sea Ray represented that there had been no law suits against Sea Ray regarding the subjects listed in Interrogatory 12. (Mot. at 3-4.) Significantly, Plaintiffs do not support this rash accusation by way of affidavit, nor indicate who supposedly made this statement, when, or under what circumstances. In fact, counsel for Sea Ray made no such representation. Any

representations made regarding law suits related only to law suits that concerned model 330DA boats. (See Sea Ray's Response to Interrog. 12; Branson Aff. ¶ 4.)[2]

Plaintiffs claim that they "recently came to be aware of the existence of law suits in the states of Ohio, California, Georgia, and Florida which involved or pertained to certain subject matter topics or categories listed in Interrogatory 12." (Mot. at 4.) Plaintiffs have identified two of the three law suits of which they claim to be aware. (Ex. E to Affidavit of James H. Rotondo ("Rotondo Aff.").)[3] Neither of those suits concerns a boat of model 330DA. (See Bentley Aff. ¶¶ 7-8 (*Palmetto Group of Florida, Inc. v. Sea Ray Boats, Inc.* concerned a model 460DA boat; *Debis Financial Services v. Brunswick Corp.* concerned a model 340DA boat).)[4]

Although Sea Ray stands by its position that Plaintiffs are not entitled to information concerning complaints relating to other models of boats, and that such information is irrelevant, Sea Ray has supplemented its response to Interrogatory 12 and has provided to Plaintiffs information concerning all law suits involving claims relating to exhaust resonance, water ingestion, and hull core moisture problems in Sea Ray boats for model years 1996 to the present for models 310DA, 330DA, 340DA, 330EC, 340AJ and 370EC. (Ex. F to Rotondo Aff.) These are the same models with respect to which Sea Ray stated that it would search for information responsive to Interrogatory 6, in which Plaintiffs requested information regarding boats of "the same or similar model as the subject boat identified in the Complaint." (Sea Ray's Response to

---

[2] A copy of the Affidavit of Maxwell Branson in support of Sea Ray's Opposition to Plaintiffs' Motion to Compel is attached hereto as Exhibit 1.

[3] A copy of the Affidavit of James H. Rotondo in support of Sea Ray's Opposition to Plaintiffs' Motion to Compel is attached hereto as Exhibit 2.

[4] A copy of the Affidavit of Rebecca Bentley in support of Sea Ray's Opposition to Plaintiffs' Motion to Compel is attached hereto as Exhibit 3.

Interrog. 6.) There are a total of four such law suits. None of those law suits pertains to a model 330DA boat.

Sea Ray respectfully submits that, even if their Motion to Compel were timely, Plaintiffs would not be entitled to any further response to Interrogatory 12.

### 2. Interrogatories 6-11

Interrogatories 6-10 ask that Sea Ray identify persons who have knowledge or information concerning efforts by Sea Ray to repair or remedy certain specified problems with Sea Ray boats. (Pls.' Interrog. 6-10.) Interrogatory 11 asks that, with respect to each such person who is a retail purchaser of a Sea Ray boat, Sea Ray provide additional information including "the year, model and H.I.N. of the boat, [and] the nature of the problem allegedly or reportedly encountered." (Pls.' Interrog. 11.)

Subject to its objections, Sea Ray's responses to those Interrogatories were complete and correct.[5] Although discovery remained open for more than one year after Sea Ray raised its objections to their Interrogatories, Plaintiffs did not seek to have any of Sea Ray's objections to those Interrogatories overruled or to compel any further response to their Interrogatories until June 30, 2006, more than two years after discovery had closed. Sea Ray's objections were, in any event, entirely proper. Moreover, subject to its objections, Sea Ray provided a substantial amount of information concerning the issues as to which Plaintiffs sought discovery, especially incidents of alleged water ingestion in boat engines. Plaintiffs can make no showing that any

---

[5] Cf. Fed. R. Civ. P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect . . . .") Because Sea Ray's responses to Interrogatories 6-11 were, subject to Sea Ray's objections, complete and correct, Sea Ray has no duty to amend those responses under Rule 26 (e)(2).

additional was or is necessary for them to pursue their claims. For these reasons, Plaintiffs' Motion to Compel a further response to Interrogatories 6-11 should be denied.

          a.        <u>Sea Ray's Objections and Response</u>

On March 21, 2003, Sea Ray served its initial Objections and Answers to Plaintiffs' First Set of Interrogatories. (<u>See</u> Sea Ray's Response to Interrogs. (Ex. A to Pls.' Mot. to Compel).) Sea Ray objected in part to Interrogatories 6-11, primarily because the Interrogatories were overbroad and Sea Ray could not provide an exhaustive list of such persons without incurring an undue burden:

> Sea Ray objects to interrogatories 6-11 on the grounds that they are overly broad and unduly burdensome. Sea Ray's records regarding consumer service have been kept on its CRMS system since approximately 1999. Information contained on this system may be searched via computer word searches. Searching records kept prior to the implementation of the CRMS system would involve a lengthy search through voluminous paper records, which are not organized according to specific complaints. Moreover, the CRMS search results do not reflect whether Sea Ray repaired or remedied any alleged problems, and do not reflect persons likely to be knowledgeable about any such efforts. Sea Ray also objects on the grounds that the term "same or similar model" is vague and confusing; notwithstanding said objection Sea Ray has limited the CRMS search results for hull related issues to the 310DA, 330DA, 340DA, 330EC, 340AJ, and 370EC (provided however, the 330EC, 340AJ, and 370EC are not similar in terms of engine placement in that the engines are located in center of the boat whereas the engines are further aft in the subject boat and other included models which would affect noise at the helm station and potentially other issues) . . . .
>
> Subject to and without waiving the above objection, Sea Ray has run computer word searches of consumer service records kept on its CRMS system to find the information requested by interrogatories 6-11. A list of persons (i.e. boat owners) identified as a result of these searches, along with corresponding years, models, H.I.N.'s, and complaints will be produced upon execution of a suitable protective order. To the extent Plaintiffs reasonably request additional information concerning any of these specific persons, Sea Ray will make a reasonable search of its records for the requested information. For each individual boat identified, various Sea Ray customer service personnel, dealership employees or persons employed at independent repair facilities may have knowledge; these person would be different for each individual boat, and it would be unduly burdensome to discover the names of such persons or the nature and the extent of knowledge each person has.

(Id. ¶ 6.)[6]  With respect to Interrogatories 7-10, which sought information pertaining to boats equipped with engines and exhausts systems of "the same model" as those on the Plaintiffs' boat, Sea Ray further objected that its computerized database is not capable of running a search based on a particular type of engine or exhaust system.  (Id. ¶ 7-10.)

Subject to its objections to Interrogatories 6-11, and after the Court's entry of the parties' Stipulation Regarding Confidentiality on March 17, 2004, Sea Ray provided a list of approximately 133 consumers who had made such complaints concerning Sea Ray boats on April 20, 2004.  (See Ex. C to Mot. to Compel.)  With respect each such complainant, Sea Ray identified the nature of the complaint or complaints made, as well as the hull identification number (H.I.N.), model year, and model of each boat that was the subject of those complaints.  (See Id.)

        b.  Sea Ray's Objections were proper

Plaintiffs contend that Sea Ray should be compelled to make a further response to those Interrogatories because Sea Ray maintains records of all consumer complaints that it receives. Specifically, Plaintiffs assert, but offer no supporting evidence, that Sea Ray is a member of the American Society for Quality ("ASQ"), and that, therefore, Sea Ray must have "a complete and detailed file pertaining to each and every consumer complaint made to it with respect to its products."  (Mem. of Law at 2.)  Investigation by Sea Ray's counsel has revealed, however, that ASQ imposes no such record keeping requirements on its members, and, in fact, ASQ imposes no requirements on its members whatsoever other than that they pay annual membership dues. Therefore, there is no basis for Plaintiffs' claim regarding Sea Ray's records.

---

[6] Sea Ray interposed other objections to those Interrogatories as well.  Sea Ray does not waive any of its objections.

Moreover, Plaintiffs' argument ignores the fact that Sea Ray objected in 2003 that an exhaustive search of its files "pertaining to each and every consumer complaint made to it with respect to its products" would be unduly burdensome. (Sea Ray's Response to Interrog. 6.) Sea Ray maintains thousands of paper files pertaining to consumer complaints. (Bentley Aff. ¶ 9.) Most of those files are in warehouses in several locations in Tennessee and Florida. (Id. ¶ 10.) Those files are organized by the consumer's last name, not by the type of complaint that the consumer has made. (Id. ¶ 11.) There is no efficient way in which those files can be searched to identify those consumers who have made particular kinds of complaints regarding particular models of boats. (Id. ¶ 12.) It was for that reason that Sea Ray asserted its objection based on burden, and agreed as a compromise to conduct a search on its computer database.

The database from which Sea Ray generated the list of complaints provided to Plaintiffs is known as the Customer Relationship Management System, or "CRMS." (See Sea Ray's Response to Interrog. 6; Smith Aff. ¶ 4.)[7] Sea Ray began using CRMS in approximately February of 1999. (Smith Aff. ¶ 4.) CRMS contains information regarding consumer complaints made to Sea Ray, including (a) the date of record entry, (b) the identity of the dealer from which the boat was purchased, (c) the model number and model year of the boat, (d) the plant at which the boat was manufactured, (e) the "priority," or severity, of the problem complained of, (f) the type of problem complained of, and (g) any narrative description. (Id. ¶ 7.) Sea Ray personnel entering information about a consumer complaint into CRMS must identify the problem complained of by choosing a category and description from a finite and pre-existing list. (Id. ¶ 8.)

---

[7] A copy of the Affidavit of Patrick Smith in support of Sea Ray's Opposition to Plaintiffs' Motion to Compel is attached hereto as Exhibit 4.

CRMS does not include a record of all complaints made by consumers regarding Sea Ray boats. For example, when a consumer complains of engine trouble to a Sea Ray dealer, the dealer may contact the engine manufacturer rather than Sea Ray, and Sea Ray may or may not be notified. (Id. ¶ 12.) Nor can CRMS be searched by engine or exhaust system type. (Id. ¶¶ 9-11.) Because CRMS records do identify the model number of the boat and type of problem complained of, however, Sea Ray submits that word search of CRMS was a reasonable means of searching for information in its possession that is responsive to these Interrogatories.

### c.  Sea Ray's search for complaints was adequate

Plaintiffs have known for more than two years that Sea Ray compiled Exhibit C based on a search of a computer database, and their arguments now in support of their motion are both demonstrably wrong and disingenuous. Without providing any specifics, Plaintiffs argue now that "this list [Exhibit C] was represented as being a complete and accurate response to Plaintiffs' Interrogatories 6-11 including responses regarding 'water ingestion' problems." (Mem. of Law at 5.)[8] Sea Ray, however, made no such representation. To the contrary, Sea Ray expressly indicated in its March 2003 objection and response that the list was generated by a word search of a computer database, and that the computer database did not contain all information that might be responsive to Plaintiffs' Interrogatories. (Sea Ray's Response to Interrog. 6.)

---

[8] Plaintiffs also claim that "[t]he Defendant's refusal to provide full and complete disclosure with respect to 'water ingestion' related problems experienced with Sea Ray boats has been purportedly based on the claim that there are many possible causes for 'water ingestion' occurring." (Mem. of Law at 7.) This assertion is incorrect. Counsel for Sea Ray did state in a letter dated June 19, 2006, that it did not concede that any of the other complaints identified in those responses arose under circumstances similar to those alleged by the Plaintiffs in the present case. (Ex. B to Rotondo Aff. at 2.) Sea Ray did not refuse to provide the requested information; it merely stated that it did not concede the relevance of information that it did in fact provide.

In response to a similar argument advanced by Plaintiffs' counsel more than two years ago, counsel for Sea Ray explicitly reminded Plaintiffs' counsel of the scope of the search that was made. In a memorandum dated May 20, 2004, Plaintiffs' counsel stated that "we noticed that the list did not include a number of Sea Ray owners known by the Mains to have had problems of the same or similar type about which discovery was sought . . . ." (Ex. H to Rotondo Aff.) On May 21, 2004, counsel for Sea Ray responded as follows:

> . . . I just want to remind you that we specifically advised you in our written responses as to exactly how we would search in Sea Ray's CRMS system for information concerning complaints about other Sea Ray boats. . . . We believe that the searches we ran were a reasonable approach to gathering information that was responsive to your discovery requests, and we produced the complete list of names that resulted from those searches to you, subject to the protective order. Nevertheless, if you have a specific list of people that you would like us to search for in the system, we would be willing to discuss it.

(Ex. I to Rotondo Aff.; see also Branson Aff. ¶ 2 (noting that Attorney Branson was formerly counsel for Sea Ray).) Plaintiffs let this issue sit for more than two years, and now recklessly claim that relevant information has been concealed.

          d.       Sea Ray's responses were adequate

Although Sea Ray provided responses subject to objections, Sea Ray did not fail or refuse to provide pertinent information to the Plaintiffs. To the contrary, the list in Exhibit C consists primarily of complaints relating to those issues most emphasized by Plaintiffs. Plaintiffs repeatedly assert that the Interrogatories requested information concerning incidents of water ingestion in boat engines because engine water ingestion is the real issue in this case. In fact, most of the 133 complaints listed in Exhibit C relate to "Engine/Water Ingestion," (See Ex. C to Mot. to Compel), which is precisely the information that Plaintiffs were seeking. Plaintiffs apparently did absolutely nothing with this information for more than two years. They sought

no additional discovery after Sea Ray provided this information, and never sought an extension of time in which to conduct additional discovery.

Even if Sea Ray's database word search missed some individuals who had water ingestion issues that might have been revealed on a more burdensome manual search of its records, Plaintiffs can make no showing that a list including additional complaints regarding the same problems is somehow necessary for them to pursue their claims, especially because they have taken no further discovery with respect to any of the 133 complaints that Sea Ray did identify more than two years ago.

### 3. Sea Ray's Expert Disclosure

Plaintiffs' Motion to Compel of June 30, 2006 argued that they were entitled to the "disclosure of expert testimony required by Rule 26(a)(2)," without specifying how Sea Ray's disclosure of Marine Surveyor Mr. Gregory T. Davis was inadequate. Any potential issue regarding Sea Ray's expert disclosure has since been mooted.

Sea Ray provided its expert disclosure concerning Mr. Davis to Plaintiffs on or about October 19, 2004. (Rotondo Aff. ¶ 4.) That disclosure consisted of Mr. Davis' report and a then-current curriculum vitae. (Id.)[9] Plaintiffs did not suggest at that time that this disclosure was in some way deficient. Indeed, after Sea Ray provided that expert disclosure, Sea Ray had no further contact with the Plaintiffs or their counsel until earlier this year, when counsel for Sea

---

[9] At that same time, Sea Ray also provided to Plaintiffs a curriculum vitae for Jerome M. Starczowski, who attended Mr. Davis' inspection of the boat and co-signed his report. Sea Ray's decision not to call Mr. Starczowski does not somehow mean that Sea Ray somehow failed to identify Mr. Davis as an expert. Indeed, Plaintiffs themselves initially disclosed five experts in this case. (See Ex. J to Rotondo Aff.) Subsequently, they indicated that one of those experts would not be offering expert testimony in this case "due to logistical and availability issues." (See Ex. K to Rotondo Aff.)

Ray sought to obtain Plaintiffs' portion of the Joint Trial Memorandum ordered by the Court on February 1, 2006. (Id. ¶ 5.)

Plaintiffs first asserted that Sea Ray's expert disclosure was deficient in a memorandum sent on June 5, 2006. (Id. ¶ 6.) In that memorandum, Plaintiffs' counsel stated that "a review of the file indicates that although we ultimately received copies of the survey report from Sea Ray's surveyors, no Rule 27 [sic] reports were ever provided by Sea Ray . . . ." (Ex. A to Rotondo Aff. at 2.) Counsel for Sea Ray responded by means of a letter dated June 19, 2006, noting that Plaintiffs' counsel had not indicated in what respect Sea Ray's expert disclosure was allegedly deficient. (Ex. B to Rotondo Aff. at 3.) At no time have Plaintiffs specified any deficiency in that disclosure.

After Plaintiffs' Motion to Compel was filed on June 30, Sea Ray determined that its prior disclosure did not indicate the compensation to be paid to Mr. Davis and did not include a listing of cases in which he has provided expert testimony. Accordingly, Sea Ray has produced a supplemental expert disclosure concerning Mr. Davis. That disclosure consists of (1) an additional copy of the expert report described in Plaintiffs' Motion that was provided to Plaintiffs in October, 2004, (2) a current curriculum vitae for Mr. Davis, which includes a list of cases in which he has provided expert testimony, and (3) information concerning both the rates charged by Mr. Davis for his services and the total fees paid by Sea Ray to Mr. Davis to date. (See Ex. C to Rotondo Aff.)

When Plaintiffs filed their June 30, 2006 Motion to Compel, they attached a document that was concededly subject to the Court-ordered Stipulation Regarding Confidentiality, without taking the appropriate steps to protect the attachment. After this oversight was brought to the attention of Plaintiffs' counsel, and he notified the Court, the Court held a conference, in which

-12-

the Court ordered Plaintiffs to file a motion for leave to file that document under seal, and to refile their June 30, 2006 Motion to Compel following the Court's ruling on their motion for leave to file under seal. The Court expressly indicated that Plaintiffs should not file a new Motion to Compel.

Nevertheless, Plaintiffs did not simply refile their June 30, 2006 papers. Plaintiffs' August 3, 2006 Motion to Compel now requests permission to perform further discovery regarding Sea Ray's expert witness, Gregory T. Davis. This request was not made in Plaintiffs' original Motion to Compel. In effect, Plaintiffs have filed a new Motion to Compel, seeking additional discovery. To the extent that Plaintiffs request additional discovery regarding Mr. Davis, their Motion to Compel should be denied because it violates two Court Orders, namely, the Court's Order of June 16, 2006, under which "[a]ny motions to compel shall be filed by no later than June 30, 2006," and the Court's subsequent Order indicating that the Plaintiffs should refile their June 30 Motion to Compel rather than filing a new Motion.

Even if Plaintiffs had requested this relief in their June 30, 2006 Motion to Compel, their claim would be without merit. Plaintiffs claim that Sea Ray's expert "was not disclosed until July, 2006" and that they did "not know[ ] which expert Defendant intended to rely on at trial until then." Pls.' Mot. at 6. These statements are disingenuous at best.

Both Plaintiff Peter Mains and Plaintiffs' counsel were personally present when Mr. Davis inspected the boat on July 14, 2004. (See Ex. A to Ex. C to Rotondo Aff. at 1.) Subsequently, as noted above, Sea Ray provided Mr. Davis' report and curriculum vitae to Plaintiffs on or about October 19, 2004. In his memorandum of June 5, 2006, Plaintiff's counsel admits to having received this report. (Ex. A to Rotondo Aff. at 2.)

-13-

Plaintiffs' argument implies that they were unable to depose Mr. Davis after receiving his expert report and his curriculum vitae in 2004, either because they did not know the rate that he was to be paid for his services, or because they did not have a list of the cases in which he had previously given testimony. This is absurd. Plaintiffs never asked for this information at any time after they received Davis's report in 2004. Indeed, if this diversity action were pending in Connecticut state court, Plaintiffs would not have been entitled to obtain that information <u>unless</u> they took Mr. Davis' deposition.[10] Although state court rules are not applicable here, the fact that expert depositions are routinely and necessarily taken without prior knowledge of the expert's rate of compensation demonstrates that Plaintiffs could in fact have taken Mr. Davis' deposition in October, 2004.

B.     **The Court Should Not Reopen Discovery**

There is no reason for the Court to reopen discovery now. The deadline for discovery passed more than two years ago, on May 30, 2004.[11] Plaintiffs have not identified any justification for permitting additional discovery at this point.

---

[10] The pertinent rule provides as follows:

> Discovery of facts known and opinions held by experts . . . may be obtained <u>only as follows</u> . . . . (A) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (B) Unless otherwise ordered by the judicial authority upon motion, a party may take the deposition of any expert witness disclosed pursuant to subdivision (1) (A) of this rule in the manner prescribed in the rules of practice . . . governing deposition procedure generally.

Conn. Prac. Book § 13-4 (1)(a)(emphasis added).

[11] As noted above, Sea Ray provided its disclosure of Mr. Davis on or about October 19, 2004. Although Sea Ray sought to have the boat inspected by Mr. Davis prior to the close of discovery, there were a number of delays in arranging the inspection, including the presence of

### 1. Plaintiffs Have Long Been Aware of the Limited Extent of Sea Ray's Responses to Their Interrogatories

    a. Plaintiffs have been aware of complaints not identified in Sea Ray's discovery responses since at least December 20, 2002

Plaintiffs state that "[t]he basis of this motion is that the Plaintiffs have reason to believe, *upon information and belief recently made know to Plaintiffs*, that the Responses and Supplemental Responses to Interrogatories 6-11 . . . were not complete . . . ." (Mot. at 2 (emphasis added).) In fact, as set forth above, Sea Ray's Objections and Answers of March 21, 2003, plainly stated that Sea Ray would *not* provide all responsive information due to, inter alia, the unduly broad nature of the Interrogatories and the unreasonable burden that an manual search through its paper files would require.

Moreover, Plaintiffs have had some of the information that they are now claiming to be seeking for years. (See Ex. H to Rotondo Aff. (memorandum of May 20, 2004).) Indeed, Plaintiffs claimed in their discovery responses of December 20, 2002 that they were aware of "numerous" engine replacements and other repairs performed at just one marina in Connecticut in response to engine failures purportedly similar to their own. (Pls' Response to Interrog. 2, ¶ (u) (describing Plaintiffs' expert Mr. Tom Wicander as General Manager of a marina located in Westbrook, Connecticut, that "has done numerous exhaust replacements and/or engine replacements or repair . . . on Sea Ray's with similar engine failures to [Plaintiffs']."))

---

shrink wrap on the boat, Mr. Mains' interest in being present during the inspection and the need to complete the depositions of plaintiffs' disclosed experts before the inspection by Sea Ray's expert. (Branson Aff. ¶ 3.) For these reasons, Mr. Davis inspected the boat that is the subject of this action following the close of discovery on May 30, 2004. His report was prepared after he performed that inspection. Sea Ray has not taken any depositions or served any written discovery requests since May 27, 2004.

> b.  Plaintiffs have been aware for years that several models of Sea Ray boats have suffered some incidence of engine water ingestion

Plaintiffs assert that "the matter of 'water ingestion' with respect to Sea Ray boats has been found to be endemic to various models of Sea Ray boats and not merely limited to the particular model in question this case" but that "this fact has only come to be known recently by the Plaintiffs." (Pls.' Mot. at 5.)[12]  That representation is simply wrong.

Sea Ray's responses to Plaintiffs' Interrogatories indicated that other models of Sea Ray boats also suffered from some incidence of water ingestion.  The list of consumer complaints provided to Plaintiffs in response to Interrogatories 6-11 included complaints of engine water ingestion that were identified as concerning boats of four different specified models.  (See Ex. C to Mot. to Compel.)  This information was presumably also available to Plaintiffs through their expert, Mr. Wicander based on his marina's alleged work on Sea Ray boats "with similar engine failures to [Plaintiffs']."  (Pls' Response to Interrog. 2, ¶ (u)).

In summary, there is no reason for which Plaintiffs could not have sought the additional discovery to which they now claim to be entitled prior to the close of discovery on May 30, 2004.

---

[12] Specifically, Plaintiffs claim that this knowledge is established by documents that "only recently became known and available to Plaintiffs' counsel through collateral sources." (Pls.' Mem. at 7.)  If any pertinent information "only recently became known" to Plaintiffs or their counsel, which Sea Ray expressly denies, this lack of knowledge did not result from Sea Ray's failure to comply with any discovery request.  Plaintiffs never requested any documents from Sea Ray.  Plaintiffs do not, and cannot, claim that any of the documents to which they refer were within the scope any of their Interrogatories.

Indeed, of the three documents cited by Plaintiffs, only one originated with Sea Ray.  That document concerned only certain models of boat and certain model years, not including boats of the same model or the same model year as Plaintiffs' boat.  (See Ex. A to Pls.' Mem.)  The other two documents are service bulletins issued by the engine manufacturer, a separate corporation.  (See Bentley Aff. ¶¶ 4-5.)  Those bulletins concern engine water intrusion generally and do not specify any particular boat model or year.  (See Ex. B-C to Pls.' Mem.)

### 2. The Information Sought in Plaintiffs' Motion to Compel Does Not Justify Further Discovery

#### a. Requests for Documents

After failing to file <u>any</u> requests for production during the discovery period, Plaintiffs now argue that they are entitled to "a reasonable period of time after receiving such compliance in which to request documents pertaining to the same." (Mot. at 6.) Plaintiffs' argument fails to explain why any supplemental responses at this time would justify additional discovery when they failed to seek any additional discovery in response to the disclosure of 133 complaints in 2004.

Plaintiffs' argument that some of the other Sea Ray boat owners are in Connecticut does not change this result. In 2004, they knew about 133 complaints, and elected to do absolutely nothing with that information for more than two years. Moreover, contrary to the representations made to this Court in this motion, they knew that these types of repairs were being performed in Connecticut almost four years ago. Plaintiffs' December 20, 2002 discovery responses indicate that they have had actual awareness of "numerous" repairs performed at a marina in Connecticut on other Sea Ray boats. (Pls' Response to Interrog. 2, ¶ (u).)

In summary, the facts simply do not support Plaintiffs' suggestion that they would have pursued further discovery in a timely manner if only they had been aware of other complainants located in Connecticut. Had Plaintiffs wished to seek further discovery pertaining to boats or boat owners located in Connecticut, there is no reason for which they could not have sought that discovery between the filing of their Complaint in December of 2001 and the close of discovery approximately two and a half years later.

### III.  CONCLUSION

For the foregoing reasons, Sea Ray respectfully requests that the Plaintiffs' Motion to Compel be denied.

DEFENDANT, SEA RAY BOATS, INC.

By    /s/ Daniel J. Foster
James H. Rotondo (ct05173)
jhrotondo@dbh.com
Daniel J. Foster (ct24975)
djfoster@dbh.com
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
(860) 275-0100
(860) 275-0343 fax

### CERTIFICATION

I hereby certify that on this date a copy of foregoing **Defendant's Opposition to Motion to Compel** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Daniel J. Foster
Daniel J. Foster (ct24975)
