**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PETER D. MAINS and | : CASE NO.  301 CV 2402 (AWT) |
| LORI M. MAINS | : |
| | : |
| **Plaintiffs,** | : |
| vs. | : |
| | : |
| SEA RAY BOATS, INC. | : |
| | : |
| **Defendant.** | : SEPTEMBER 18, 2006 |

### PLAINTIFFS' SUR REPLY TO DEFENDANT'S OPPOSTION TO MOTION TO COMPEL

This is the Plaintiffs' Sur Reply to the Defendants' Opposition to the

Plaintiffs' Motion for Order to Compel Disclosure and Discovery (hereinafter

referred to as "Motion to Compel").  The Defendant contends that the Plaintiffs'

motion should be denied because the Defendant's prior responses to the Plaintiffs'

discovery were "fair and accurate" and "have been supplemented in an effort to

resolve this dispute".  The Defendant also contends that the Plaintiffs' "unduly

delayed" the filing of their motion and that the Plaintiffs "either have known or

have had access to the information that they now claim is new and justifies the

relief they seek for several years".  (Defendants' Opposition to Motion to Compel

p.1)

On the basis of the reasons set forth below, the Plaintiffs contend that the

Defendants' assertions are grossly incorrect and/or inaccurate and only serve as

further evidence of the Defendants' misleading conduct which 1) caused the

Plaintiffs to accept the current Sea Ray boat from the Defendant when the first Sea

Ray boat proved to be grossly defective and 2) prevented the Plaintiffs from being

aware of the true and full extent of the "water ingestion" problems which

permeated the engines throughout many models of Sea Ray boats.

The Plaintiffs accepted the present 1998 Sea Ray Model 330 DA boat as part

of a settlement with Sea Ray in 1998 where as the Sea Ray boat they had

previously purchased proved grossly defective in so many respects that one Sea

Ray Representative advised the Plaintiffs that "that boat should never have left the

factory".

Prior to their purchase of the initial Sea Ray boat, the Plaintiffs had owned a

smaller Chris Craft boat of new design and power for purposes of waterskiing and

similar recreational use. When the design and power of that boat was found to be such that it failed to properly perform for any recreational use, the manufacturer unilaterally offered to take that boat back and return the purchase price to the Plaintiffs. No claims were asserted by the Plaintiffs, no demands were made against the manufacturer, no litigation or arbitration was necessary. The boat was simply found to have been improperly designed and powered and the manufacturer recognizing its mistake, simply did the right thing and returned the purchase price to the purchaser and discontinued any further production of that model the same year it was introduced.

Here the Plaintiffs, after having patiently waited for over three years to have Sea Ray correct the numerous structural and mechanical problems admitted by Sea Ray to have been in existence with this boat, after having given up the boat in order to have it taken back to the factory for months of repair only to find many of the agreed upon repairs not to have been complete, additional damage having been sustained to the vessel and a retrofit exhaust system having been installed with no true or accurate explanation whatsoever for same having been given, found themselves with a boat whose engines had been denigrated to the extent of being

un-repairable and to the point where they could not be safely relied upon and their

reasonable longevity assured. As such, the Plaintiffs do not "seek to make a profit

by asserting claims for attorneys fees and punitive damages" (Defendants

Opposition to Motion to Compel p.1); they only seek the return of the purchase

price for a boat they had not been able to make reasonable use of prior to June 10,

2001 and absolutely no use of since then. They do not seek to make a profit, they

only seek the recovery of the attorneys fees and expenses they have incurred and

reasonable compensation for the Defendants' wrongful and deceitful conduct from

the time they were induced to accept the subject boat in lieu of seeking the return

of the price paid for the first Sea Ray boat through the point of Sea Ray's failure to

provide appropriate operating instructions for the new retro fit exhaust system

installed without their knowledge or approval. In addition to having their boat's

engines ruined by the consequence of "water ingestion" over a period of time since

its purchase, the Plaintiffs asserted claims against Sea Ray for the various other

numerous defects and deficiencies set forth with particularity in Interrogatory 12.

1. Interrogatory 12

Plaintiffs filed an initial discovery in December, 2002. After requesting repeated extensions for responding to same, the Defendant finally responded on or about March 21, 2003 in which only limited responses were provided or various objections were raised. On or about April 20, 2004, more than a year after its initial response and barely a month before the closing of discovery on May 30, 2004 the Defendant filed a Supplemental Response in which additional information it provided was a list of names of customers purported to have purchased Sea Ray boats who experienced problems similar to those experienced by the Plaintiffs with the subject boat.

Throughout the discovery process between December, 2002 and May, 2004 the Defendant consistently maintained that it was only required to respond to discovery pertaining to problems involving Sea Ray Model 330DA boats and that discovery regarding other Sea Ray model power boats was inappropriate and/or irrelevant as different models were dissimilar to the Plaintiffs' boat. During that period, based on the discovery responses of the Defendant and the information then available/obtainable by or on behalf of the Plaintiffs through collateral sources, the Plaintiffs had no knowledge that the "water ingestion" problems found to exist with

the Plaintiffs Sea Ray 330 DA model were also endemic to a specific number of other Sea Ray model boats having similar engine/drive configurations (commonly referred to as "V-drive" configuration).  While Plaintiffs were aware that "water ingestion" problems had been experienced with many Sea Ray boats and that numerous engines had been replaced by Sea Ray, the exact extent, scope and identification of the commonality of the problem to boats equipped with V-drive/collector exhaust systems was not known to them or their legal counsel until early 2006 when a copy of the Sea Ray Info Gram dated October 11, 2001, Exhibit A to Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel first came into their possession from collateral sources.

In response to the Plaintiffs' December 2002 Interrogatory 12 which requested that Sea Ray, to the extent it had not done so in answering other interrogatories, identify "consumer complaints, lawsuits or arbitration proceedings, made, asserted or brought against" it since 1996 regarding ten specific types of problems, Sea Ray objected to same on the basis that it requested information pertaining to all models of Sea Ray boats and that it called for information that was "irrelevant, immaterial and not reasonably calculated to lead to the discovery of

admissible evidence".  (Objection and Answers to Plaintiffs' First Set of

Interrogatories dated March 21, 2003)  As previously indicated in Plaintiffs'

Motion for Order Compelling Disclosure or Discovery, Sea Ray also expressly

stated: "There have been no such lawsuits or arbitration proceedings brought

against Sea Ray."  It did not say that there were no lawsuits or arbitration

proceedings against Sea Ray with respect to the same model Sea Ray boat as the

one in question.  The response was, by anyone's reasonable interpretation, a

statement that there had been no lawsuits against Sea Ray with respect to any Sea

Ray boats regarding any of the various categories problems specified in the

Interrogatory.

As evidenced by the affidavit of the Plaintiffs counsel John L.  Senning

attached hereto as Exhibit A, subsequent to the Defendants filing of its initial

Response to the Plaintiffs' First Set of Interrogatories in March of 2003 as well as

subsequent to the Supplemental Response in late April, 2004 inquiries were made

on various occasions of the Defendants then legal counsel as to whether or not Sea

Ray had become involved in any such legal actions or arbitration proceedings.

Such inquiry was further renewed in various telephone conferences with Sea Ray's

legal counsel during the summer and early fall of 2004 and the response on each

occasion was in a negative.  At no time was there any indication in such response

that it was limited to the existence of any such proceedings with respect to Sea Ray

Model 330DA only.  In fact the Defendant acknowledges that the Plaintiffs'

Interrogatories and the request for information as to same pertained to Sea Ray

boats of "the same or similar model as the subject boat identified in the

Complaint".

Although the Defendant Sea Ray has now finally, by way of its

Supplemental Response dated August 23, 2006 disclosed the existence of four

lawsuits, three of which involve water ingestion problems with Sea Ray boats

equipped with a similar V-drive propulsion units and original collector type

exhaust systems, such disclosure does not render the Plaintiffs' instant motion

moot or satisfied with respect to the Defendants obligation to supplement prior

discovery responses as required by Rule 26(e) of the Federal Rules of Civil

Procedure.

As a result of information obtained by the Plaintiffs' counsel through

collateral sources only as recently as the spring of 2006, including materials

prepared by the Defendant itself, it is clear that Sea Ray has not been making any

distinction between vessels equipped with V-drive propulsion and collector type

exhaust in dealing with the costs and consequences of "water ingestion" problems.

This is most vividly demonstrated in Sea Ray's own monograph publication "Info

gram" dated October 11, 2001 authored by Nancy Luster, V/P Customer/Dealer

Service attached to Plaintiffs' Motion to Compel dated June 30, 2006 as Exhibit

"A". Although that publication makes reference to Sea Ray Models 310 DA, 340

DA, 370 DA, 380 DA, 400 DA and 410 DA of 1999 to 2001 model years, the

power, V-drive and collector type exhaust system set up and configuration is

substantially, if not exactly, the same as the Plaintiffs' Sea Ray 330 DA; the only

difference being the production year. The Defendant has never offered any

evidence or assertion that there is any significant or substantial difference between

these models except their size. In order to have need to develop the detailed

materials such as those set forth in that publication, it is clear that the underlying

"water ingestion" problems experienced with Sea Ray boats equipped with V-drive

power units and collector exhaust systems must have pertained for some time

without any distinction being made between recent model years, certainly not in

the case of a one year older model with exactly the same configuration.

The Plaintiffs requested information pertaining to lawsuits and/or

arbitrations with respect to the various specific problem areas identified in

Interrogatory 12.  Clearly, Sea Ray has been aware of "water ingestion" problems

involving a wide variety of Sea Ray model ranges similar to that of Plaintiffs both

in V-drive configuration and type of exhaust system.  It is not within the

Defendants' province or discretion to unilaterally apply its own determination as to

what boats are similar and what boats are not, when all of the boats in question that

are similar to the Plaintiffs have or had the same engine V-drive configuration and

exhaust system and have been symptomatic of the same water ingestion problem.

The Plaintiffs were entitled to full and complete disclosure as to the existence of

lawsuits and/or arbitration proceedings involving such vessels with the same

problems within a reasonable time of Sea Ray becoming subject to same.  The

Plaintiffs then may avail themselves of such further discovery against Sea Ray or

such independent investigation as they so choose.  Sea Ray's failure to do so on a

timely basis years ago has effectively denied the Plaintiffs their rightful

opportunity to investigate such problems and/or to collaborate and/or consult with

the attorneys and/or experts involved in such proceedings in the pursuance of their

own claims.

While Sea Ray has now finally made disclosure of other actions involving

problems similar to those experienced by the plaintiffs herein, still contending that

such information is "irrelevant", such disclosure at this time is absolutely

meaningless unless the Plaintiffs, at last having received such information, are

allowed a reasonable opportunity and period of time in which to pursue discovery

limited to same.

2.  Interrogatories 6-11

Interrogatories 6-10 requested that the Defendant identify all persons who

had knowledge or information regarding efforts by Sea Ray to repair or remedy

various specific problems with Sea Ray boats.  Interrogatory 11 further requested

that, with respect to retail purchasers of Sea Ray boats experiencing such

problems, Sea Ray provide additional information including the year, model, Hull

Identification Number of the boat in question and the nature of the problem

encountered.  See Exhibit "A" to Plaintiffs' Motion to Compel.  On or about

March 21, 2003 the Defendant served its initial Objections and Answers to said

Interrogatories 6-11 essentially claiming, <u>inter alia</u>, that they were overly broad and

that the requested response could not be provided without undue burden on it.  The

Defendant in its Opposition to Motion to Compel has set forth in its entirety the

complete text of its objection including an extensive purported explanation of its

consumer service recordkeeping system "CRMS".  The Defendant goes to contend

in said Objection to Motion to Compel that its initial objections were proper and

that the Plaintiffs' Motion to Compel Sea Ray to make a further response to those

Interrogatories because it is required to maintain records of all consumer

complaints received should be denied.

Sea Ray contends that Plaintiffs' assertion that Sea Ray is required by the

American Society for Quality ("ASQ") to keep such specific and detailed records

regarding consumer complaints is false and essentially unfounded.  In this regard

the Defendant states "Investigation by Sea Ray's Counsel has revealed, however

that ASQ imposes no such recordkeeping requirements on its members, and, in

fact, ASQ imposes no requirements on its members whatsoever other than that they

pay annual membership dues.  Therefore, there is no basis for Plaintiffs' claim

regarding Sea Ray's records."  Defendant's Opposition to Motion to Compel, P.7

In point of fact, the Defendant's representations with respect to the absence

of any obligation to maintain specific recordkeeping requirements in accordance

with ASQ prescriptions are absolutely incorrect and false.  Sea Ray's own web site

contains substantial specific material and text regarding the fact that it claims to be

"the first pleasure boat manufacturer to be <u>certified</u> for meeting the high ISO 9002

standards and that its boats "…not only meet but exceed the standards set by the …

International Organization of Standards (ISO) (Emphasis added).  See, Sea Ray

Website "History" attached hereto as Exhibit C.  The Defendant has also asserted

in other publications that, in addition to being so "certified for meeting the highest

standards of ISO 9002 Quality Assurance standards", it has maintained that

certification for "over eight years".  See, Sea Ray Website, "Industry Awards"

attached hereto as Exhibit C.

The Plaintiffs' counsel first became aware of Sea Ray's claims regarding

ISO/ASQ certification in late 2005.  Upon further investigation in late 2005 and

early 2006 it was first learned that in order to meet ISO/ASQ certification status

and to maintain same in the future you must meet and maintain certain

prescriptions and record keeping requirements regarding consumer complaints.

These requirements are set out in the "American National Standard" a publication

of the American Society for Quality and specifically referred to as the "Quality

Management Systems – Requirements".  A copy of same is attached hereto as

Exhibit B.  Among other "Quality Management Systems –Requirements" are

specific requirements regarding the appointment of a "Management

Representative" (Section 5.5.2 ANSI/ISO/ASQ Q9001-2000) whose

responsibilities include "ensuring that processes needed for the quality

management system are established, implemented and maintained (Section

5.5.2(2).  Section 7.2 of the American National Standard also provides

requirements pertaining to "customer-related processes including customer

complaints" (Section 7.2.3(c) ).  Additional recordkeeping requirements with

respect to the purchasing of product and conformity of same are prescribed in

Section 7.4.1 "Purchasing process" and incorporate by reference the recordkeeping

requirements set forth in Section 4.2.4 "Control of Records".  Section 4.2.2 Control

of Records specifically provides "Records shall be established and maintained to

provide evidence of conformity to requirements and of the effective operation of the quality Management system.  Records shall remain legible, <u>readily identifiable and retrievable</u>.  Documented procedures shall be established to define the controls needed for the identification, storage, protection, retrieval, retention time and disposition of records" (Emphasis added). See Exhibit B attached hereto.

Having been subject to meeting such specific consumer relation record keeping requirements in order to first obtain ISO certification and then maintain such status for over the past eight years, the Defendant can hardly complain that the requirement to provide answers to the information requested in Interrogatories 6-11 would be "unduly burdensome" when it was required to make such records "readily identifiable and retrievable" as part of the compliance with the American National Standard "Quality Management Systems – Requirements".

Under such circumstances while the Plaintiffs' first justifiably accepted the Defendant's claim that the information requested by Interrogatories 6-11 would be difficult if not impossible to retrieve, it has become clear and evident by reason of the Defendant's own assertion as to its ISO/ASO certification, that it was required to keep such records of consumer complaints and maintain them in a "readily

identifiable and retrievable" manner.  As such the Plaintiffs are entitled to seek full,

accurate and complete responses to Interrogatories 6-11 now that it is evident that

the Defendant's initial responses were substantially less than same and now

apparently deliberately so.

3.  Sea Ray's Expert Disclosure

        As indicated in Plaintiffs' Motion to Compel, the Plaintiffs contend that they

were entitled to the Defendants' timely disclosure of expert testimony as required

by Rule 26(a)(2).  The Plaintiffs, as appears by the affidavit of their counsel John

L. Senning, affirm that after agreeing informally to allow the Defendant a

reasonable period of time after the close of discovery in May of 2004, the

Defendant did not inspect the subject vessel until mid July of 2004 and despite

numerous requests by Plaintiffs' attorney did not provide a copy of any inspection

report pertaining to same until months later in late October, 2004.  The fact that the

Defendants did not conduct a survey of the vessel until mid-October, 2004 had

nothing to do with the fact that the boat was covered or "shrink wrapped".  It has

always been securely covered since it was laid up for safety and security reasons.

The delay was also not due to any unavailability of the Plaintiff Peter D. Mains

who was always available upon reasonable notice.  The delay was more likely due to the Defendant's inability to find any one with marine experience likely to support the Defendants' position in the face of an industry wide "water ingestion" and core saturation problems experienced with certain models of Sea Ray boats.

The Defendant's surveyor's report that was finally provided by the Defendant and received by Plaintiffs' counsel in late October, 2004 consisted of a narrative report covering various aspects of the subject vessel which was apparently prepared for some time after its inspection by two individuals on behalf of the Defendant.  The report does not indicate whose areas of expertise was being applied to a particular condition of the vessel being commented upon, whose opinion was being expressed or upon whose conclusions the statements were formed.  The report was signed by two separate individuals without any indication of whether one or the other or both would be relied upon by the Defendant Sea Ray; either as part of that report, part of that submission or in any other response by or on behalf of all of Defendant Sea Ray.

In spite of requests made of Defendants' then counsel, by the Plaintiffs' attorney, as to whose opinions were expressed in the purported survey report

and/or whether Sea Ray intended to rely on both or only one of the individuals who

signed same, no response or Rule 26(a)(2) report in this regard was ever provided

until Defendant finally provided a Defendants' Supplemental Disclosure of Expert

Witness to the Plaintiffs' attorney on or about July 15, 2006.  The need for Rule

26(a)(2) disclosure in appropriate form and content was called to the attention of

the Defendants' Counsel on a number of occasions between mid-October, 2004

and March, 2006.  It was not the obligation of the Plaintiffs' counsel to advise the

Defendant of all the deficiencies or omissions of any prior submission.  A reading

of the Rule by the party preparing the report or disclosure is all that is required to

compare the documents content and compliance.

The Defendants first disclosure of any experts did not come until five

months after the close of discovery in late May, 2004.  As the Defendants failed to

provide a report in full compliance with Rule 26(a)(2) including as simple a

designation of whether the Defendant intended to call one or the other or both of

the parties who signed the report or exactly which purported expert would testify

as to what, the Plaintiff was not required to guess or predict whether the Defendant

would rely on any aspect of same.  That is the exact purpose of the Rule 26(a)(2)

disclosure which the Defendant did not make until July 12, 2006.

Having at last made a disclosure in compliance with Rule 26(a)(a) and at last

indicated upon which purported expert the Defendant would rely, the Plaintiffs

should ask least be allowed a reasonable opportunity and time period in which to

pursue such limited discovery as they so choose, if any, with respect to the now

disclosed witness and the subject about which he would testify.  As appears by the

affidavit of the Plaintiffs' attorney, John L. Senning, the Defendants' then attorney,

Deborah Russo, was requested to provide an expert disclosure in compliance with

the Rule 26(a)(a) both before and after receipt of the October 15, 2004 "inspection

report" prepared by Davis Consulting Group.

Conclusion

For the foregoing reasons, the Plaintiffs, Peter D. Mains and Lori Mains,

respectfully request that their Motion to Compel be granted to the extent that the

Defendant has not yet made full disclosure as required and that, to the extent the

disclosure requested has now been made or will be required to be made of the

Defendant by this Court, a reasonable period of time not to exceed ninety (90) days

19

after such compliance be allowed the Plaintiffs in which to conduct such further

limited discovery as they see fit.


                **THE PLAINTIFFS**
               **PETER D. MAINS and**
               **LORI M. MAINS**


               /s/ John L. Senning
               ct05807
               The Essex Law Group
               18 Saybrook Road,
               Essex, CT  06426
               Phone:  (860) 767-2618
               Fax:  (860)767-2740
               Email:  jlssealaw@aol.com
               Their Attorney