# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **PETER D. MAINS** and **LORI M. MAINS** : | CASE NO. 301 CV 2402 (AWT) |
| : | |
| **Plaintiffs,** : | |
| vs. : | |
| : | |
| **SEA RAY BOATS, INC.** : | |
| : | |
| **Defendant.** : | SEPTEMBER 19, 2006 |

### AFFIDAVIT OF JOHN L. SENNING

STATE OF CONNECTICUT    )
                                             ) Essex
COUNTY OF MIDDLESEX    )

I, John L. Senning, being duly sworn do depose and say:

1. I am over the age of 18 and make this affidavit based on personal knowledge.

2. I am a member of the bar of the State of Connecticut and the United States District Court of the District of Connecticut.

3. I have represented the Plaintiffs in this action, Peter D. Mains and Lori M. Mains, since the spring of 2001 in connection with the material problems and defects found to exist in the 1998 Sea Ray 330 DA power boat which is the subject of this action.

4. Once it was found to be necessary to institute legal action against Sea Ray in order to assert the Mainses' rights and interests, I subsequently had numerous communications, both oral and in writing, with Sea Ray's local counsel Maxwell Branson, Esq. then of Day, Berry & Howard between January, 2002 and June, 2004 regarding various aspects of this matter.

5.     After receiving the Defendant's March 21, 2003 initial responses and objections to the Plaintiffs' First Set of Interrogatories dated December 23, 2002, in the context of negotiating the subsequent Stipulation Regarding Confidentiality and in connection with receiving the Defendant's Supplementary response to the Plaintiffs' Interrogatories in late April 2004, I made periodic inquiry of Attorney Branson as to whether Sea Ray was involved in any litigation proceedings involving what appeared to be commonly referred to throughout the marine industry as "water ingestion" problems and/or "core saturation" problems. In most of those conversations, if not all, I made reference to Sea Ray's express statement in its response to Plaintiffs Interrogatory 12. Interrogatory 12 requested Sea Ray to identify, to the extent not already identified in response to previous interrogatories, all consumer complaints, lawsuits or arbitration proceedings made, asserted or brought against Sea Ray since 1996 with respect to ten (10) specifically identified problems pertaining to Sea Ray boats. Although Sea Ray objected to this interrogatory in so far as it requested information pertaining to "all models of Sea Ray boats", it also responded stating "There are no additional consumer complaints other than those to be identified upon execution of a suitable protective order. <u>There have been no such lawsuits or arbitration proceedings brought against Sea Ray</u>." (Emphasis added.) This response did not in anyway, expressly or inferentially, indicate that it was limited to a particular model of Sea Ray boats at issue in this case.

6.     More than a year later, on or about April 20, 2004, Sea Ray provided a Supplemental Response in which it purported to list all of the consumer complaints received by Sea Ray with respect to "water ingestion" and/or "core saturation". This list

2

included a number of Sea Ray Model boats other than the 330 DA Model (which was the same as the boat in question) indicated to have "water ingestion" and/or "core saturation".

7.   Subsequent to the receipt of Sea Ray's Supplementary Response, and on a number of occasions in conferring with Attorney Branson regarding scheduling depositions of the Plaintiffs and/or Plaintiffs' experts and/or the Defendant's inspection of the Plaintiffs' vessel, I inquired as to whether Sea Ray had become involved in lawsuits or arbitration proceedings regarding "water ingestion" and/or "core saturation" issues. In some cases Attorney Branson's contemporaneous response was in the negative and in others he indicated he did not know but what "check with [his] client". At no time was a response made or inferred to be made only as to the same model boat as that in question in this case.

8.   My periodic inquiry as to the existence of such lawsuits or arbitration proceedings was prompted by an increasing awareness on my part of numerous Internet postings pertaining to "water ingestion" and/or "core saturation" problems with Sea Ray boats including those exact model boats identified by Sea Ray in its Supplemental Response of April 20, 2004.

9.   Attorney Branson left Day, Berry & Howard in June, 2004 and was replaced by Attorney Deborah Russo. In my various communications with her regarding the scheduling of further depositions and the inspection of the vessel, the same inquiry was periodically made of her as was of Attorney Branson regarding Sea Ray's involvement in such lawsuits. And in each case the response from her was in the negative <u>without</u> limiting same as to the Sea Ray 330 DA Model.

10.    In the context of those various communications and every effort was made to see to the ready availability of the Plaintiffs' boat for inspection by the Defendant's surveyor and attendance of Mr. Mains upon reasonable advance notice.  No delay was caused by the reason of the boat being "shrink wrapped" or the unavailability of Mr. Mains.  The Defendant did not conduct its inspection of the vessel until several months after the end of the discovery and only provided a copy of the inspection report a number of further months thereafter following repeated requests for same on my part.

11.    I indicated to Attorney Russo by telephone shortly after or upon receiving same that the inspection report itself did not constitute compliance with the providing of Rule 26(a)(2) expert disclosure reports and she indicated that she was still working on same and would send the report as soon as she could.  No such compliance was made by Sea Ray until July 12, 2006.

12.    With the negative responses from Sea Ray's legal counsel regarding its involvement in any water ingestion/core saturation lawsuits or arbitration proceedings and the awareness of various claims pertaining to same increasing throughout the Marine industry, I began to seek information regarding such problems from other colleagues and/or collateral sources.  In or about mid-2005 I learned of reported "water ingestion"/"core saturation" cases in Florida and Ohio but was unable to verify the existence of same for some time.  In late 2005 and early 2006 I received various materials from collateral sources regarding Sea Ray's boats with "water ingestion" problems and its endemic application to various models equipped with "V-drive" propulsion and "collector-type" exhaust systems.

13. My review of Sea Ray's October 11, 2001 Info Gram authored by Nancy Luster and the MerCruiser Service Bulletins Nos. 2001-10 and 2001-13 expressly referred to therein revealed that Sea Ray has been treating the "water ingestion problem" as one common to Sea Ray Model V-drive propelled boats equipped with collector exhaust systems without making any particular distinction between models so equipped.

14. Sea Ray's contention that it was not required by the American Society for Quality (ASQ) or the International Organization of Standards (ISO) to maintain certain records is completely false and untrue.

15. Upon first learning of Sea Ray's express claims of having been "certified" as meeting the "high standards of the ISO" and maintaining such certification for "the past eight years", inquiry was made directly of personnel employed by the American Society for Quality ("ASQ") regarding the record keeping requirements for obtaining and maintaining such "certification".

16. The ASQ personnel advised of specific recordkeeping requirements regarding consumer complaints. These advices were confirmed by the specific provisions concerning same as set forth in the American National Standard manual published by the ASQ a copy of the pertinent provisions of which are attached to the Sur Reply Memorandum submitted herewith has Exhibit B.

17. To currently confirm that in order to maintain such "certification" by the ISO, Sea Ray would previously and currently have to maintain and adhere to such recordkeeping requirements including their ready accessibility and retrievable, I conferred directly with Lori Scheid by telephone on September 19, 2006. Ms. Scheid is the ASQ person in charge of and familiar with the requirements for ASQ/ISO compliance and confirmed

5

that Sea Ray would be required to comply with all aspects of the ASO Quality Management Systems Requirements including record keeping.

18. On the basis of the forgoing, it is clear that Sea Ray's initial response regarding requests for consumer complaint information and the inability to retrieve same and/or the unduly burden of having to do so runs directly in opposition to the requirement of the ISO certification Sea Ray claims to have received and maintained for over eight years. As such Sea Ray should have readily been able to access and retrieve the exact consumer complaint information it claimed to be unable to obtain or would be unduly burdensome.

Signed and dated at Essex, Connecticut this 19th day of September, 2006

    /s/John L. Senning

Subscribed and sworn to before me
this 19th day of September, 2006

/s/ Janet J. Klinck
Notary Public
My Commission Expires: 12/31/06

6