UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER D. MAINS and LORI M. MAINS | : | CASE NO.  301cv2402 (AWT) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SEA RAY BOATS, INC. | : | |
| | : | |
| Defendant. | : | MAY 29, 2007 |

<u>**JOINT TRIAL MEMORANDUM**</u>

Pursuant to the Court's Standing Order Regarding trial Memoranda in Civil Cases and

the Court's Order of December 22, 2006, the parties jointly submit this Trial Memorandum.

**1.    Trial Counsel.**

For Plaintiffs,
John L. Senning (ct05807)
16 Saybrook Road
Essex, Connecticut 06426
Phone: (860) 767-2618

For the Defendant,
James H. Rotondo (ct05173)
Daniel J. Foster (ct24975)
Day Pitney LLP
CityPlace I
Hartford, Connecticut  06103-3499
Phone: (860) 275-0100

**2.    Jurisdiction**.  Plaintiffs allege diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Sea Ray has not contested jurisdiction.

**3.    Jury/non-jury.**  This case has been claimed for a jury.

**4.    Nature of Case.**

<u>**Plaintiffs' Statement of Claims:**</u>

(1)    COUNT I: Connecticut Products Liability Act C.G.S. §52-572m, et seq; Relief

Sought: Rescission of the purchase of the boat and return of the full purchase price with interest

since May 21, 1998, attorneys fees and costs.

(2)    COUNT II: Negligence of Defendant while in possession of Plaintiffs' boat between November 18, 2000 and April 20, 2001; Relief Sought: Damages equal to the cost of the boat less its present value, damages for loss of use of boat, interest and costs.

(3)    COUNT III: Revocation of acceptance, C.G.S. § 42a-2-711; Relief sought: an order of this Court revoking the sale/purchase of the 1998 33' Sea Ray Boat; Judgment in favor of Plaintiff for monetary damages including the amount of the purchase price of the boat, plus interest since May 21, 1998; attorneys fees and costs.

(4)    COUNT IV: Unfair Trade Practices; C.G.S. § 42-110a; Relief Sought: Judgment in favor of Plaintiff's in the amount of the purchase price of the boat; pre-judgment interest in accordance with C.G.S. § 37-3a; punitive and exemplary damages and attorneys fees.

**Defendant's Statement:**

Defendant Sea Ray Division of Brunswick Corporation (improperly designated in the Complaint as "Sea-Ray Boats, Inc.") ("Sea Ray") manufactures boats for recreational use.  In 1998, the Plaintiffs traded in a 1996 Sea Ray boat for a new 1998 Sea Ray boat (the "boat") that they purchased from a dealer known as Surfside 3.  After purchasing the boat, Plaintiffs complained about a number of issues concerning the boat, most of which were cosmetic and none of which interfered with the proper functioning or performance of the boat.  Sea Ray and Surfside 3 attempted to resolve the Plaintiffs' complaints.  Sea Ray denies that any of the alleged deficiencies in the boat complained of by the Plaintiffs render the boat defective and unreasonably dangerous.

Plaintiffs' complaints included a complaint that the engine made a noise known as a "resonance noise."  Sea Ray maintains that the engine noise was not excessive or unusual and did not render the boat unreasonably dangerous.  Nonetheless, Sea Ray attempted to decrease the

amount of noise in an effort to satisfy the Plaintiffs.  Among the steps taken to reduce the amount of noise was the replacement of the exhaust system.

After Sea Ray replaced the boat's exhaust system, the Plaintiffs used the boat in salt water and attempted to flush the engines with tap water.  The engines became "hydrolocked," or filled with water.  Plaintiffs allege that the boat's engines were damaged because water entered them during the flushing process, and that some water had previously entered the engines during their use of the boat.  Sea Ray maintains that the boat's engines became damaged because the Plaintiffs failed to properly dewater them after they became hydrolocked and because water was permitted to remain inside the engines for a period of years following the hydrolocking.

Although Sea Ray manufactured the boat at issue, Sea Ray denies that it sold the boat to the Plaintiffs.  The boat was sold to the plaintiffs by a company named  Surfside 3.  Sea Ray denies that it engaged in any deceptive, immoral, or unscrupulous business practices during the course of its dealings with the Plaintiffs.

**5.      Stipulations of Fact and Law**.

1.  Sea Ray manufactured the vessel that is the subject of this case.

2.  This action was filed on December 21, 1998.

**6.      Plaintiffs' Contentions.**

(a)      **Connecticut Products Liability Act C.G.S § 52-572m, et seq.**

The Plaintiffs' contend that at the time an agreement was reached with the Defendant and Defendant's agent Surfside 3, a Connecticut authorized Sea Ray dealer, for the return of the Plaintiffs' 1996 defective Sea Ray 330 boat and the Plaintiffs' purchase of the 1998 33' Sea Ray 330DA Model boat, the Plaintiffs' were induced to enter into said agreement on the basis of the

3

assurances of the Defendant's representatives that the new replacement boat would be totally free of any defects or deficiencies such as found with the prior boat. However, following delivery of the 1998 33' Sea Ray 330DA boat to the Plaintiffs' numerous material defects and deficiencies were found to exist with it. The Plaintiffs immediately called these defects to the attention of the Defendant's representatives and on May 27, 1998, within one week of taking delivery of the boat, telefaxed a list of items requiring repair to the boat and its equipment.

Between May, 1998 and June, 2001 the Plaintiffs made repeated requests of the Defendant to correct and/or repair the numerous defects and deficiencies found with the boat. Inspite of Defendant's efforts to attempt to correct same, the defects and deficiencies continued to exist and were of such a serious nature that the Defendant was required to return the boat to its manufacturing plant between November 18, 2000 and April 20, 2001 in order to continue such repair efforts. The defects and deficiencies as known at that time included, but were not limited to, problems with exhaust system resonance, exhaust system noise, hull core moisture/water saturation including areas of the boats decks and bilge areas, flexation of cockpit floor area, hull and deck core delamination and separation and various additional malfunctioning unrepaired items.

The Defendant returned the boat to the Plaintiffs on or about April 20, 2001 without fully disclosing to the Plaintiffs' the nature, scope and purpose of the repairs purportedly effected including the installation of a new and different retro-fit exhaust system for both of the boat's engines. In the course of making arrangements with the Plaintiffs for the return of their boat in April, 2001 the Defendant's informed the Plaintiffs of the retro-fit exhaust system installation but gave no reason for same or provided any different instructions for the use or maintenance of the boats engines as a result of the new exhaust system. Following the Plaintiffs' first use of the

4

boat subsequent to its return to them by the Defendant from the Defendant's manufacturing facility, the engines became hydro-locked as a result of the Plaintiffs' use of the same engine flushing procedure previously followed after each use.

In diagnosing the source of the problem and the condition of the Plaintiffs' boats engines, a Certified MerCruiser Mechanic determined that the engines had been seriously damaged over the course of their prior use since the date of purchase as a result of exhaust resonance/water ingestion relating to the design, manufacture and installation of the boat's exhaust systems by the Defendant. The Certified MerCruiser Mechanic further determined that the damaged condition of the engines resulting from

such water ingestion over time since the Plaintiffs' date of purchase rendered the engines unrepairable and the boat therefore unsafe and unseaworthy.

Plaintiffs' contend that the damage to the boat's engines thereby rendering same unsafe, inoperative and unusable for the purpose intended was caused by the Defendant's negligence, breach of warranty (express or implied), breach of or failure to discharge a duty to warn or instruct (either negligent or innocent), misprepresentation or nondisclosure (either negligent or innocent) with respect to its manufacture, construction, design, preparation, assembly, installation, testing, warnings, instructions and/or marketing, all in violation of Connecticut General Statutes § 52-572m, et seq.

**(b)** **Negligence**

In addition to the Plaintiffs' contentions regarding their Product Liability claims against the Defendant. The Plaintiffs' contend that the Defendant was negligent in the manner by which it undertook to carryout and/or attempted to perform certain repairs to the boat in question when it was returned to and in the possession of the Defendant in that it: failed to perform a proper

inspection of the boat to determine the exact nature and extent of required repairs including the cause or causes necessitating same; failed to properly supervise the repairs; failed to perform required repairs in a quality and workmanlike manner; failed to follow the prevailing standards of the industry in undertaking the inspection, repair and refurbishing of the Plaintiffs' boat; failed to properly instruct, warn and inform the Plaintiffs' regarding the repairs and changes made to the boat and failed to properly secure the boat and safeguard it while it was in its possession.

The Plaintiffs  further contend that the Defendant negligently installed non-conforming retro-fit exhaust systems on both of the Plaintiffs' boat's engines without providing Plaintiffs with the current and appropriate instructions regarding the procedure for flushing the engines as a standard and required practice after their operation in salt water. The Defendant knew, should have known or had reason to know that an entirely different engine flushing procedure was required as a result of the retro-fitted exhaust systems' installation and that the Plaintiffs' boat's engines could be seriously damaged in the event a new and entirely different procedure was not followed.

As a direct and proximate consequence of the Defendant's negligence, both engines were seriously damaged beyond repair to safe and reliable performance and therefore require replacement at a cost now substantially in excess of $30,000.00. As a direct and proximate cause of the Defendant's negligence while maintaining custody and control of the Plaintiffs' boat, the boat sustained structurally related damages. The cost of repairing same is now substantially in excess of $25,000.00.

As a further direct and proximate consequence of the Defendant's negligence the Plaintiffs' boat has been rendered and remains unsafe and unfit for its intended use by the Plaintiffs' and by reason thereof Plaintiffs' have suffered damages in excess of $175,000.00.

6

**(c)**       **Revocation of Acceptance**

The Plaintiffs  contend that on the basis of the allegations set forth in paragraphs 1-61 of Count III of their Complaint, they were entitled pursuant to Connecticut General Statutes § 42a-2-608 to revoke their prior acceptance of the vessel. The Plaintiffs' contend that during and throughout their negotiations with the Defendant and the Defendant's agent and authorized Sea Ray dealer, Surfside 3, regarding the return of Plaintiffs' defective 1996 Sea Ray 330 model boat in exchange for the subject 1998 boat, they were repeatedly, expressly assured that the new Sea Ray boat would be specifically constructed to their total and complete satisfaction and would be in all respects of superior construction to the Sea Ray boat being returned due to its poor quality of construction and performance.

The Plaintiffs  contend that the Defendant breached its representations and express assurances regarding the quality of the boat provided to them including its construction and suitability for use for its intended purpose in that despite the Defendant's repeated assurances of due care and many attempts to remedy numerous defects, including the installation of the retro-fit exhaust systems on both of the boat's engines for reasons never disclosed or made known to Plaintiffs, the boat as of June 11, 2001 remained deficient in numerous material respects and unfit for safe and reasonable use by the Plaintiffs. As such, the material nonconformities and defective conditions substantially impaired the value of the boat and its use by the Plaintiffs.

The Plaintiffs  further contend that their acceptance of the boat in 1998 was induced by the repeated, express assurances and representations of the Defendant's personnel and agents that any and all detected nonconformities would be timely cured and/or that any nonconformity not capable of discovery without difficulty would similarly be cured within a reasonable period upon

7

discovery. Such assurances and representations were repeatedly made to the Plaintiffs' by or on behalf of the Defendant during the period from May, 1998 through June 6, 2001.

On the basis of such express assurances and representations by or on behalf of the Defendant and the Plaintiffs' justifiable reliance on same, Plaintiffs' contend that they had a reasonable and justifiable basis in delaying giving notice of their revocation of acceptance pursuant to Connecticut General Statutes § 42a-2-608. Having given the Defendant notice of their revocation of acceptance pursuant to Section § 42a-2-608, the Plaintiffs' contend that they are entitled to recover the purchase price of the boat together with any and all expenses incurred in connection with the inspection, transportation, care and custody of the boat since the date of its purchase, pursuant to Connecticut General Statutes § 42a-2-711.

**(d)     Unfair Trade Practices**

The Plaintiffs contend that the Defendant's conduct, as alleged in paragraphs 1-63 of Count IV, constitute unfair and deceptive acts or practices in trade or commerce in violation of Connecticut General Statutes § 42-110a, et seq ("CUPTA") in that the Defendant, its representatives, agents or employees:

- Made or caused to be made, directly or indirectly, explicitly or by implication, various and repeated representations regarding the construction and condition of the boat and its engines which were material, false and misled the Plaintiffs' into purchasing the boat in question and thereafter continuing to indulge the Defendant's repeated representations that the numerous defects and deficiencies found in the new boat would be repaired or remedied to the Plaintiffs' full satisfaction.

- Engaged in unethical conduct and/or unscrupulous practices with respect to the commitments, assurances and obligations made or undertaken by the Defendant with

respect to the Plaintiffs' inducement to purchase the subject boat rather than seek the
return or refund of the purchase price paid for the prior Sea Ray boat and forbearing same
while the Defendant's undertook efforts to repair serious defects and deficiencies with the
new boat not disclosed to the Plaintiffs' so that they could investigate, initiate and pursue
warranty claims against the Defendant and/or the engine manufacturer within the stated
warranty periods.

- Engaged in the unethical conduct and/or unscrupulous practices in concealing and
otherwise failing to disclose to the Plaintiffs' at the time of purchase, or at the time of
receiving complaints from the Plaintiffs', or at the time of Defendant's various numerous
attempts to effect repairs, or at the time of installing new retro-fit exhaust systems, or at
the time reasonably known to the Defendant to be the Plaintiffs' first use of the boat
following its return to them by the Defendant, and/or at the time immediately after the
hydro-locking of Plaintiffs' boat engines or at any time reasonably thereafter, the
substantial and material defects and deficiencies in the construction of the vessel
including the defects and deficiencies in the boat's engines and exhaust systems as
originally designed, manufactured, constructed, installed and/or repaired, or retro-fitted
thereafter.

- Engaged in unethical conduct and/or unscrupulous practices by inducing the Plaintiffs' to
believe that the repairs and remediation as represented by the Defendant would be
undertaken and accomplished to Plaintiffs' full satisfaction thereby inducing Plaintiffs' to
delay in revoking acceptance of the boat and allowing Plaintiffs' exposure to significant
harm and risk by using the boat in its dangerous, unsafe and unseaworthy condition.

- Engaging in immoral, unethical conduct, unconscionable and/or unscrupulous practices by demanding that the Plaintiffs' sign (Release/Waiver) in order to obtain Defendant's promised repairs prior to any such repairs being attempted, by misrepresenting and/or distorting the purpose of such Release and by misrepresenting its scope solely in an attempt to extract or extort concessions from Plaintiffs' as consumers within the definition of Connecticut General Statutes § 42-110a in violation of public policy.

- Engaging in unethical conduct and/or unscrupulous practices 1) by abusing the Defendant's economic size in an effort to undermine the Plaintiffs' interests and cause financial hardship to them in the pursuance of their just claims, and 2) by engaging in bad faith dealings and economic duress to coerce the Plaintiffs' into signing the Release and otherwise continuously misleading the Plaintiffs' during the course of their efforts to resolve the defects and deficiencies with the boat.

**7.    Defendant's Contentions.**

1.  Sea Ray did not enter into any contract with the Plaintiffs for sale of the vessel.

2.  None of the alleged deficiencies in the boat that Plaintiffs claim existed at the time of sale rendered the vessel defective and unreasonably dangerous.

3.  Plaintiffs may not recover under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m et seq. ("CPLA") in connection with Sea Ray's efforts to repair alleged deficiencies in the boat following the time of sale.

4.  If the boat's engines were hydrolocked, those engines would nonetheless not have been damaged if they had properly been dewatered following the hydrolock.

5.  The engines sustained damage because they were not properly dewatered and because water was consequently permitted to remain in the engines for a period of years following the hydrolocking while the engines were not used.

6.  Any damage to the engines was caused primarily or entirely by the Plaintiffs' negligence (a) in failing to follow proper steps to preserve the engines by dewatering them, and (b) in permitting water to remain in the engines for a period of years following hyrdrolocking.

7.  All deficiencies attributed to the boat by the Plaintiffs, other than the damage to the engine that followed the hydrolocking and the Plaintiffs' subsequent failure to remove water from the engines, were cosmetic.

8.  Sea Ray did not engage in any unfair trade practice.

9.  Sea Ray did not engage in any other immoral, unethical, or unscrupulous conduct relating to the Plaintiffs or the boat.

10.  Even if Sea Ray engaged in any unfair trade practice, which is expressly denied, the pertinent statute of limitations would preclude recovery for any alleged unfair trade practice committed more than three years before the Plaintiffs filed their complaint in the instant action on December 21, 2001.  See Conn. Gen. Stat. § 42-110g (f); Avon Meadow Condo. Ass'n v. Bank of Boston Conn., 719 A.2d 66, 73, 50 Conn. App. 688 (1998) ("the three year limitation contained in § 42-110g (f) is jurisdictional"); petition for review denied, 247 Conn. 946, 723 A.2d 320 (1998).

**8.    Legal Issues.**

1.    Whether, as a matter of law, any of the alleged defects in the boat at the time of sale rendered the vessel unreasonably dangerous or unsafe.

2.    Whether the Plaintiffs may recover under the CPLA for any allegedly negligent repair of the vessel.

3.    Whether Conn. Gen. Stat. § 42-110g (f) precludes recovery for any alleged unfair trade practices that occurred before December 21, 1998.

4.    Whether, as a matter of law, the Release attached to the Complaint (a) purported to require Plaintiffs "to accept [Sea Ray's] repairs, whether done properly or not, and whether the repairs resolved the problem or not," as alleged by the Plaintiffs, or (b) required that plaintiffs accept the repairs as compliance with Sea Ray's obligations under its Express Limited Warranty only if, following the repairs, the boat conformed with that Warranty.

5.    Whether, as a matter of law, the Plaintiffs could recover for Sea Ray's alleged conduct in "allowing Plaintiffs exposure [to] significant harm and risk" where the Plaintiffs do not claim to have suffered any personal injury.

**9.    Voir Dire Questions.**

Plaintiffs' proposed voir dire questions are attached hereto as Exhibit A.

Defendant's proposed voir dire questions are attached hereto as Exhibit B.

10.    **List of Witnesses.**

**Plaintiffs Witnesses**

**Peter D. Mains – 5 Old Town Road, Avon, CT 06001** (Fact Witness)

Mr. Mains will testify regarding the facts and circumstances pertaining to purchase of the

1998 Sea Ray 330 in exchange for the defective 1996 Sea Ray 330 including the

representations and assurances made by the Defendant's representations regarding the

condition of the new boat. He will testify regarding the defects and deficiencies found

with the 1998 boat upon delivery, his reporting of same to the Defendant's

representatives, the assurances provided by them regarding the repair of such defects and

deficiencies to his and his wife's satisfaction, the failed and/or unsuccessful attempts by

the Defendant to effect such repairs, the need for the boat to be returned to the

Defendant's manufacturing facility for extensive repairs of the numerous defects

including, but not limited to, hull core moisture saturation, hull cockpit sole flexation and

engine exhaust resonance problems. Mr. Mains will also testify regarding the failure of

the Defendant to effect such repairs in a quality, workmanlike manner, the failure of the

Defendant to explain the nature, scope and/or reason for the necessity of such repairs

including but not limited to the need or reason to remove the exhaust system originally

installed by the Defendant and the replacement of same by the Defendant with a new and

completely different type of exhaust system. He will further testify as to the failure of the

Defendant to disclose to him and/or his wife the fact that Sea Ray boats equipped with v-

drive engine systems with V6 or V8 engines had experienced serious exhaust

resonance/water ingestion problems resulting in engine failure and the need to replace

same, in some cases more than once, during the period between 1998 and 2001.    Mr.

Mains will also testify regarding the condition of the boat upon its return from the Defendant's manufacturing facility in April, 2001, the failure of the Defendant to effect all of the required repairs and the existence of new structural damage to the boat that was not previously present prior to the Defendant taking possession of same. He will further testify regarding his first use of the boat following its return to him by the Defendant, the engine flushing procedure he followed promptly after such and the failure of the engines to start thereafter due to hydro-locking. He will testify regarding the procedure followed thereafter to determine the condition of the engines including their inspection and testing by a Certified MercCruiser mechanic, who determined that the engines had been seriously damaged over a period of time due to resonance reversion/water ingestion, a condition that was known by the Defendant to be endemic to engines with exhaust systems such as those installed in the Mains' boat. Mr. Mains will testify regarding the failure of the Defendant to have provided him with warning or any new or different instructions regarding the procedure for flushing of the boat's engines following its return to him from the Defendant's manufacturing facility in April, 2001. He will also testify regarding the failure of the Defendant to warn him of the propensity of the boat as originally manufactured equipped by the Defendant with V8 engines and exhaust resonance/water ingestion problems likely to result in serious damage to the engines, within such time period as would have allowed him to make a warranty claim to the Defendant and/or the engine manufacturer before the stated expiration dates.

**OBJECTION:** Defendant objects to this proposed testimony to the extent that it is hearsay. Specifically, Defendant objects to the witness testifying about (1) statements made by any of Sea Ray's alleged "representatives" who were not

14

Sea Ray employees at the times that any statements were allegedly made, and (2)

any statements allegedly made by any "certified MercCruiser mechanic."

Defendant further objects to the introduction of evidence, including testimony,

regarding other alleged incidents, including but not limited to occasions on which

"Sea Ray boats equipped with v-drive engine systems with V6 or V8 engines"

allegedly "experienced serious exhaust resonance/water ingestion problems

resulting in engine failure and the need to replace same, in some cases more than

once, during the period between 1998 and 2001."    Defendant also objects to Mr.

Mains, a lay witness, testifying as to opinions, such as there being a "defect" in

the 1996 boat, and Sea Ray's supposed obligation to provide warnings regarding

certain alleged characteristics of the subject boat.


**Lori M. Mains – 5 Old Town Road, Avon, CT 06001 (Fact Witness)**

Mrs. Mains will testify as to substantially the same facts and circumstances as indicated

with respect to Mr. Mains.

> **OBJECTION:**        Defendant hereby incorporates its objections to the
>
> proposed testimony of Peter D. Mains as its objections to the proposed testimony
>
> of Lori M. Mains.  Defendant further objects to the proposed testimony of Mrs.
>
> Mains on the ground that it would admittedly constitute a mere repetition of the
>
> testimony of Mr. Mains, and would therefore result in "undue delay, waste of time
>
> [and] needless presentation of cumulative evidence."  See Fed. R. Evid. 403.

**Nancy Luster – Sea Ray Boats, Inc. - Vice President/Customer Service**

**(Fact Witness)**

Ms. Luster will be asked to testify regarding her knowledge of the water ingestion/engine resonance reversion problems experienced by certain Sea Ray manufactured boats equipped with V-drive V6 and V8 engines, including the origin of the problem, the date Sea Ray first became aware of the problem, her role in the preparation, drafting and publication of the Sea Ray Infogram 02-07, the nature and extent of her communications with the Plaintiffs' including the dates and substance of same.

**OBJECTION:**    Defendant hereby objects to the proposed testimony of Nancy Luster on the grounds that that testimony would concern other incidents involving boats of specified models and model years different from those of the Plaintiffs' boat. Specifically, Sea-Ray Infogram 02-07 expressly concerns a limited number of specifically identified boat models, not including model 330DA, of the model years 1999-2001. Moreover, that Infogram expressly refers to reports received by Sea Ray in the "several months" leading up to October, 2001. That Infogram, and testimony concerning the Infogram, is therefore irrelevant for the additional reason that it does not suggest that Sea Ray was aware of alleged problems with any of its boat models at any time pertinent to this action.

**David Wade – Sea Ray Boats, Inc. – 2601 Sea Ray Blvd., Knoxville, TN 37914**

Mr. Wade will be asked to testify regarding his knowledge of the defects and deficiencies the Plaintiffs' reported to Defendant's representatives following Plaintiffs' taking delivery of the subject boat and the nature, the extent of the repairs attempted and any representations made to the Plaintiffs' regarding same.

**Al Chianese – Surfside 3 – 144 Water Street, South Norwalk, CT 06854**

**(Fact Witness)**

Mr. Chianese will be asked to testify regarding his knowledge of the defects and

deficiencies Plaintiffs' reported to him as an authorized Sea Ray Dealer and agent for

Defendant following Plaintiffs' taking delivery of the subject, the nature and extent of

representatives made to the Plaintiffs' regarding the condition of the boat prior to its

purchase, the nature and extent of repairs attempted to be effect to the boat after May 27,

1998, the nature and extent of any representation made to the Plaintiffs' regarding same

and the nature and extent of his knowledge, if any, regarding engine resonance

reversion/water ingestion problems experienced with Sea Ray boats equipped with V6 or

V8 v-drive engines.

> **OBJECTION:** Defendant objects to Mr. Chianese being asked questions
>
> regarding alleged deficiencies and defects of boats other than the one involved in
>
> this case on the grounds that such an inquiry is irrelevant, lacks foundation, seeks
>
> hearsay, and the probative value is outweighed by the undue prejudice. Fed. R.
>
> Evid. 403.   Defendant also objects to questions designed to elicit information
>
> concerning "engine resonance reversion/water ingestion problems experienced
>
> with Sea Ray boats equipped with V6 or V8 v-drive engines" for the same
>
> reasons.

**Thomas Wicander – Brewer Ferry Point Marina – Old Saybrook, CT**

**(Expert Witness)**

Mr. Wicander has been a marine mechanic since 1984, a Certified MercCruiser Mechanic since 1990 and Sea Ray Factory trained marine mechanic for five (5) years. Mr. Wicander will testify regarding his opinion with respect to his inspection of the Plaintiffs' boat's engines following their hydro-locking on June 10, 2001, the procedures taken to remove water from the engines, his diagnosis and cause of their condition and his determination that as a result of engine resonance reversion/water ingestion occurring with the engines over a period of time since the Plaintiffs' purchase, the engines valves, cylinder walls and related mechanical parts had been damaged to the point that both engines were not repairable or rebuildable to the extent that they would be reliable and safe and the boat would be seaworthy and/or fit for safe use. Mr. Wicander's opinion will be based on his personal visual inspection of the engines, the conducting of compression tests, leak down tests and disassembly of the engines to examine the valves and cylinder walls of each engine.

> **OBJECTION:**      Defendant objects to this proposed testimony to the extent that it is goes beyond the scope of the opinions with respect to which Mr. Wicander was disclosed.  Specifically, Defendant objects that at no time did Plaintiffs or Mr. Wicander disclose or otherwise indicate that Mr. Wicander would offer the opinion that the boat's "engines were not repairable or rebuildable to the extent that they would be reliable and safe and the boat would be seaworthy and/or fit for safe use."  No such opinion appears in Mr. Wicander's report, nor was any such opinion disclosed by Plaintiffs' formal expert disclosure or at Mr. Wicander's deposition.  Cf. Dep. of Thomas Wicander, Feb. 12, 2004 at 50:22-24 (stating that "it was a safety concern of ours that the boat was not operable at the

time")(emphasis added); <u>id.</u> at 129:6-16; 134:8-12 (stating that another individual

had stated that she would not use the boat "<u>unless it was repaired</u>.")(emphasis

added).

Defendant also objects to testimony regarding "engine resonance

reversion/water ingestion problems experienced with Sea Ray boats equipped

with V6 or V8 v-drive engines" because that testimony is irrelevant, lacks

foundation, seeks hearsay, and the probative value is outweighed by the undue

prejudice.  Fed. R. Evid. 403.   Defendant has submitted a separate motion in

limine concerning this issue.


**<u>Thomas P. Greaves – Toby Hill Road, Westbrook, CT 06498</u> – (Expert Witness)**

Mr. Greaves is a Certified Marine Surveyor who will testify as to his opinion regarding

the condition of the subject boat including moisture saturation problems, hull/deck

delamination problems, structural problems and other defects and deficiencies found with

the boat. The basis of his opinion will be the observations and fundings determined as a

result of his complete survey of the boat and his written inspection report, of June 30,

2001. Mr. Greaves has been a Certified Marine Surveyor for over 20 years. He's

curriculum vitae is attached hereto as Exhibit C.

**OBJECTION:**        Defendant hereby objects that the testimony of Thomas

Greaves, Anthony Knowles, and Bruce Pfund would result in "undue delay, waste

of time [and] needless presentation of cumulative evidence."  <u>See</u> Fed. R. Evid.

403.  All three of these experts will purportedly testify about the "condition of the

subject boat" including alleged hull and deck problems, alleged structural

problems, and alleged moisture saturation.  Unlike Thomas Wicander, none of these three individuals will testify concerning alleged mechanical or engine problems.  Defendant respectfully submits that Plaintiffs should be permitted to offer the testimony of no more than one expert on the condition of the boat.

Defendant further objects to Mr. Greaves' proposed testimony to the extent that it is goes beyond the scope of the opinions with respect to which Mr. Greaves was disclosed.  Specifically, Defendant objects to Mr. Greaves' offering of any opinion regarding the value of the Plaintiffs' boat.  No such opinion appears in Mr. Greaves' report, nor was any such opinion disclosed by Plaintiffs' formal expert disclosure or at Mr. Greaves' deposition.


**Anthony Knowles – 7 Baldwin Road, Middletown, Rhode Island 02842**

**(Expert Witness)**

Mr. Knowles is a Certified Marine Surveyor. Mr. Knowles will testify regarding his opinion as to the condition of the subject boats hull and structural condition including hull/deck voids and/or moisture saturation, cockpit sole flexation, various damaged areas of the boat, required repairs and the effect of same on the condition, appearance and value of the boat. His opinion will be based upon his personal survey and inspection of the boat and his review of indicated documents as set forth in his written report dated November 13, 2001 and the photographs accompanying same. Mr. Knowles curriculum vitae is attached hereto as Exhibit D.

**OBJECTION:**        Defendant hereby incorporates its objection to the proposed testimony of Thomas Greaves as its objection to the proposed testimony of Anthony Knowles.

Defendant further objects to Mr. Knowles' proposed testimony to the extent that it is goes beyond the scope of the opinions with respect to which Mr. Knowles was disclosed.  Specifically, Defendant objects to Mr. Knowles' offering of any opinion regarding the value of the Plaintiffs' boat.  No such opinion appears in Mr. Knowles' report, nor was any such opinion disclosed by Plaintiffs' formal expert disclosure or at Mr. Knowles' deposition.  In fact, Mr. Knowles testified that he did not have such an opinion at his deposition.  Cf. Dep. of Anthony L. Knowles, Feb. 3, 2004 at 111:16 - 112:3 (noting that Mr. Knowles had not determined the "blue book" value of a 1998 boat of the pertinent model and did not intend to do so).

**Bruce Pfund – 7 Windover Turn, Westerly, Rhode Island 02891-4070**

**(Expert Witness)**

Mr. Pfund is a Certified Marine Surveyor. Mr. Pfund will testify regarding his opion as to the condition of the subject boat's hull and structural condition including hull/deck voids and/or moisture saturation, cockpit sole flexation, various damaged areas of the boat, required repairs and the effect of same on the condition, appearance and value of the boat. His opinion will be based upon his personal survey and inspection of the boat and his written report of October, 2003 and supporting materials. Mr. Pfund's curriculum vitae is attached hereto as Exhibit E.

**OBJECTION:**     Defendant hereby incorporates its objection to the proposed testimony of Thomas Greaves as its objection to the proposed testimony of Bruce Pfund.

Defendant further objects to Mr. Pfund's proposed testimony to the extent that it is goes beyond the scope of the opinions with respect to which Mr. Pfund was disclosed. Specifically, Defendant objects to Mr. Pfund's offering of any opinion regarding the value of the Plaintiffs' boat. No such opinion appears in Mr. Pfund's report, nor was any such opinion disclosed by Plaintiffs' formal expert disclosure or at Mr. Pfund's deposition, and Mr. Pfund admitted that such opinions are beyond the scope of his professional activities. <u>Cf.</u> Dep. of Bruce Pfund, Feb. 10, 2004 at 112:11-17 ("I don't do condition and valuation surveys or inspections. I don't do appraisals. I don't read the blue book or pay any attention to the values so I really have no perspective on what the market value of this individual boat is relative to sister ships of similar age and service history.") Accordingly, Defendant objects on the further ground that Mr. Pfund is not qualified to render any such opinion.

**Russell Rackcliffe – 12 Ox Bow Lane, Essex, CT 06426 – (Fact Witness)**

Mr. Rackcliffe will testify regarding his purchase of a 2000 Sea Ray 310 boat equipped with V6/V8 v-drive engines, the failure of both engines due to water ingestion, the rebuilding of same by Sea Ray, the second failure of same for the same reason, his purchase of a 2003 Sea Ray 310 boat which Sea Ray represented would have new

engines designed to eliminate the water ingestion problem, Sea Rays delivery to him of a boat not so equipped, the reoccurrence of water ingestion problems of the same nature experienced with the first boat, the defective condition of the first boat's bedding of fixtures, joints and fittings resulting in hull core moisture saturation, the same defective conditions existing in the second Sea Ray boat with respect to defective or completely absent bedding/caulking of fixtures, joints fittings resulting in hull core moisture saturation and leaks.

> **OBJECTION:**    Defendant hereby objects to the proposed testimony of Russell Rackcliffe on the grounds that that proposed testimony concerns other incidents relating to boats of a different model and different model years than the Plaintiffs' boat. Defendant further objects to this testimony on the ground that Plaintiffs failed to disclose Mr. Rackcliffe as a person with pertinent knowledge in response to Defendant's Interrogatory No. 2 of December 20, 2002.  Although Plaintiffs identified forty-two people allegedly having such knowledge, including five persons who allegedly experienced problems with Sea Ray boats that they had purchased, Mr. Rackcliffe was not among them.

**Mark Verone - Bassett Boats, Inc., Service Manager - Boston Post Road, Westbrook, CT – (Fact Witness)**

Mr. Verrone has been Service Manager at Bassett Boats, Inc., an authorized Sea Ray boat dealer and has had substantial experience regarding water ingestion problems with Sea Ray Boats v-Drive models equipped with V6/V8 engines. He was involved with Sea Ray and/or Bassett Boats engagement of Pilots Point Marina to perform engine replacements

in over 20 Sea Ray boats that sustained damage due to water ingestion/resonance reversion problems.

> **OBJECTION:**    Defendant hereby objects the proposed testimony of Mark Verone to the extent that it concerns other incidents relating to boats other than the Plaintiffs' boat, because that testimony is irrelevant, lacks foundation, seeks hearsay, and the probative value is outweighed by the undue prejudice.  Fed. R. Evid. 403.   Defendant has submitted a separate motion in limine concerning this issue.

**Defendant's Fact Witnesses:**

a.    David Wade, Sea Ray, 2601 Sea Ray Blvd., Knoxville, Tennessee, 37914:  Mr. Wade testify regarding Plaintiffs' complaints regarding the 1996 vessel, Sea Ray's efforts to address those complaints, Plaintiffs' exchange of the 1996 vessel for the boat, Plaintiffs' complaints regarding the boat, and Sea Ray's efforts to address those complaints, including Sea Ray's offer to buy back the boat in June of 2001.

b.    David Marlowe, Sea Ray, 2601 Sea Ray Blvd., Knoxville, Tennessee, 37914:  Mr. Marlowe will testify regarding Plaintiffs' complaints regarding the 1996 vessel, Sea Ray's efforts to address those complaints, Plaintiffs' exchange of the 1996 vessel for the boat, Plaintiffs' complaints regarding the boat, and Sea Ray's efforts to address those complaints.

c.    Greg Wilson, Sea Ray, 2601 Sea Ray Blvd., Knoxville, Tennessee, 37914:  Mr. Wilson will testify regarding Plaintiffs' complaints regarding the 1996 vessel, Sea Ray's efforts to address those complaints, Plaintiffs' exchange of the 1996 vessel for the boat,

Plaintiffs' complaints regarding the boat, and Sea Ray's efforts to address those complaints.

d.      Todd Stooksbury, Sea Ray, 2601 Sea Ray Blvd., Knoxville, Tennessee, 37914: Mr. Stooksbury will testify regarding Plaintiffs' complaints regarding the 1996 vessel, Sea Ray's efforts to address those complaints, Plaintiffs' exchange of the 1996 vessel for the boat, Plaintiffs' complaints regarding the boat, and Sea Ray's efforts to address those complaints.

e.      Al Chianese, Surfside 3, 144 Water Street, South Norwalk, Connecticut, 06854: Mr. Chianese will testify regarding the condition of the Plaintiff's 1996 vessel at the time of sale by Surfside 3, Surfside 3's efforts to address the Plaintiffs' complaints regarding the 1996 vessel, Plaintiffs' exchange of the 1996 vessel for the boat, the condition of the boat at the time of sale by Surfside 3, and Surfside 3's efforts to address the Plaintiffs' complaints regarding the boat.

f.      Dean Beckman, Surfside 3, 144 Water Street, South Norwalk, Connecticut, 06854:  Mr. Beckman will testify regarding the condition of the Plaintiff's 1996 vessel at the time of sale by Surfside 3, Surfside 3's efforts to address the Plaintiffs' complaints regarding the 1996 vessel, Plaintiffs' exchange of the 1996 vessel for the boat, the condition of the boat at the time of sale by Surfside 3, and Surfside 3's efforts to address the Plaintiffs' complaints regarding the boat.

g.      Allen McDonald, Sea Ray, 800 South Gay St., Suite 1700, Knoxville, TN, 37929: If the Court permits the Plaintiffs to introduce evidence relating to a release signed by Plaintiff Lori Mains on October 31, 2000, permitting the boat to be returned to Sea Ray's manufacturing facility, Mr. McDonald will testify regarding the circumstances under

which Sea Ray submitted the proposed release.  As noted in part 14 below, Sea Ray submits herewith a Motion in Limine to preclude admission of any such evidence.

h.    Jason Brown, Sea Ray, 2601 Sea Ray Blvd., Knoxville, Tennessee, 37914:  Mr. Brown will testify concerning the processes by which Sea Ray boats are manufactured.

**OBJECTION:**    The Plaintiffs object to this testimony on the basis that it has no relevance to the matters at issue, lacks foundation, seeks hearsay and its probative value is outweighed by the undue prejudice. Fed. R. Evd.

**Defendant's Expert Witness:**

a.    Gregory T. Davis, Marine Surveyor, Davis Consulting Group, 1989 University Lane, Suite I, Lisle, Illinois, 60532:  Mr. Davis' area of expertise is marine forensics and marine surveying, including assessment of the value and condition of vessels.  Mr. Davis will testify regarding the condition and value of the boat.  The basis of his opinions will be his inspection of the vessel on July 14, 2004, his review of a videotape purportedly depicting the disassembly of the vessel's engines in August of 2003, a mechanical repair estimate provided by Marine Surveyor Jerry M. Starczowski, and reports of the sales prices of comparable vessels.

**OBJECTION:**    The Plaintiffs object to the introduction of any report by Mr. Starczowski on the basis that it lacks foundation, seeks hearsay and its probative value is outweighed by the undue prejudice. Fed. R. Evd.

Mr. Davis will testify that when he inspected the vessel on July 14, 2004, except for the vessel's engines, the vessel was in excellent condition consistent with its age. He will testify that, even if the flushing procedure used by Mr. Mains on the vessel's engines on or about June 9, 2001, caused the engines to become hydrolocked, the engines would nonetheless not have been damaged if they had properly been dewatered and preserved following the hydrolock incident. He will testify that the cost of having the engines properly dewatered following the hydrolock incident would have been approximately $400- $600. He will testify that the damaged condition of the engines at the time of their disassembly in August of 2003 was a result of the fact that water was permitted to remain in the engines between June of 2001 and August of 2003. He will testify that because water was permitted to remain in the engines during that time, the engines required rebuilding or replacement. He will testify that, in July of 2004, the engines could have been rebuilt at a cost of $11,495.34, or, in the alternative, could have been replaced at a cost of $12,424.84. He will testify that, if the engines had been rebuilt or replaced in July of 2004, the boat would have had a resale value of approximately $127,500.00.

Mr. Davis' curriculum vitae is attached hereto as Exhibit F.

**11.    Exhibits**.

Plaintiffs' Exhibits:

1)    Release and Agreement in Settlement of all Claims dated 2/19/98

2)    In-Service Checklist dated 5/21/98

3)    Mains Letter to Surfside 3 dated 5/27/98

4)    Mains Letter to Surfside 3 dated 5/27/98 w/ Hand-Written Notations

5)    Mains Letter to Surfside 3 dated 6/16/98

6)      Mains Letter to Surfside 3 dated 9/1/98

7)      Mains Letter to Surfside 3 dated 9/1/98 w/ Notes

8)      Mains Letter to Sea Ray dated 10/5/98

9)      Mains Letter to Sea Ray (David Wade) dated 12/9/98

10)    Sea Ray Letter to Mains dated 12/15/98

11)    Mains Letter to Sea Ray (David Wade) dated 12/9/98

12)    Summary of Dates and Events, 7/16/01 – Prepared by Peter and Lori Mains

13)    Mains Letter to Sea Ray (David Wade) dated 10/20/99

14)    Mains Letter to Sea Ray dated 10/20/99 w/ Notes

15)    Release 5/31/01 Signed by Lori Mains

16)    Mains Letter to Sea Ray (David Wade) dated 2/12/01

17)    Mains Letter to Sea Ray (David Wade) dated 2/12/01 w/ Notes

18)    Mains Letter to Sea Ray (David Wade) dated 4/30/01

19)    Mains Letter to Sea Ray (David Wade) dated 5/1/01 w/ Photocopies

20)    List of Problems for Dean Beckman dated 5/10/01

21)    Mains Letter to Sea Ray (David Wade) dated 6/6/01

22)    Brewer Pilots Point Marina Repair Estimate dated 9/10/01

23)    Survey Report Prepared by Thomas P. Greaves dated 6/30/01

24)    Survey Report, Newport Surveyors Group Anthony L. Knowles dated November 13, 2001 with 17 Photographs Numbered 24-1 through 24-17

25)    Survey Report - BP/SP, Bruce Pfund/Special Projects LLC Inspection Report with 16 Photographs, Report dated 10/4/03, Photographs Numbered 25-1 through 25-16

26)    Brewer Pilots Point Marina Mechanical Inspection Report, Inspection conducted
       6/18/01, Report Signed by Tom Wicander, East Yard Manager, undated;
       Wicander Deposition 2/12/04, Exhibit 8

27)    Brewer Pilots Point Marina, Leak Down and Compression Tests Report, Testing
       conducted 6/18/01, Report dated 10/7/03, Report Signed by Tom Wicander, East
       Yard Manager; Wicander Deposition 2/12/04, Exhibit 12

28)    Excerpts from Mercury MerCruiser Manual, Exhaust System – Measuring
       Exhaust Elbow Height, Gasoline Enging Tow Sports and Inboard Models, Pages
       37, 38, 39 and 40 of 88 – Doc# and Ref# 90-864198024; Wicander Deposition,
       Exhibit# 2

29)    Inboard Water Damage Worksheet, Tom Wicander Deposition, Exhibit# 5 dated
       2/12/04

30)    Inboard Water Damage Worksheet, Tom Wicander Deposition, Exhibit# 11 dated
       2/12/04

31)    Notes of Tom Wicander, Tom Wicander Deposition, Exhibit# 7 dated 2/12/04

32)    MerCruiser Letter dated 7/13/98 to Peter Mains regarding Engine Warranty with
       Warranty Cards – 1-Year initial Standard, 2-Year Extended – Q-guard

33)    Mercury MerCruiser Service Bulletin No. 2001-13 (August 2001) "Gasoline
       Engines and Water Intrusion"

34)    Mercury MerCruiser Service Bulletin No. 2001-10 (June 2001)

35)    Mercury MerCruiser Service Bulletin No. 99-10 (December 1999)

36)    Sea Ray Info Gram No. 02-07 dated 10/11/01

37)    Video Tape – Engine Disassembly

38)     MerCruiser 454 MAG MPI HORIZON Exhaust System Instruction, 1997 –

Ref#    90-861358980

39)     American National Standard Quality Management Systems Requirements

ANSI/ISO/ASQ Q9001-2000

40)     Schedule of Expenses/Repairs incurred by Plaintiffs' since 5/21/98


**Defendant's Exhibits:**

1.      Letter of February 16, 1992, from Peter and Lori Mains to Chris Craft

2.      Letter of August 21, 1996, from Peter and Lori Mains to Mr. Steve Holland,

Sea Ray

3.      Surfside 3 Trade-In Agreement, February 21, 1998

4.      Note from Surfside 3 to Peter and Lori Mains, February 25, 2998, regarding

"Review of your purchase" and "Review of your payments"

5.      Sea Ray In Service Check List, May 21, 1998

6.      Letter of May 27, 1998, from Peter Mains to Al Chianese, Surfside 3

7.      Letter of June 16, 1998, from Peter Mains to Al Chianese, Surfside 3

8.      Letter of September 1, 1998, from Peter Mains to Al Chianese, Surfside 3

9.      Letter of October 5, 1998, from Peter Mains to Sean Stubblefield, Sea Ray

10.     Letter of December 9, 1998, from Peter mains to David Wade, Sea Ray

11.     Letter of December 15, 1998, from David Marlowe to Peter and Lori Mains

12.     Letter of October 20, 1999, from Peter Mains to David Wade, Sea Ray

13.    Letter of October 13, 2000, from David Wade to Peter Mains

14.    Letter of February 12, 2001, from Peter Mains to David Wade, Sea Ray

15.    Letter of April 30, 2001, from Peter and Lori Mains to David Marlowe et.

al, Sea Ray

16.    Document entitled "List of Problems for Dean Beckman, May 10, 2001"

17.    Letter of May 24, 2001, from David Wade to Peter and Lori Mains

18.    Letter of June 6, 2001, from Lori mains to David Wade, Sea Ray

19.    Letter of June 14, 2001, from David Wade to Peter and Lori Mains

20-86:    Photographs 1-67 accompanying report of Gregory Davis

87:    Videotape of boat engine disassembly

To be offered only if the Court admits, over Sea Ray's objection, evidence relating to
the Release attached to the Plaintiff's Complaint

88:    Letter of September 20, 2000, from David Wade to Peter Mains

89:    Letter of October 13, 2000, from David Wade to Peter Mains

To be offered as a demonstrative exhibit only:

90:    PowerPoint presentation illustrating boat manufacturing process

OBJECTION:    The Plaintiffs object to the introduction of this Exhibit on the basis

that it has no relevance to the matters at issue, lacks foundation, seeks

hearsay, probative value is outweighed by undue prejudice. Fed. R. Evd.

403

12.    **Deposition Testimony**.  The Defendant does not anticipate providing the testimony of any witness by deposition.  The Plaintiffs' have not yet determined whether the testimony of any witness will need to be provided by deposition.

13.    **Requests for Jury Instructions.**

Defendant's proposed jury instructions are attached hereto as Exhibit G.

Plaintiffs' partial concurrence with proposed jury instructions and objections thereto are attached as Exhibit H.

14.    **Anticipated Evidentiary Problems.**

Defendant has identified the following anticipated evidentiary problem:

1.    Plaintiffs propose to introduce evidence of other alleged incidents regarding other vessels manufactured by Sea Ray.  Any reports of other such alleged incidents, or of complaints made to Sea Ray by persons other than Plaintiffs, are hearsay, are irrelevant to any of the Plaintiff's causes of action, lack a proper foundation and will tend to confuse the matters at issue in this case.  Such evidence is inadmissible for the additional reason that the Plaintiffs cannot establish that any of those other alleged incidents arose under conditions substantially similar to those under which the damages that they claim to have suffered occurred.  For these and other reasons, introduction of evidence of other alleged incidents or complaints would also cause undue prejudice to the Defendant.  A Motion in Limine to preclude evidence of other alleged incidents or complaints regarding Sea Ray boats is submitted herewith.

2.      Exhibit A to Plaintiff's Complaint, which consists of a release signed by Plaintiff Lori Mains on October 31, 2000 (the "Release") permitting the boat to be returned to Sea Ray's manufacturing facility, does not have and does not purport to have the legal effect of depriving the Plaintiffs of any legal rights to which they would otherwise be entitled.  Nor does the Defendant assert that the Release bars any part of the instant action.  The Release is therefore irrelevant to any of the Plaintiff's causes of action and will tend to confuse the matters at issue in this case.  For these reasons, introduction of evidence concerning the Release would also cause undue prejudice to the Defendant.  Finally, admission of evidence concerning the Release would be contrary to the public policy favoring settlements.  A Motion in Limine to preclude evidence of the release is submitted herewith.

3.      Plaintiffs have identified four experts who are expected to testify as to the condition of the boat.  One of these four is expected to testify as to the condition of the boat's engines, and the other three (the "marine surveyors") are expected to provide testimony regarding the condition of the non-mechanical features of the boat.  The testimony of the three marine surveyors would be cumulative and unduly prejudicial.  Accordingly, only one of the three should be permitted to testify.  A Motion in Limine to limit the number of experts that the Plaintiffs may call is submitted herewith.

4.      Plaintiffs allege that Sea Ray has committed certain alleged unfair trade practices with respect to the sale and purchase of the boat.  Insofar as it relates to conduct occurring prior to December 21, 1998, however, Plaintiffs CUTPA claim is time-barred.  Because the sale of the boat occurred prior to December 21, 1998, evidence of any unfair trade practice committed in connection with the sale or purchase of the boat must be excluded.  A Motion in Limine to exclude such evidence is submitted herewith.

33

**15.**     **Proposed Findings and Conclusions.**

Not applicable.

**16.**     **Trial Time.**  Trial time is expected to be approximately four to five days.

**17.**     **Further Proceedings.**  Hearing and rulings on motions in limine.

**18.**     **Election for Trial by Magistrate.**  The parties have not agreed to have the case tried by a United States Magistrate.

PLAINTIFFS,                              DEFENDANT,
PETER D. MAINS and LORI M. MAINS         SEA RAY BOATS, INC.


     /s/ John L. Senning                        /s/ Daniel J. Foster     
John L. Senning (ct 05807)               James H. Rotondo (ct 05173)
16 Saybrook Road                         Daniel J. Foster (ct 24975)
Essex, Connecticut 06426                 Day Pitney LLP
Phone: (860) 767-2618                    CityPlace I
Fax: (860) 767-2740                      Hartford, Connecticut 06103-3499
Their Attorney                           Phone: (860) 275 -0100
                                         Fax: (860) 275-0343
                                         Its Attorneys