UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER D. MAINS and | : | CASE NO.  301 CV 2402 (AWT) |
| LORI M. MAINS | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SEA RAY BOATS, INC. | : | |
| | : | |
| Defendant. | : | MAY 29, 2007 |

**JOINT TRIAL MEMORANDUM EXHIBIT G**

**DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

TESTIMONY OF EXPERT WITNESS

During the trial you heard the testimony of several persons who were described as expert witnesses. Witnesses who, by education and experience, have become expert in some art, science, profession or calling, may state their opinions as to relevant and material matters within their areas of expertise.  They may also state the reasons underlying their opinions.

Merely because an expert witness has expressed an opinion does not mean, however, that you must accept his or her opinion.[1]  In weighing and considering the testimony of these experts, and in determining the extent to which you will attach weight to the opinions which they gave, you are to apply to them the same rules that you apply to any witness, insofar as it relates to the interest, bias or prejudice, appearance and demeanor upon the witness stand, frankness and candor and so forth.  It is up to you to decide whether each expert witness's background, training

---

[1] Common Fund For Non-Profit Orgs. v. KPMG Peat Marwick, LLP, No. 96 Civ. 02505, 2003 U.S. Dist. LEXIS 3656 *15 (S.D.N.Y. March 12, 2003).

and experience is sufficient to justify the opinion or opinions offered.[2]  You must also decide whether each expert's opinions were based on sound reasons, judgment, and information.[3]

You should consider each opinion of each expert and give it such weight, if any, as you may think it deserves.  You are not to determine the weight of the evidence by the number of expert witnesses called on either side, but by the quality and professional attainment of the witness.[4]  If you should conclude that the reasons given in support of the opinion are not sound or are outweighed by other evidence, you may disregard it.[5]

---

[2] Maiz v. Virani, 253 F.3d 641, 667 (11th Cir. 2001).

[3] Id.

[4] Devito v. United Air Lines, Inc., 98 F. Supp. 88, 101 (E.D.N.Y. 1951).

[5] Maiz v. Virani, 253 F.3d 641, 667 (11th Cir. 2001).

PLAINTIFFS' CLAIMS

The Plaintiffs have brought this suit in four counts, each of which alleges a different basis for recovery. In their first count, which is brought under the Connecticut Product Liability Act, the Plaintiffs claim that their boat was defective and unreasonably dangerous when they purchased it. The Plaintiffs' second count claims that the boat was damaged as a result of Sea Ray's negligence during the course of repairs after the boat was purchased. In their third count, the Plaintiffs seek to revoke their contract for purchase of the boat. Finally, in their fourth count, which is brought under the Connecticut Unfair Trade Practices Act, the plaintiffs claim that Sea Ray committed unfair trade practices and that they were harmed by those unfair trade practices. I will instruct you on the relevant law as to each of these four counts.

<u>PRODUCT LIABILITY</u>

In this case, plaintiffs claim that their boat was damaged because it was defective and unreasonably dangerous at the time at which they purchased it.  The plaintiffs have brought this claim pursuant to Connecticut laws known as "the Connecticut Product Liability Act."  Under the Connecticut Product Liability Act, one who sells a product in a defective condition, unreasonably dangerous to the user, is subject to liability for physical harm caused to the ultimate user or to the product itself.[6]

Sea Ray can be liable for the plaintiffs' claims for product liability only if the plaintiffs prove each of the following elements by a fair preponderance of the evidence:

1.    that Sea Ray sold the boat at issue;

2.    the boat was expected and did reach the plaintiffs without substantial change in its condition from the time of its sale by Sea Ray to Surfside 3;

3.    the boat was in a defective condition that was unreasonably dangerous to the ordinary consumer;

4.    the defective condition existed at the time the boat was sold by Sea Ray to Surfside 3; and

5.    that defective condition of the boat that is the proximate cause of the harms for which plaintiffs seek compensation.[7]

Even if you find that the boat was deficient in some respect, you may only find that the boat was defective if you find that the boat was unreasonably dangerous, that is, if it created an unreasonable danger of injury to the user or consumer.[8]

---

[6] Conn. Gen. Stat. §§ 52-572m - 52-572q.

[7] Restatement (Second) Torts § 402A (1965); <u>Giglio v. Conn. Light & Power Co.</u>, 180 Conn. 230, 234, 429 A.2d 486 (1980).

The plaintiffs have brought their claim under the Connecticut Product Liability Act on three different grounds, strict liablity, breach of implied warranty of merchantability and breach of express warranty.  I will instruct you now on the law regarding each of these three theories of recovery.

---

[8] Restatement (Second) Torts § 402A *cmt. i* (1965).

STRICT PRODUCTS LIABILITY:  UNREASONABLY DANGEROUS DEFECT

First, the plaintiffs assert that they are entitled to recover in strict liability.  Under this theory, if the plaintiffs suffered damages because the boat was defective and unreasonably dangerous at the time of sale, they are entitled to recover from Sea Ray for their injuries.  A product is in a defective condition that is unreasonably dangerous to the user when it has the potential for causing harm greater than that which the ordinary user who purchases the product would contemplate.[9]  The seller of a product, however, is not an insurer.[10]  The law does not require that a product be perfect or accident-proof, or incapable of causing harm.[11]  Nor is a product seller required to incorporate the ultimate safety features in its product.  In other words, as a product seller Sea Ray is not required to use all means to make its product safe, nor is Sea Ray necessarily required to use the latest or the most modern means.  Rather, Sea Ray is required to use only such means as are necessary to make the product reasonably safe for its intended use.[12]  A product such as the plaintiffs' boat is reasonably safe if it does not create an unreasonable danger of injury to the user or consumer.[13]

---

[9] Restatement (Second) Torts § 402A & *cmt. i* (1965).

[10] Vitanza v. Upjohn Co., 257 Conn. 365 A.2d 829, 837 (2001); Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 694 A.2d 1319, 1328 (1997).

[11] Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 694 A.2d 1319, 1334-35 & n.17 (1997).

[12] Id.

[13] Restatement (Second) Torts § 402A *cmt. i* (1965).

<u>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u>

The second basis on which the plaintiffs seek to recover under the Product Liability Act is that Sea Ray breached an implied warranty regarding the boat. Under Connecticut law, a manufacturer is held by law to have made a warranty that its product is fit for the ordinary purposes for which the product is used.[14] A product does not have to be perfect to be of merchantable quality.[15] It need only be fit for its "ordinary purpose."[16] If you find that, at the time of sale, the boat was not fit for its intended purpose because it was defective and unreasonably dangerous, you may find in favor of the plaintiffs on their first count.

---

[14] Conn. Gen. Stat. § 42a-2-314 (2).

[15] <u>Standard Structural Steel Co. v. Bethlehem Steel Corp.</u>, 597 F. Supp. 164, 188 (D. Conn. 1984); <u>King v. Dowling Ford</u>, No. CV 950373114S, 1997 Conn. Super. LEXIS 2029 at *4 (Conn. Super. Ct. July 28, 1997); <u>Tufano Motorcar v. Equipment & Resources Int'l</u>, No. CV 91-0446810S, 1994 Conn. Super. LEXIS 2285 *15 (Conn. Super. Ct. Sept. 12, 1994).

[16] <u>King v. Dowling Ford</u>, 1997 Conn. Super. LEXIS 2029 at *4; <u>Tufano Motorcar v. Equipment & Resources Int'l</u>, 1994 Conn. Super. LEXIS 2285 *15.

BREACH OF EXPRESS WARRANTY

The final basis for the plaintiffs' claim under the Connecticut Product Liability Act is that Sea Ray breached express warranties that the product was safe and effective for its intended use. In order to prevail in their claim for breach of express warranty, the plaintiffs must first prove that Sea Ray made an statement of fact or a promise to the plaintiffs the boat was safe and effective for its intended use.[17]  The plaintiffs do not claim that Sea Ray stated or promised that the boat would be perfect.  Even if the plaintiffs did claim this, they could not prevail on their claim for breach of express warranty by proving that the boat was not perfect.[18]  If you find that, at the time of sale, the boat was not was not safe and not reasonably effective for its intended use because it was defective and unreasonably dangerous, you may find in favor of the plaintiffs on their first count.

---

[17] Conn. Gen. Stat. § 42a-2-313 (1).

[18] Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342, 525 A.2d 57, 62 (1987).

HARM CAUSED BY A PRODUCT

Under the Connecticut Product Liability Act, the plaintiffs may only recover damages for harm caused by a product, in this case, the boat.[19]  The plaintiffs do not claim that they have suffered any personal injuries, or that the boat has caused property damage other than alleged harm to the boat itself.  If you find that the condition of the boat at the time of sale was defective and unreasonably dangerous, and you find that the defective and unreasonably dangerous condition of the boat caused harm to the boat itself, you may award damages to the plaintiff for those damages to the boat that were caused by any defective and unreasonably dangerous condition.[20]

Not every kind of alleged problem with the boat, however, is a kind of harm caused by the boat.  If you find that the boat suffered from some form of deficiency at the time of sale, you may not award damages to the plaintiffs for that deficiency under the Product Liability Act, because that deficiency would not be harm caused by the boat.[21]  In addition, if you find that the boat suffered from a deficiency that was caused by a defective and unreasonably dangerous condition of the boat, but you also find that that deficiency was merely cosmetic, you may not award damages to the plaintiffs for that cosmetic deficiency under the Product Liability Act.[22]

---

[19] Conn. Gen. Stat. § 52-572n.

[20] Id. § 57-572m (d).

[21] Black's Law Dictionary, 734 (8th ed. 2004)(defining "harm" as "[i]njury, loss, damage; material or tangible detriment").

[22] Id.

COMPARATIVE RESPONSIBILITY – PRODUCTS LIABILITY

In its answer, Sea Ray denies that the boat was defective or unreasonably dangerous, and also claims that any damages that the plaintiffs may have sustained were caused in whole or in part by the plaintiffs' own negligence in failing to dewater the engines after they became hydrolocked. The burden is upon the plaintiffs to prove to you by a fair preponderance of the evidence that the boat was defective and unreasonably dangerous in one or more of the ways alleged in the complaint, and that the defective and unreasonably dangerous condition of the boat caused the plaintiffs to suffer damages.[23] Sea Ray has the burden of proving its claim that any damages were caused in whole or in part by the plaintiffs' own negligence. If you find that the boat was defective and unreasonably dangerous, and you find that plaintiffs sustained damages that were caused in part by the defective and unreasonably dangerous condition of the boat, and in part by the plaintiffs' own negligence, then you may award damages to the plaintiffs, but any damages that you award must be reduced in proportion to the degree to which the plaintiffs were responsible for those damages.[24]

---

[23] Conn. Gen. Stat. § 52-572o.

[24] Id.

NEGLIGENCE

I have now finished discussing plaintiffs' claims under the Connecticut Product Liability Act.  The plaintiffs next allege in that Sea Ray was negligent during the course of repairs to the boat, and that Sea Ray's negligence caused them to suffer damages. This claim is separate and distinct from the plaintiffs' claims that the boat was defective and unreasonably dangerous when it was first sold by Sea Ray.

 Negligence is the doing of something which a reasonably prudent person would not do under the circumstances, or the omitting to do what a reasonably prudent person would do under the circumstances.  It is the breach of a legal duty owed by one person to another, and such legal duty is the exercise of reasonable care.  The use of proper care in a given situation is the care which an ordinarily prudent person would use in view of the surrounding circumstances.[25]

Plaintiffs claim that Sea Ray was negligent in its repairs of the boat in the following ways:

> a.  by failing to supervise repairs done to the boat by others to ensure that those repairs were done in an appropriate and workmanlike manner;
>
> b.  by performing repairs itself that were not done in an appropriate and workmanlike manner;  and
>
> c.  by failing to provide proper instructions for flushing the boat's engines after Sea Ray replaced the exhaust systems.

---

[25] II Douglass Wright & William Ankerman, Connecticut Jury Instructions § 522, at 834-35 (4th ed. 1993).

COMPARATIVE NEGLIGENCE

In its answer, Sea Ray denies that it was negligent, and also claims that any damages that the plaintiffs may have sustained were caused in whole or in part by the plaintiffs' own negligence in failing to dewater the engines after they became hydrolocked. The burden is upon the plaintiffs to prove to you by a fair preponderance of the evidence that Sea Ray was negligent in one or more of the ways alleged in the complaint, and that Sea Ray's negligence caused the plaintiffs to suffer damages.[26] Sea Ray has the burden of proving its claim that any damages were caused in whole or in part by the plaintiffs' own negligence. If you find that Sea Ray was not negligent, then you must render a verdict for Sea Ray on this count. If you find that the plaintiffs' share of the responsibility for causing those damages is 51% or more, then you must find in favor of Sea Ray on the plaintiffs' negligence claim.[27] If you find that the plaintiffs sustained damages that were caused partly by their own negligence, but that those damages were caused primarily by Sea Ray's negligence, then you may award damages to the plaintiffs, but any damages that you award must be reduced in proportion to the degree to which the plaintiffs were responsible for those damages.[28]

---

[26] II Douglass Wright & William Ankerman, Connecticut Jury Instructions § 521, at 833-34 (4th ed. 1993).

[27] Conn. Gen. Stat. § 52-572h (b).

[28] Id.

REVOCATION OF ACCEPTANCE

In the third count of their Complaint, the plaintiffs seek to revoke their contract for the purchase of the boat and to have the purchase price returned to them because they claim that the boat was not in condition that they understood it would be in when they agreed to purchase it. When a seller delivers a product to a buyer that does not conform with the terms agreed to, the buyer may revoke his or her acceptance of the product within a reasonable time after the buyer discovers or should have discovered the ground for revoking the agreement.[29]

In order to revoke acceptance, however, the plaintiffs must prove more than that the boats were nonconforming.  They must show that the boat's nonconformity *substantially* impairs its value to them and that they initially accepted the nonconformity because they reasonably expected the seller to cure any deficiencies or because they could not immediately discover such deficiencies.[30]

In addition, the law allows revocation only against the person who sells the product in question.  It is not enough that Sea Ray manufactured the boat if the plaintiffs bought the boat from another entity.  To be entitled to the remedy of revocation, there must be a buyer-seller relationship between the plaintiffs and Sea Ray.[31]  Unless you find that the plaintiffs bought the boat from Sea Ray, you must find for Sea Ray on the plaintiffs' count for revocation of acceptance.

---

[29] Conn. Gen. Stat. § 42a-2-608.

[30] Superior Wire & Paper Products, Ltd. v. Talcott Tool & Machine, Inc., 184 Conn. 10, 441 A.2d 43, 46 (1981).

[31] Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144, 150 (1976); Curtiss v. Holly Park Homes, Inc., No. G85-381, 1987 U.S. Dist. LEXIS 15728 at *11-12 (W.D. Mich. Jan. 12, 1987).

Moreover, a buyer may only revoke acceptance before any substantial change in condition of the product which is not caused by the product's own defects.[32] Sea Ray claims that the boat underwent a substantial change in condition before the plaintiffs attempted to revoke their acceptance of the boat.  Specifically, Sea Ray claims that the engines suffered extensive rusting because the plaintiffs permitted the boat's engines to sit with water in them for an extended period.  If you find that, by the time the plaintiffs sought to revoke their acceptance of the boat, it had already undergone a substantial change in condition that was not caused by the product itself, you must find for Sea Ray on the plaintiffs' count for revocation of acceptance.

---

[32] Conn. Gen. Stat. § 42a-2-608 (2).

CUTPA

The plaintiffs have also claimed that Sea Ray engaged in unfair trade practices in violation of the Connecticut Unfair Trade Practice Act, commonly referred to by its initials as "CUTPA." The parties agree that the actions of Sea Ray were part of the conduct of a trade or commerce. In determining whether the plaintiffs have met their burden of proving that Sea Ray engaged in any unfair trade practice, you must determine: 1) whether Sea Ray has engaged in practices that offend public policy as it has been established by the Connecticut statutes, the common law, or other established concept of unfairness; 2) whether Sea Ray has engaged in practices that are immoral, unethical or unscrupulous; and 3) whether Sea Ray has engaged in practices that have caused substantial injury to consumers such as the plaintiffs.[33] However, the Plaintiffs may only recover for harm caused by an unfair trade practice if they could not reasonably have avoided that harm.[34]

The plaintiffs assert that Sea Ray committed an unfair trade practice by misleading them with respect to the condition of the boat. In considering whether Sea Ray engaged in behavior that was immoral, unethical, oppressive or unscrupulous, you must consider whether Sea Ray had the intent to deceive the plaintiffs. If you conclude that there were any misrepresentations, and that those misrepresentations were unintentional, the plaintiffs cannot recover under CUTPA for those misrepresentations.[35]

---

[33] Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 657 A.2d 212, 227-28 (1995).

[34] Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 592, 657 A.2d 212, 228 (1995)

[35] Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 657 A.2d 212, 227-28 (1995); Am. Networks Int'l, Inc. v. Federowicz, No. CV044001997S, 2005 Conn. Super. LEXIS 2034 *5 (Conn. Super Ct. July 13, 2005).

PROXIMATE CAUSE

If you find that the boat was defective and unreasonably dangerous, that Sea Ray was negligent in the repairs, or that Sea Ray committed an unfair trade practice, you may not award a recovery for the plaintiffs on that basis alone.  The plaintiffs also must prove to you by a fair preponderance of the evidence that they were harmed by the alleged defect or by defendant's misconduct, and that that defect or misconduct was both the cause in fact and the proximate cause of the alleged damages.

To determine whether cause in fact exists, you must ask yourself whether the damages would have occurred were it not for the claimed defect or misconduct.  A finding of cause in fact alone does not mean that Sea Ray is legally responsible for the plaintiffs' damages.  Cause in fact is only one part of the two part inquiry you must make to determine whether Sea Ray is legally responsible for the plaintiffs' damages.  You must also determine whether Sea Ray's alleged misconduct was the proximate cause of those damages.  To make that determination, the question for you to decide is, was the alleged defect or misconduct a substantial factor in causing the damages complained of by the plaintiffs?  A substantial factor is one that continues down to the moment of damage or, at least, down to the setting in motion of the final active injurious force which immediately produced the damage.  Unless you find that the alleged defect or misconduct is both the cause in fact and a proximate cause of the damages complained of, you must find that Sea Ray is not legally responsible for any damages to the plaintiffs.[36]

---

[36] <u>Tesler v. Johnson</u>, 23 Conn. App. 536, 538-40, 583 A.2d 133 (1990); <u>Mahoney v. Beatman</u>, 110 Conn. 184, 198-99, 147 A. 762 (1929).

-16-

<u>CUTPA - STATUTE OF LIMITATIONS</u>

In a Special Defense to the plaintiffs' CUTPA claim, Sea Ray claims that the plaintiffs did not commence this suit within three years from the date when any alleged unfair trade practice occurred, and, therefore, the plaintiffs' CUTPA claim is barred by the statute of limitations.  A statute of limitations is simply a provision of the law of Connecticut requiring that suit be commenced on certain types of claims within a prescribed period of time; otherwise, the suit is barred.  The statute of limitations for CUTPA claims is three years from the date on which any unfair trade practice was committed.[37]

For purposes of the statute of limitations for CUTPA claims, it does not matter when the plaintiffs became aware of the alleged unfair trade practice.  The statute of limitations bars any CUTPA claim that is brought more than three years after the date of the alleged unfair trade practice, even if the plaintiffs were not aware of the unfair trade practice at the time at which it was committed.[38]

The plaintiffs began this lawsuit by filing a Complaint on December 21, 2001. Therefore, you may not find Sea Ray liable for any unfair trade practice that  may have occurred prior to December 21, 1998.  The plaintiffs purchased the boat in May, 1998.  If you find that any unfair trade practice was committed by Sea Ray before December 21, 1998, you must find that the plaintiffs' CUTPA claim is barred by the statute of limitations.[39]

---

[37] Conn. Gen. Stat. § 42-110g (f).

[38] <u>Fichera v. Mine Hill Corp.</u>, 207 Conn. 204, 541 A.2d 472, 475-76 (1988).

[39] <u>Avon Meadow Condo. Ass'n v. Bank of Boston Conn.</u>, 719 A.2d 66, 73, 50 Conn. App. 688 (1998); petition for review denied, 247 Conn. 946, 723 A.2d 320 (1998).

<u>CUTPA - LIMITING INSTRUCTION</u>

It is undisputed that the plaintiffs purchased the boat in May of 1998, more than three years before the plaintiffs began this lawsuit.  Because you may not find Sea Ray liable for any unfair trade practice that it may have committed prior to December 21, 1998, you may not find Sea Ray liable for any unfair trade practice that it may have committed at or prior to the time at which the plaintiffs purchased the boat.[40]  Therefore, in determining whether Sea Ray is liable for any alleged unfair trade practice, you may not consider any evidence of Sea Ray's alleged conduct at or before the time at which the plaintiffs purchased the boat.

---

[40] Conn. Gen. Stat. § 42-110g (f).

DAMAGES – SPECULATION

If you find that the Sea Ray is liable to the plaintiffs under one or more of the four counts brought by the plaintiffs, you must determine the amount of any award of damages.  The plaintiffs are responsible for providing to you evidence that gives you a reasonable basis upon which to calculate the amount of damages.[41]  In determining the amount of damages to be awarded to any party, you may award only those damages that have been proven to your satisfaction by a preponderance of the evidence.  You may not base any award of damages on speculation or guesswork.[42]  If you find that the plaintiffs have suffered some damages as to which they have not provided a reasonable basis for calculation, the plaintiffs may not recover for those damages.

---

[41] Sir Speedy, Inc. v. L&P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992).

[42] Id.

<u>DAMAGES - FAILURE TO MITIGATE</u>

Sea Ray claims that, even if the plaintiffs suffered damages because the boat was defective and unreasonably dangerous, or because of Sea Ray's negligence, or due to any unfair trade practice, any damages that the plaintiffs could otherwise recover must be reduced because the plaintiffs failed to take reasonable steps mitigate their damages.  If you find that the plaintiffs failed to take reasonable action to lessen the damages, that the damages were enhanced that failure, and that the damages which could have been avoided can be measured with reasonable certainty, then you must reduce any damages that you award to the plaintiffs by an amount equal to the amount of damages that the plaintiffs failed to mitigate.[43]

---

[43] <u>Preston v. Keith</u>, 217 Conn. 12, 584 A.2d 439, 444 (Conn. 1991).

Respectfully submitted,

DEFENDANT,
SEA RAY BOATS, INC.


_____/s/ Daniel J. Foster_____
    James H. Rotondo (ct 05173)
    Daniel J. Foster (ct 24975)
    Day Pitney LLP
    CityPlace I
    Hartford, Connecticut  06103-3499
    Phone: (860) 275 -0100
    Fax: (860) 275-0343
    Its Attorneys