UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER D. MAINS and<br>LORI M. MAINS | : CASE NO. 301 CV 2402 (AWT)<br>:<br>: |
| Plaintiffs, | : |
| v. | :<br>: |
| SEA RAY BOATS, INC. | :<br>: |
| Defendant. | : MAY 29, 2007 |

**DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE EVIDENCE RELATING TO EXHIBIT "A" TO COMPLAINT**

**I.     INTRODUCTION**

Defendant Sea Ray Division of Brunswick Corporation (improperly designated in the Complaint as "Sea-Ray Boats, Inc.") ("Sea Ray") respectfully submits this motion in limine to exclude any and all evidence, including testimonial evidence, relating to Exhibit A to the Plaintiffs' Complaint, which is a release signed by Plaintiff Lori Mains prior to Sea Ray's performing of certain repairs to the boat that is the subject of this action (the "Release")(attached to Plaintiffs' Complaint as Ex. A).  As a matter of law, the Plaintiffs cannot prevail on their claim that Sea Ray committed an unfair trade practice by requiring that Plaintiffs sign the Release before the repairs were performed.  Accordingly, evidence relating to the Release is not relevant to any of Plaintiffs' claims.  In addition, the Release constitutes evidence of an attempt to compromise a disputed claim, and evidence relating to the Release is therefore inadmissible under Rule 408.  Finally, admission of evidence relating to the Release would be contrary to the public policy underlying Rule 408.

## II.  FACTUAL BACKGROUND

Plaintiffs purchased a boat manufactured by Sea Ray (the "Boat").  Compl. ¶ 5.  In 2000, Sea Ray agreed to perform certain repairs to the Boat at its facility in Tennessee.  Id. ¶ 18.  Prior to performing those repairs, Sea Ray requested that Plaintiffs sign the Release.  Id. ¶ 21.  In their Complaint, the Plaintiffs allege that Sea Ray committed unfair trade practices by, inter alia, requiring them to sign the Release before the repairs were performed.  Id. Count 4 ¶ 63(e).  Plaintiffs allege that Sea Ray misrepresented the scope of that Release "in an attempt to extract or extort concessions from Plaintiffs as consumers in violation of public policy."  Id.

The Release includes a confidentiality clause, which provides that

> Releasor acknowledges that nondisclosure is a material consideration for the Releasees having entered into this Release, and agrees that he will not disclose, confirm, or discuss the terms or the amount of settlement, or his claims and allegations to any person not party to this Release without the written consent of all other parties . . .

See Ex. A to Compl.

Plaintiffs amended the terms of the Release prior to signing it.  Plaintiff Lori Mains testified at her deposition that, while discussing the terms of the release with Allen McDonald of Sea Ray,

> . . . I said, "Well, if I find areas on here that I feel need to be edited, I'm going to make the edits and initial them."  He said, "Yes, feel free to do that.  If there's anything that you've done to it that we are in disagreement with, we'll let you know."

See Dep. of Lori Mains at 77:2-7 (emphasis added); see also id. at 76:15 – 77:1.[1]  Plaintiffs removed certain provisions by typing the letter "x" over them, and added other provisions by typing them onto the Release.  See Ex. A to Compl.  These changes were initialed by Plaintiff

---

[1] Pertinent portions of this transcript are attached as Exhibit A to the Affidavit of Daniel J. Foster, which is attached hereto as Ex. 1.

Lori Mains, who signed the Release on October 31, 2000. See id. No changes were made to the confidentiality provision. See id.

Sea Ray issued an Interrogatory to Plaintiffs asking that they identify every misrepresentation or distortion that they claim was made by Sea Ray with respect to the Release. Plaintiffs responded as follows:

> Exhibit "A" to the Complaint in part states "[i]f [the] repairs are completed and the boat is tendered to Releasor in conformance with Sea [R]ay's Express Limited Warranty, Releasor agrees to accept the repairs as compliance with Sea Ray's obligations under its Express Limited Warranty."
>
> This means we were required to accept repairs whether done correctly or not . . . . Sea Ray wanted a release before any work was done and was asking us to accept their repairs, whether done properly or not, and whether the repairs resolved the problem or not.

Pls.' Response to Int. 10 (Dec. 20, 2002)(emphasis in original).

### III. ARGUMENT

#### A. As a Matter of Law, the Release Does Not Have the Effect Alleged by Plaintiffs

Contrary to plaintiffs' claims, the Release did not purport to require Plaintiffs "to accept [Sea Ray's] repairs, whether done properly or not, and whether the repairs resolved the problem or not." Instead, the terms drafted by Sea Ray required that "Releasor agrees to accept the repairs as compliance with Sea Ray's obligations under its Express Limited Warranty" only if "the repairs are completed and the boat is tendered to Releasor in conformance with Sea Ray's Express Limited Warranty." See Ex. A to Compl. "The interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face . . . ." See, e.g., Gould v. Mellick & Sexton, 263 Conn. 140, 150, 819 A.2d 216 (2003). As a matter of law, the Release as drafted by Sea Ray did not require Plaintiffs to accept repairs as

-3-

conformance with Sea Ray's obligations under its Express Limited Warranty unless those repairs actually resulted in the boat's conformance with that Warranty.

Moreover, prior to signing the Release, Plaintiff Lori Mains amended this very provision in a way that even more clearly prevents it from having the effect alleged by Plaintiffs. Immediately after the disputed language, Ms. Mains added a provision stating that "[i]f there are still problems, the Releasor does not have to accept repairs as compliance with Sea Ray's obligations."  See Ex. A to Compl.  The provision indisputably prevents the Release from discharging Sea Ray's obligations under its Warranty if the Boat has not been made to comply with that Warranty.

### B. Plaintiffs have Not Suffered an Ascertainable Loss as a Result of Their Acceptance of the Terms of the Release

"[T]o be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an 'ascertainable loss' due to a CUTPA violation."  Collins v. Anthem Health Plans, Inc., 275 Conn. 309, 334, 880 A.2d 106, 120 (2005)(citation omitted); Conn. Gen. Stat. § 110g(a)(CUTPA provides relief to "[a]ny person who suffers any ascertainable loss of money or property" as a result of an unfair trade practice).  There is no evidence that Plaintiffs have suffered any ascertainable loss as a result of Sea Ray's offer, or Plaintiffs' acceptance in part, of the terms of the Release.  While the Complaint sets forth in conclusory terms that Sea Ray "has caused Plaintiffs ascertainable monetary loss and damage"; see Compl. Count 4 ¶ 65; they have provided no indication of how the offer by Sea Ray or the acceptance by Plaintiffs of the terms of the Release could have caused such loss or damage.  Plaintiffs do not even allege that Sea Ray has relied upon the terms of the Release to refuse to perform repairs to which Plaintiffs would otherwise have been entitled.

### C.   Plaintiffs Cannot Prove that They Could Not Have Avoided Any Injury Resulting from Their Acceptance of the Terms of the Release

To prevail on their CUTPA claim, Plaintiffs must prove that "they could not reasonably have avoided any injury." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 592, 657 A.2d 212, 228 (1995). Because they have not suffered any injury arising from the offer or partial acceptance of the Release, they cannot prove that "they could not reasonably have avoided" such injury. Moreover, the fact that the Plaintiffs amended the very provision that they now claim was improperly imposed upon them before accepting the Release conclusively establishes that they could have avoided, and did avoid, any such injury.

The fact that Mrs. Mains admits that Sea Ray advised her that Plaintiffs should "feel free" to amend the Release, and that Sea Ray accepted the amendments that Plaintiffs made to the Release, also establishes as a matter of law, that Sea Ray's use of the Release was not "within at least the penumbra of some common law, statutory, or other established concept of unfairness" and was not "immoral, unethical, oppressive, or unscrupulous." See Hartford Elec. Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 367-68 (1999)(setting forth elements of CUTPA violation).

### D.   Evidence Relating to the Release is Inadmissible Evidence of an Offer to Compromise

Evidence relating to the Release constitutes "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount . . . ." Fed. R. Evid. 408; see also See Ex. A to Compl. (requiring that Releasor "not disclose, confirm, or discuss the terms or the amount of settlement, or his claims and allegations .

. . .") Accordingly, such evidence is inadmissible under Rule 408. Plaintiffs should not be able to circumvent this rule merely by asserting that the terms of Sea Ray's offer to compromise constitutes a CUTPA violation, especially where, for the reasons set forth above, their CUTPA claim suffers from several fundamental flaws.

### E. Admission of Evidence of Settlement Agreements Is Contrary to Public Policy

Evidence regarding the Release should also be excluded because admission would be contrary to the public policy favoring settlements. "The primary purpose of Rule 408 is the 'promotion of the public policy favoring the compromise and settlement of disputes' that would otherwise be discouraged with the admission of such evidence. Rule 408, advisory committee's notes." *Manko v. United States*, 87 F.3d 50, 54 (2d Cir. 1996); *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 510 (1989)(Rule 408 serves "the public policy of encouraging settlements and avoiding wasteful litigation"). This policy concern is relevant here, and supports granting this motion. Sea Ray agreed to perform certain repairs on the boat pursuant to the terms of the Release, which included that those terms would remain confidential. See Ex. A to Compl. Parties such as Sea Ray would be much less likely to enter into settlement agreements if they expected that such agreements would be used against them at trial.

## IV. CONCLUSION

For the reasons stated above, Sea Ray respectfully requests that the Court exclude all evidence relating to the Release, including, but not limited to, the Release itself.

                              Respectfully submitted,

                              DEFENDANT,
                              SEA RAY BOATS, INC.


                         By    /s/ Daniel J. Foster
                              James H. Rotondo (ct05173)
                              Daniel J. Foster (ct 24975)
                              Day Pitney LLP
                              CityPlace I
                              Hartford, Connecticut  06103-3499
                              Phone: (860) 275-0100
                              Fax: (860) 275-0343
                              Its Attorney


## **CERTIFICATION**

      I hereby certify that on this date a copy of foregoing **Defendant's Motion in Limine** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                                /s/ Daniel  J. Foster
                                     Daniel J. Foster (ct24975)