UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER D. MAINS and LORI M. MAINS | : | CASE NO. 3:01cv2402 (AWT) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SEA RAY BOATS, INC. | : | |
| | : | |
| Defendant. | : | JULY 16, 2007 |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION IN LIMINE TO PRECLUDE CUMULATIVE EXPERT TESTIMONY**

**I.     INTRODUCTION**

Defendant Sea Ray Division of Brunswick Corporation (improperly designated in the Complaint as "Sea-Ray Boats, Inc.") ("Sea Ray") respectfully submits this Reply Memorandum in further support of its motion in limine to preclude Plaintiffs from introducing the testimony of four different experts on the condition of the boat that is the subject of this action (the "Boat"). For the reasons set forth below, the Plaintiffs' Objection to that Motion should be overruled and the Plaintiffs should be precluded from introducing the testimony of only one of their three expert marine surveyors, in addition to their mechanical expert, Thomas Wicander.

**II.    ARGUMENT**

    **A.    The Plaintiffs Mischaracterize Their Experts' Opinions**

The Plaintiffs assert that each of their three expert marine surveyors "will offer opinions on <u>different</u> aspects of the Boat's condition." <u>Pls.' Obj.</u> at 2 (emphasis in original). The alleged differences identified by the Plaintiffs, however, are based primarily on the Plaintiffs' blatant mischaracterizations of their experts' proposed testimony.

        1.    <u>Thomas Greaves</u>

First, the Plaintiffs state that Thomas Greaves will testify that "the manner [in which] Sea

Ray had installed the engine exhaust system was inconsistent with MerCruiser's recommended specifications."[1]  Not only does this opinion not appear in Mr. Greaves' report; see Ex. 1 to Mot. in Limine; but he expressly disavowed any such opinion at his deposition.

The Plaintiffs had alleged in their Complaint that, "[o]n the basis of the marine survey, Thomas Greaves determined that . . . the manner in which the retro-fit exhaust system had been installed by Sea Ray was inconsistent with specifications previously recommended by the engine's manufacturer, MerCruiser . . . ."  Compl. ¶ 53.  At his deposition, however, Mr. Greaves denied this:

> Q  But first my question is:  How do you know that the installation was inconsistent with the specifications recommended by MerCruiser?
> A  I didn't know that.
> Q  You really didn't know that?
> A  No.

Dep. of Thomas Greaves, May 27, 2004, at 82:10-15.[2]  Indeed, Mr. Greaves admitted that he had never read "the specifications recommended by the engine's manufacturer, MerCruiser." Id. at 81:16-18.  Thus, while the Plaintiffs are undoubtedly correct in asserting that "[n]either Pfund nor Knowles will duplicate this testimony"; Pls.' Obj. at 5; Mr. Greaves will not offer any such testimony either.

### 2. Bruce Pfund

The Plaintiffs next assert that Bruce Pfund "will testify how Sea Ray further damaged the Boat by using the bow and stern towing eyes to lift the Boat during service, which the owner's

---

[1] The Plaintiffs also assert generally that Thomas Greaves will testify that "numerous structural defects and deficiencies were present in the Boat." Pls.' Obj. at 2.  This general opinion does not distinguish Mr. Greaves' expected testimony from that of Mr. Pfund or Mr. Knowles.

[2] Pertinent pages of deposition transcripts are attached hereto as Exhibit A.

manual prohibits. <u>This occurred after inspections of both Greaves' and Knowles</u>. This testimony is not cumulative within the meaning of Rule 403." <u>Id.</u> (emphasis added). This statement is simply false. First, if Sea Ray "damaged the Boat by using the bow and stern towing eyes to lift the Boat during service," this would have occurred <u>before</u> any of the inspections took place while the Boat was in Sea Ray's possession to be serviced. <u>See</u> Compl. ¶¶ 23-26 (Sea Ray was in possession of the Boat for the purpose of servicing it between November, 2000, and April, 2001).

Moreover, this testimony would indeed be cumulative, because <u>all three</u> of the Plaintiffs' marine surveyors have offered the opinion that Sea Ray allegedly damaged the Boat by using the stern towing eyes[3] to lift the Boat. <u>See</u> <u>Report of Anthony Knowles</u> at p. 2 ¶¶ H, I (Ex. 2 to <u>Mot. in Limine</u>); <u>Report of Thomas Greaves</u> at 1 ("Gelcoat stress cracks noted above lift rings . . . .")(Ex. 1 to <u>Mot. in Limine</u>); <u>see also</u> <u>Dep. of Thomas Greaves</u> at 36:12 – 37:14 (opining that these stress cracks were caused by "us[ing] the lift rings for lifting the boat.")

Finally, Mr. Pfund's "opinion" on this subject is not only cumulative of the testimony of the other marine surveyors, it is cumulative of the expected testimony of Plaintiff Peter Mains. At his deposition, Mr. Pfund testified that his conclusion that the stern towing eyes were used to lift the Boat, and that such use was contrary to instructions in the owner's manual, were mere parroting back of statements made to him by Mr. Mains:

> Q   Okay. Let's move on to talk about the stern towing eyes. The first sentence under that section of your report which is again on page 4 of Exhibit 1 says, "Both port and starboard towing eyes had been used to lift the vessel during Sea Ray service, although according to Mr. Mains this is specifically prohibited in the

---

[3] Contrary to the Plaintiffs' claim, Mr. Pfund has never offered the opinion that the <u>bow</u>, as opposed to the stern, towing eyes were used to lift the Boat. <u>Compare</u> <u>Pls.' Obj.</u> at 5 <u>with</u> <u>Report of Bruce Pfund</u> at 4 ("STERN TOWING EYES")(Ex. 3 to <u>Mot. in Limine</u>).

      vessel owners manual." How do you know that the towing eyes were used to lift the vessel during Sea Ray's service?

    A  Mr. Mains told me that he was present at the Sea Ray factory at the time it occurred.

    Q  Okay. And he told you that that was prohibited in the vessel owner's manual?

    A  He stated that the vessel owner's manual said don't lift the boat by the stern towing eyes.

    Q  Did you see a copy of the owner's manual?

    A  I did not.

<u>Dep. of Bruce Pfund</u>, Feb. 10. 2004, at 103:16 – 104:9. Thus, Mr. Pfund's testimony on this subject could not add anything to the testimony of Mr. Mains, other than the illusion that Mr. Pfund's testimony is based in some way on his experience as a marine surveyor rather than merely reflecting the fact that he presumes that Mr. Mains' factual claims are true.

        3.    <u>Anthony Knowles</u>

    Finally, with respect to Mr. Knowles, the Plaintiffs state that "Knowles will testify regarding the moisture content of the Boat's hull in November 2001; he also will testify how the Boat's stanchions were damaged while the Boat was at Defendant's factory from November 2000 to April 2001." <u>Pls.' Obj.</u> at 2-3.

    Mr. Knowles' opinions with respect to the hull moisture content as of November, 2001, is, at best, duplicative of Mr. Greaves' Report, which describes the hull moisture content as of June, 2001, when the hydrolock occurred and the Plaintiffs ceased using the Boat. <u>See</u> Ex. 1 to <u>Mot. in Limine</u> at 2 (describing condition of "BOTTOM" and "DECKS"). In fact, as set forth below, Mr. Pfund has provided an undisputed opinion that any differences in moisture readings over time after June of 2001 would be the result of migration of water within the hull, which was accelerated by the Plaintiffs' decision to shrink-wrap the Boat for a period of years after they

ceased using it.  Accordingly, the hull moisture content allegedly present in November of 2001, as opposed to June of 2001, is of little, if any, relevance to the amount of Plaintiffs' alleged damages or to any other issue.

Finally, Mr. Knowles' testimony regarding "how the Boat's stanchions were damaged while the Boat was at Defendant's factory from November 2000 to April 2001," like Mr. Pfund's testimony regarding the stern towing eyes, would be duplicative of Mr. Mains' testimony, because Mr. Knowles' "opinion" on this subject is nothing more than a statement that he chooses to accept the factual allegations made by Mr. Mains:

> Q   All right.  Let's go on to F which states, "All stanchions need rebedding because of deck water leaks.  The stanchions were stressed by the 'shrink-wrap' boat cover during road transportation."
> First of all, the part about the stanchions being stressed by the shrink-wrap during road transportation, how do you know that?
> A   I was told.
> Q   Okay.  Who told you that?
> A   Mr. Mains.

Dep. of Anthony Knowles, Feb. 3, 2004, at 68:16 – 69: 2.

   4. <u>Summary</u>

The Plaintiffs' efforts fall far short of establishing that <u>any</u> of their three expert marine surveyors will offer testimony that will not be cumulative of the others marine surveyors' testimony.  Even if the Plaintiffs could establish that <u>one</u> of those three would provide testimony that would not be cumulative, however, there would be no legitimate reason for them to offer the testimony of more than one marine surveyor

 **B.** **<u>The "Chronology of the Boat's Condition" Does Not Warrant Introduction of Cumulative Expert Testimony</u>**

Plaintiffs assert that "each expert is necessary to establish the chronology of the boat's

condition." Pls.' Obj. at 1.  Specifically, they wish to have Mr. Greaves testify as to the hull moisture content of the Boat in June of 2001, Mr. Knowles testify as to the hull moisture content of the Boat in November, 2001, and Mr. Pfund testify as to the hull moisture content in October of 2003.  See Pls.' Obj. at 2-3; Ex. 3 to Mot. in Limine at 1 (identifying the date of Mr. Pfund's inspection).

The chronology of the Boat's condition after June of 2001, however, is irrelevant to any of the Plaintiffs' claims.

> When the defendant's tort has physically damaged real or personal property without severing and taking any part of it, courts usually measure damages by one of two rules.  The first rule is the diminished value rule.  It gives the plaintiff the difference between the value of the property immediately before harm was done and the value immediately afterwards.  This measures the loss in capital value of the land or chattel.  The second rule is the cost rule.  It gives the plaintiff the cost of repair or replacement . . . .  This measures the potential cash impact on the plaintiff.

Dan v. Dobbs, The Law of Torts (2000) at § 379 at 1054-55 (emphasis added).  Under neither standard is the condition of the Boat months or years after any alleged harm relevant.

The reason for which the alleged condition of the Boat months or years after any alleged tort, and after the Boat was no longer in Sea Ray's possession, is not part of the Plaintiffs' measure of damages is amply demonstrated by the Plaintiffs' own Objection.  As the Plaintiffs note, Mr. Knowles reported that, during his 2003 inspection, he found that moisture in the Boat's hull had "'gradually migrated outward through the adjacent core material,' and [that] 'this process would have been accelerated by the high temperature developed under the shrinkwrap cover' since 2001."  Pls.' Obj. at 3; see also Ex. 2 to Mot. in Limine at 3.  Mr. Knowles' Report also states that "[h]eavy accumulations of dirt and mildew in way of these areas is interpreted as indicating that water leaking through the shrink wrap cover puddles in this region until it evaporates, and may be contributing to continued local moisture meter readings."  Ex. 2 to Mot.

in Limine at 3. Thus, the condition of the Boat, and specifically the hull moisture content, as of 2003 cannot be attributed to any alleged act or omission of Sea Ray for which the Plaintiffs seek damages.

Because Plaintiffs cannot show that the condition of the Boat after they ceased using it in June of 2001 and shrink wrapped it is relevant either to the measure of damages for which Sea Ray may be liable or for any other purpose, the alleged need to show "the chronology of the boat's condition" during the ensuing years does not justify the introduction of cumulative expert testimony.

### III. CONCLUSION

For the reasons stated above, and those set forth in its Motion in Limine, Sea Ray respectfully requests that the Court preclude Plaintiffs from introducing the testimony more than one of the three marine surveyors identified by them as potential expert witnesses.

Respectfully submitted,

DEFENDANT, SEA RAY BOATS, INC.

By  /s/ Daniel J. Foster
James H. Rotondo (ct05173)
jhrotondo@daypitney.com
Daniel J. Foster (ct24975)
djfoster@daypitney.com
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103-1212
(860) 275-0100
(860) 275-0343 fax
Its Attorneys

## CERTIFICATION

  I hereby certify that on this date a copy of foregoing **Defendant's Reply Memorandum in Further Support of its Motion in Limine** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                 /s/ Daniel  J. Foster
                 Daniel J. Foster (ct24975)