# EXHIBIT C

Service: Get by LEXSEE®
Citation: 2000 U.S. Dist. LEXIS 4075

*2000 U.S. Dist. LEXIS 4075, ***

**BRISTOL-MYERS SQUIBB COMPANY, Plaintiff, - against - RHONE-POULENC RORER, INC., CENTRE NATIONAL DE LA RECHERCHE SCIENTIFIQUE, and RHONE-POULENC RORER, S.A., Defendants.**

95 Civ. 8833 (RPP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 4075

April 3, 2000, Decided
April 5, 2000, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** In patent infringement case, plaintiff requested an order, opposed by defendant, that defendant's expert reports be amended, that defendant be required to reduce the number of expert reports, and for additional time to respond. Defendant requested an order precluding plaintiff from presenting certain expert testimony.

**OVERVIEW:** Defendant's argument that its initial expert reports were complete and sufficient was inappropriate. The provision in the discovery schedule for rebuttal expert reports did not permit defendant to evade the requirements of Fed. R. Civ. P. 26(a)(2) in its submission of initial expert reports. Since fact discovery was complete, the parties were placed on notice that direct expert testimony would be limited to the contents of the report unless the witness could show that such material was not available as of the date of his report. Plaintiff was to have the opportunity to review defendant's lost profits expert reports before each of its experts presented reports on the availability of the non-infringing substitutes it contended reduced or eliminated defendant's lost profits evidence. The prospect of 42 expert witnesses for defendant presented a problem of significant dimension. Accordingly, counsel for each party was directed to make a written proposal as to a method by which the case might be presented to the jury in a meaningful manner, including a reduction in the number of expert witnesses.

**OUTCOME:** Defendant was ordered to revise its initial expert reports, its request for an order precluding plaintiff from presenting expert testimony as to available non-infringing substitutes was denied, and both parties were directed to make a written proposal to reduce the number of expert witnesses.

**CORE TERMS:** expert reports, discovery, lost profits, non-infringing, patent, expert testimony, expert witness, off-the-market, infringement, causation, interrogatory, letter dated, expert opinions, burden of proof, reasonable probability, precluding, presenting, rebuttal, forming

## LEXISNEXIS® HEADNOTES    ⊟**Hide**

Civil Procedure > Discovery > Disclosures > General Overview 🔍
Civil Procedure > Discovery > Methods > Expert Witness Discovery 🔍
Evidence > Testimony > Experts > General Overview 🔍
*HN1* ↓ Fed. R. Civ. P. 26(a)(2) provides that a witness who is retained or specially employed to provide expert testimony pursuant to Fed. R. Evid. 702, 703, or 705 shall be identified and provide a written report containing a complete statement of all opinions to be

expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; and any exhibits to be used as a summary of or support for the opinions. Fed. R. Civ. P. 26(a)(2)(B). The report must be detailed and complete stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. More Like This Headnote

Civil Procedure > Discovery > Disclosures > Mandatory Disclosures
Civil Procedure > Discovery > Methods > Expert Witness Discovery
HN2 In any rebuttal report, an expert must disclose to the other party, as required by Fed. R. Civ. P. 26(e)(1), any additions or changes in the expert's opinions or to the basis and reasons therefor or in the data or other information considered by the witness in forming the opinions. More Like This Headnote

Civil Procedure > Discovery > Methods > Expert Witness Discovery
HN3 It is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported; it should be the goal of the parties to eliminate surprise, avoid unnecessary depositions and reduce costs. More Like This Headnote | Shepardize: Restrict By Headnote

Patent Law > Inequitable Conduct > General Overview
Patent Law > Infringement Actions > Burdens of Proof
Patent Law > Remedies > Damages > Patentholder Losses
HN4 To recover lost profits, the patent owner must show causation in fact, establishing that but for the infringement, he would have made additional profits. When basing the alleged lost profits on lost sales, the patent owner has an initial burden to show a reasonable probability that he would have made the asserted sales but for the infringement. Once the patent owner establishes a reasonable probability of but for causation, the burden then shifts to the accused infringer to show that the patent owner's but for causation claim is unreasonable for some or all of the lost sales. More Like This Headnote

**COUNSEL:** [*1]  For Plaintiff: Thomas H. Beck, Esq., Fitzpatrick, Cella, Harper & Scinto, New York, NY.

For Defendants: Philip E. Roux, Esq., Rogers & Wells LLP, New York, NY.

**JUDGES:** Robert P. Patterson, Jr., U.S.D.J.

**OPINION BY:** Robert P. Patterson, Jr.

**OPINION**

**OPINION AND ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

Plaintiff Bristol-Myers Squibb Company ("Bristol") by letter dated March 8, 2000, requests an order that the expert reports of defendant Rhone-Poulenc Rorer, Inc. ("RPR") be amended to require a full statement of the expert opinions and the basis for these opinions pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. In addition, Bristol complains that RPR has submitted 42 expert reports and asks that Court to require RPR to reduce the number of expert reports and to permit Bristol additional time to respond.

RPR, by letter dated March 16, 2000, opposes the issuance of such an order and requests an order precluding Bristol from presenting expert testimony in support of any contention that any off-the-

market product was an "available" non-infringing substitute for Taxol(R), asserting that, "under *Grain Processing Corp. v. American Maize-Products*, 185 F.3d 1341, 1352 (Fed. Cir. 1999), [\*2] Bristol has the burden of proof on this issue and, yet it submitted no expert report on this point by the February 25, 2000 deadline." (RPR Letter dated 3/16/00 at 1.)

On March 24, 2000, Bristol submitted a letter in reply.

These motions arise in the context of almost four years of discovery by the parties. Fact discovery ended two months ago, [1] with the exception of RPR's discovery of the availability of off-the-market products described in answers by Bristol to certain RPR contention interrogatories as constituting "available," non-infringing alternatives. The Court authorized RPR to conduct such discovery after the discovery cut off in view of Bristol's response to that interrogatory at the end of the discovery period.

**FOOTNOTES**

[1] Included in fact discovery were extensive and detailed answers to contention interrogatories setting forth the position of each party on the many issues of this contentious litigation.

RPR's argument that its initial expert reports are complete and sufficient is inappropriate in the context [\*3] of this case and the scheduling orders issued by the Court. Each party was given two months to review the expert reports of the other side. RPR, since it bears the burden of proof of infringement, was to produce its expert reports first. The provision in the discovery schedule for rebuttal expert reports does not permit RPR to evade the requirements of Rule 26(a)(2) in its submission of initial expert reports.

*HN1* Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that "a witness who is retained or specially employed to provide expert testimony" pursuant to Rules 702, 703 or 705 of the Federal Rules of Evidence shall be identified and provide a written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." Fed. R. Civ. P. 26(a)(2)(B). The report must be "detailed and complete . . . stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Advisory Committee Notes, 1993 Amendments, paragraph 2. *See also* [\*4] *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 727 (7th Cir. 1996); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996), *cert. denied, Cedar Point Oil Co. v. Sierra Club*, 519 U.S. 811, 136 L. Ed. 2d 20, 117 S. Ct. 57 (1996).

Since fact discovery is complete, the parties are hereby placed on notice that direct testimony by any expert witness at trial shall be limited to the contents of the Expert Report accompanying the designation of the witness and not any supplementation of the Expert Report unless the witness can show that such material was not available either to him or to counsel retaining him as of the date of his report. *HN2* In any Rebuttal Report, an expert must disclose to the other party, as required by Fed. R. Civ. P. 26(e)(1), any additions or changes in the expert's opinions or to the basis and reasons therefor or in the data or other information considered by the witness in forming the opinions.

RPR is ordered to revise its initial expert reports to comply with Rule 26(a)(2) by April 10, 2000. It is counsel's responsibility to make sure that the expert reports comply with Fed. R. Civ. P. 26. *Salgado By Salgado v. General Motors Corp.*, 150 F.3d 735, 741-42 n.6 (7th Cir. 1998). [\*5] ("*HN3* It is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported; it should be the goal of the parties to eliminate surprise, avoid unnecessary depositions and reduce costs.") Compliance with Rule 26, in particular the requirement of total disclosure, is emphasized in the Advisory Committee Comments. *Id.* Counsel are ordered to study the footnote in *Salgado* and adhere to it.

The Court's review of Bristol's complaint about the Expert Reports of Messrs. Martin, Osborne,

Keiller and Jarosz indicates that they are not in compliance with Rule 26(a)(2)(B). Rather than explicate those deficiencies and other deficiencies in the reports, the Court, if necessary, will review the revised reports at time of trial pursuant to the Rule 26(a)(2)(B) standard and consider what action, if any, to take under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

RPR's request for an order precluding Bristol from presenting expert testimony in support of any contention that any off-the-market product was an "available" non-infringing substitute for Taxol(R), the alleged infringing product is denied.  **[*6]**  The availability of non-infringing substitutes only becomes an issue if plaintiff is seeking lost profits on its sale of Taxotere or a product manufactured under the process patent which is being infringed. As stated in *Grain Processing Corp.  ▾v. American Maize-Products Co.*:

*HN4*▾To recover lost profits, the patent owner must show "causation in fact," establishing that "but for" the infringement, he would have made additional profits. When basing the alleged lost profits on lost sales, the patent owner has an initial burden to show a reasonable probability that he would have made the asserted sales "but for" the infringement. Once the patent owner establishes a reasonable probability of "but for" causation, "the burden then shifts to the accused infringer to show that [the patent owner's 'but for' causation claim] is unreasonable for some or all of the lost sales."

185 F.3d 1341, 1349 (Fed. Cir. 1999) (internal citations omitted).

Bristol must have the opportunity to review RPR's lost profits expert reports before each of its experts presents detailed and thorough reports on the availability of the non-infringing substitutes it contends reduce or eliminate **[*7]** RPR's lost profits evidence.

The number of expert reports designated by RPR presents a problem of significant dimension. This is a jury case. The prospect of 42 expert witnesses for RPR raises questions about the length of trial, the jury impanelment procedures to be utilized, as well as the obvious question of whether a jury is likely to remain attentive and to deliberate on each of the issues raised by attorneys for two corporations unwilling to reach a business accommodation.

Accordingly, counsel for each party are directed to make a written proposal to the Court by April 14, 2000 as to a method by which this case may be presented to the jury in a meaningful manner, including a reduction in the number of expert witnesses. Such presentation should outline in general terms the scope of each witness's expert testimony so that the necessity for such witness to be called can be weighed.

IT IS SO ORDERED.

Dated: New York, New York

April 3, 2000

Robert P. Patterson, Jr.

U.S.D.J.

Service: **Get by LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 4075**
View: Full
Date/Time: Monday, July 16, 2007 - 1:08 PM EDT

\* Signal Legend:
● -  Warning: Negative treatment is indicated
▣ -  Questioned: Validity questioned by citing refs

⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓣ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

 **LexisNexis**®

About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Service: Get by LEXSEE®
Citation: 2002 U.S. Dist. LEXIS 3225

*2002 U.S. Dist. LEXIS 3225, \**

In re OMEPRAZOLE PATENT LITIGATION; M-21-81, 98cv3657 & 98cv8094 Genpharm, 99cv8928 & 99cv9888 Kudco, 99cv8926 & 99cv9887 Andrx, 00cv4467 & 99cv8927 Astra

M-21-81, MDL Docket No. 1291

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 3225

February 26, 2002, Decided
February 27, 2002, Filed

**DISPOSITION:** [*1]  Defendants' motions to supplement their statements pursuant to 35 U.S.C. § 282 GRANTED in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patent holders sued defendants, alleged infringers, for patent infringement. The parties filed several interrelated motions concerning the evidence to be presented by the alleged infringers in support of their allegations of the invalidity of two patents.

**OVERVIEW:** The patent holders sought to preclude two experts from testifying to new opinions and new documents referenced in supplemental expert reports. One expert witness was precluded from testifying about the facts and opinions in his supplemental expert report because the alleged infringers lacked diligence in locating a technical brochure that served as the basis for the supplemental report and the resultant prejudice to the patent holders strongly outweighed any interest in presenting the document at trial. The other expert witness was precluded from testifying to any of the opinions in his supplemental report because one of the alleged infringer had failed to disclose the expert's opinion in a timely and proper manner and the prejudice to the patent holders that would have accrued by permitting the introduction of new documents was too great. The alleged infringers were allowed to rely on certain documents that were identified by the experts in their original reports and were listed in their 35 U.S.C.S. § 282 statements. The alleged infringers were also allowed to supplement their § 282 statements with references to other patents as the patent holders were not prejudiced thereby.

**OUTCOME:** The patent holders' motion to preclude two experts from testifying to the new opinions and new documents referenced in their supplemental expert reports and to preclude the alleged infringers from relying on certain belatedly disclosed evidence was granted. The alleged infringers' motions to supplement their 35 U.S.C.S. § 282 statements were granted with respect to certain patents.

**CORE TERMS:** expert report, brochure, supplemental, discovery, invalidity, patent, notice, prior art, interrogatories, deposition, disclosure, undisclosed, testifying, introduce, infringement, admitting, qualify, chart, new evidence, cross-examination, harmless, intend, expert opinions, expert witnesses, permitted to testify, failure to disclose, supplementation, admissibility, authenticity, preclusion

## LEXISNEXIS® HEADNOTES                                                ⊟ **Hide**

Patent Law > Anticipation & Novelty > General Overview
Patent Law > Statutory Bars > Experimental Use > General Overview

HN1⊻Application of both 35 U.S.C.S. § 102(a) and (b) requires the court to determine whether a document qualifies as a printed publication. To qualify as a publication, a document must be available so interested members of the public could obtain the information if they wanted to. There is no routine way to apply that standard to a particular document, and the determination of whether a document qualifies can involve intense factual inquiry.  More Like This Headnote

Civil Procedure > Discovery > Misconduct 🗎
HN2⊻Fed. R. Civ. P. 37(c)(1) requires preclusion of new expert opinions and bases for those opinions unless failure to disclose them is harmless.  More Like This Headnote

Civil Procedure > Discovery > Disclosures > General Overview 🗎
Civil Procedure > Discovery > Misconduct 🗎
HN3⊻Fed. R. Civ. P. 37(c)(1) is described as an automatic sanction for failure to comply with Fed. R. Civ. P. 26(a)(2)(B).  More Like This Headnote

Civil Procedure > Discovery > Misconduct 🗎
HN4⊻The factors identified by the United States Court of Appeals for the Second Circuit to be considered when granting a motion to preclude expert testimony that was not properly disclosed are (1) the explanation for failure to comply with a discovery order, (2) the importance of the new evidence, (3) the prejudice suffered by the opposing party as a result of having to meet the new evidence, and (4) the possibility of a continuance.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Patent Law > Infringement Actions > Defenses > Patent Invalidity > Notice 🗎
HN5⊻See 35 U.S.C.S. § 282.

Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview 🗎
HN6⊻Disclosure sufficient to meet the requirements of 35 U.S.C.S. § 282 is generally necessary for the defendants to use documents in their invalidity case, but it is not sufficient. First, the defendants must demonstrate that the documents were properly disclosed during discovery as required by this court's orders and the Federal Rules of Civil Procedure. The defendants must then demonstrate that the strictures of § 282 were met. However, if the defendants inadvertently failed to meet those requirements or if the failure is harmless, the court may exercise its discretion to permit supplementation of the § 282 statements and allow the documents to be used at trial.  More Like This Headnote

Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview 🗎
Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview 🗎
HN7⊻The objective of 35 U.S.C.S. § 282, a notice provision, to prevent unfair and prejudicial surprise by the production of unexpected and unprepared for prior-art references at trial. However, § 282 does not require an arbitrary or absolute rule barring introduction of relevant, material evidence on the purely formalistic rule that notice of reliance was lacking. The court has broad discretion to permit a § 282 statement to be supplemented and to allow references not mentioned in the statement to be offered into evidence at trial.  More Like This Headnote

**COUNSEL:** Attorneys for plaintiffs Astra Akiebolag, et al.: Errol B. Taylor, Fredrick M. Zullow, Robert L. Baechtold, Charles P. Baker, Gregory B. Sephton and John D. Carlin of Fitzpatrick, Cella, Harper & Scinto, New York, NY.

Attorneys for defendant Andrx Pharmaceuticals, Inc.: Louis M. Solomon, Margaret A. Dale and Colin A. Underwood of Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York, NY, and James V. Costigau and Martin P. Endres of Hodman & Costigan, P.C., New York, NY.

Attorneys for defendant Genpharm, Inc.: Edgar H. Haug, Jeffrey A. Hovden, Charles J. Raubicheck and Christian M. Smolizza of Frommer Lawrence & Haug LLP, New York, NY.

Attorneys for defendants Kremers Urban Development Co. et al.: Brian M. Poissant, F. Dominick Cerrito, Ronald M. Daignault and Leo Merken of Pennie & Edmonds LLP, New York, NY. **[*2]**

**JUDGES:** BARBARA S. JONES, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** BARBARA S. JONES

**OPINION**

*Memorandum & Order*

BARBARA S. JONES

UNITED STATES DISTRICT JUDGE

I. INTRODUCTION

This Memorandum and Order addresses several interrelated motions concerning the evidence to be presented by Defendants in support of their allegations of the invalidity of the '505 and '230 patents. For the following reasons, the court GRANTS Astra's motion to preclude Dr. Stuart Porter and Dr. Michael John Story from testifying to the new opinions and new documents referenced in their Supplemental Expert Reports. The court also precludes Defendants from relying on certain belatedly disclosed evidence. Finally, the court GRANTS in part Defendants' motions to supplement their statements pursuant to 35 U.S.C. § 282.

II. DEFENDANTS' **[*3]** SUPPLEMENTAL EXPERT REPORTS

On February 11, 2002, Astra moved to preclude Defendants' expert witnesses Dr. Story and Dr. Porter from testifying for Genpharm and Cheminor, respectively, to the opinions recited in their Supplemental Expert Reports. (*See* Letter from Astra to court of 2/11/02 ("Astra 2/11/02").) The court considers each witness in turn.

A. DR. STORY

The Supplemental Expert Report of Dr. Michael John Story ("Story Supp."), dated February 1, 2002, reviews a technical brochure allegedly published in 1969 by Shinetsu ("1969 brochure"). It also explains how the information provided in the brochure supports the opinions set forth in the original Expert Report of Dr. Michael John Story ("Story Rep."), dated August 23, 2000. The 1969 brochure was undiscovered and, therefore, undisclosed prior to December of 2001.

In opposing Astra's motion to preclude, Genpharm argues that there is no prejudice to Astra because Dr. Story does not present new opinions in his Supplemental Expert Report. (*See* Letter from Genpharm to court of 2/18/02 ("Genpharm 2/18/02"), at 1-2.) Dr. Story's Supplemental Expert Report, however, provides a detailed analysis of the 1969 brochure to support **[*4]** those opinions. Even if the opinions, as opposed to their factual support, contained in the Supplemental Expert Report are not new, it is clear that the 1969 brochure is new and was never disclosed as support for Dr. Story's opinions until his Supplemental Expert Report was submitted. Counsel for Genpharm "found" the 1969 brochure in Japan on December 4, 2001, just two days before the start of trial. (*See* Genpharm 2/18/02, at 1.)

The court finds a lack of diligence on the part of Defendants in failing to uncover the 1969 brochure at its publisher's offices--exactly where it should have been--until two days before trial. Even Dr. Story testifies that documentation provided by suppliers, like Shinetsu, contains important information about invalidity. At the beginning of his review of the prior art, Dr. Story states:

*As a formulator, on starting a new formulation task I would become familiar with the available literature concerning the drug to be formulated as well as related literature concerning formulation systems and dosage forms. I would first refer to the technical information available from suppliers of relevant raw materials.* This technical information would provide **[*5]** me with specifications of the raw materials, their areas of application, methods for incorporating the materials in formulations, and example formulations for the materials.

(Story Rep. at 41 (emphasis added).) From this introduction, Dr. Story launches into a review of technical publications, similar to the 1969 brochure, and his related conclusions about the validity of the '505 and '230 patents. Despite Dr. Story's own testimony about the importance of examining technical documents describing excipients both for creating a formulation and for evaluating the validity of a subsequent invention, Genpharm provides no satisfactory explanation as to why neither it nor any other Defendant procured these documents directly from Shinetsu during discovery. Instead, Genpharm claims it was unaware it needed to send a representative to Japan for fact-gathering until Astra refused to stipulate to the authenticity of some other Shinetsu documents Genpharm had disclosed previously. Only then, when Genpharm sent counsel to Shinetsu's offices in Japan to gather evidence to support the authentication of those documents was the 1969 brochure "discovered." (*See* Genpharm 2/18/02, at 1.)

 **[*6]** The only remaining issue is whether admitting the brochure at this late date will prejudice Plaintiffs. Genpharm's claim that admitting the 1969 brochure will not prejudice Astra, (Genpharm 2/18/02, at 2), is entirely incorrect. "The prejudice to Astra is apparent," (Astra 2/11/02, at 1), and goes beyond the "newness" of Dr. Story's opinions to issues of authentication, admissibility, and publication of the 1969 brochure. *HN1*Specifically, application of both 35 U.S.C. § 102(a) and (b) requires the court to determine whether a document qualifies as "a printed publication." To qualify as a "publication," a document must be available so "interested members of the public could obtain the information if they wanted to." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988). There is no routine way to apply that standard to a particular document, and the determination of whether a document qualifies can involve intense factual inquiry. *Compare In re Hall*, 781 F.2d 897 (Fed. Cir. 1986) (holding that a single catalogued **[*7]** thesis in one university might qualify), *with In re Cronyn*, 890 F.2d 1158 (Fed. Cir. 1989) (holding three undergraduate theses failed to qualify). The status of the 1969 brochure is hotly disputed in this case. Among other issues, there are disagreements about dating the document, about whether the brochure was disseminated outside Shinetsu, and about whether it was used as a marketing document. Even assuming such usage, the parties dispute when and how widely the document was distributed.

If Astra had been given proper notice of the 1969 brochure during discovery, Astra may have taken many investigatory steps in order to probe those disputed facts. Astra could have sent counsel to Japan to collect documents and interview witnesses, obtained the employment records of individuals, like Mr. Harold Zeller, who claim to have received the brochure, or sought discovery from other pharmaceutical companies in an effort to determine whether and when those companies received the brochure. Here prejudice comes from not only the face of the document and its contents, [1] but also from the missing facts surrounding the background of the document. Given the opportunity, Astra **[*8]** could conduct substantially more discovery on the issue of publication.

## FOOTNOTES

[1] The potential prejudice about the background of the document severely overshadows its actual contents in this case. In fact, much of the same information is contained within a 1975 TC-5 brochure that is addressed in Dr. Story's original Expert Report.


Now, in the middle of a trial that has been ongoing since December 6, 2001, the court is not willing to incur the extensive delay required to provide Astra the opportunity for the discovery it would be due regarding the 1969 brochure. In an effort to decide this case on its merits despite belated discovery disclosures, the court has adjourned the trial to allow Plaintiffs to meet Defendants' new and previously undisclosed theories. However, the court will not do so in this instance. Defendants'

validity defenses present different circumstances from their noninfringement positions. After the close of discovery, Defendants continued to change their products, processes, and ANDA submissions, **[\*9]** necessitating further discovery to keep the proof relevant in the infringement case. Each Defendant has also raised a previously undisclosed *Daubert* challenge to the testimony of Plaintiffs' experts, and, as the infringement proofs closed, Defendants even changed their proposed claim constructions. Since some infringement issues are unique to each Defendant and their defenses have evolved in different ways, the court has permitted Defendants to put on certain substantive and *Daubert*-related evidence that was not properly disclosed during discovery. The court has also ensured that Plaintiffs were not prejudiced by permitting Plaintiffs to take depositions, present their own witnesses and new expert opinions in rebuttal, and conduct other necessary discovery. Unlike Defendants' non-infringement defenses, validity has never presented a moving target. The patent claims and the prior art have not changed since this case was filed, and the '505 and '230 patents are not different for each Defendant. What has changed is the effort Defendants have recently poured into discovery of new materials.

The court finds that Defendants' lack of diligence in locating the 1969 brochure and the **[\*10]** resultant prejudice to Astra strongly outweigh Defendants' interest in presenting the document at trial. Defendants are precluded from relying on the 1969 brochure. Dr. Story is precluded from testifying to the opinions and facts expressed in his Supplemental Expert Report. *See Fund Commission Service II, Inc. v. Westpac Banking Co.*, 1996 U.S. Dist. LEXIS 11937, 93 Civ. 8298, 1996 WL 469660, at \*3 (S.D.N.Y. Aug. 16, 1996) *HN2*(Rule 37(c)(1) requires preclusion of new expert opinions and bases for those opinions unless failure to disclose them is "harmless.").

## B. DR. PORTER

The Supplemental Opinion to Expert Report by Stuart C. Porter, Ph.D., ("Porter Supp."), which was submitted on February 6, 2002, reviews thirteen references and discusses how those additional documents supplement and support the opinions expressed in the original Expert Report of Dr. Stuart Porter ("Porter Rep."), which was submitted on July 27, 2000. Cheminor indicates that the Supplemental Expert Report was submitted to address new evidence produced after the close of discovery and other **[\*11]** references that support opinions previously disclosed in Dr. Porter's original Expert Report. (*See* Letter from Cheminor to the court of 2/18/02 ("Cheminor 2/18/02"), at 2.) Sections A through C of the Supplemental Expert Report discuss Shinetsu brochures, including the 1969 brochure, Shinetsu technical bulletins, and an FMC brochure. Cheminor's primary argument in support of Dr. Porter's new discussion of those documents is that the documents were produced after expert discovery closed. [2] (*See* Cheminor 2/18/02, at 2-3.) Cheminor also relies on the fact that many of the documents were produced in response to an Astra subpoena at the deposition of Mr. Zeller in January, 2002. (*See id.*) Cheminor's arguments fail because they entirely overlook Defendants' lack of diligence during discovery, which caused late disclosure of the documents and Dr. Porter's opinions concerning them. [3] For instance, it only became necessary for Astra to subpoena documents and depose Mr. Zeller when it became apparent during trial that Cheminor intended to introduce previously undisclosed documents in support of its invalidity defense.

## FOOTNOTES

[2] With respect to the FMC brochure discussed in Section C of Dr. Porter's Supplemental Expert Report, Cheminor asserts that the document was produced after expert discovery closed. (*See* Cheminor 2/18/02, at 2.) Cheminor is incorrect. The document was, in fact, produced by Astra to Cheminor on April 6, 2000. (*See* Letter from Astra to court of 2/23/02 ("Astra 2/23/02"), at 2.) Dr. Porter was even provided a copy of the document prior to submission of his original Expert Report. (*See id.*) **[\*12]**

[3] Cheminor also argues that the court previously ruled during the trial that it could introduce these new documents and expert opinions. (Cheminor 2/18/02, at 2-3 (citing Trial Tr. 2119-28).) This is incorrect. Suffice it to say that the court had not, at that time, fully appreciated the potential prejudice to Astra presented by the materials being discussed. Moreover, the full range of documents and witnesses being discussed was unclear.

While many of the new documents were first produced during trial, some of them, like the FMC brochure, were available earlier. For example, in addition to their production during the deposition of Mr. Zeller, the 1974 and 1977 Shinetsu brochures were produced by Mr. Zeller in July of 2001. (*See* Cheminor 2/18/02, at 2.) Similarly, Technical Bulletin H-17 was available prior to September 2000. (*See* Cheminor 2/18/02, at 2, 2 n.2.) All of the documents discussed in Section D of Dr. Porter's Supplemental Expert Report were also available to Cheminor long before trial commenced.

Section D "updates support" for the opinions expressed in Dr. Porter's original **[\*13]** Expert Report "with new references." (Cheminor 2/18/02, at 3.) In particular, Dr. Porter cites a July 6, 1987, Information Disclosure Statement ("IDS") from the '230 patent file history and U.K. <u>patent 1485</u>676, which was listed in the IDS, as evidence in support of his original anticipation opinion based on a 1984 article. (Porter Supp. at 4.) Although Cheminor argues that Dr. Porter referred to the IDS in his deposition, a review of the deposition negates Cheminor's argument. (*See* Porter Dep. Tr. 8, 97-98.) In fact, Dr. Porter chose not to rely on the file histories of the patents-in-suit, including the IDS, to support his opinions during discovery. (*See* Porter Dep. Tr. 8:5-21.)

Dr. Porter also cites two publications as support for his opinion that insulin is an acid-labile substance. (*See* Porter Supp. at 4.) At his deposition when he was asked to supply the basis for his opinion that insulin is acid labile, Dr. Porter stated only, "because I believe it is a protein in nature." (Porter Dep. Tr. 103.) Dr. Porter did not rely on either *Gaddum's Pharmacology* or *Chemical Stability of Pharmaceuticals* as support for his opinion in his Expert Report or at his deposition. **[\*14]** (*See* Porter Supp. at 4.) He can not do so now. The documents bear dates of 1978 and 1986; nevertheless, Cheminor provides no explanation as to why reliance on the two documents was not disclosed until well into the trial. Cheminor does not address its reasons for waiting to submit a supplemental report until the eve of Dr. Porter's testimony; moreover, the court cannot envision a reasonable explanation for doing so.

Like Dr. Story, Dr. Porter is precluded from testifying to any of the opinions expressed in his Supplemental Expert Report. [4] Cheminor utterly failed to disclose Dr. Porter's opinions in a timely and proper manner, and the prejudice that would accrue to Astra by permitting any of the new documents, including the 1969 Shinetsu brochure, is too great to permit the late opinions to be admitted. See <u>Fund Commission Service II, Inc. v. Westpac Banking Co., 1996 U.S. Dist. LEXIS 11937, 93</u> Civ. 8298, 1996 WL 469660, at \*3 (S.D.N.Y. Aug. 16, 1996) *HN3*(describing <u>Rule 37(c) (1)</u> as an "automatic sanction" for failure to comply with <u>Rule 26(a)(2)(B)</u>). **[\*15]** <u>Rule 37(c)(1)</u> requires preclusion of the new opinions and bases for the opinions unless Defendants' failure to disclose them is "harmless." See *Fund Commission Service*, <u>1996 U.S. Dist. LEXIS 11937, 1996 WL 469660</u>, at \*3. As discussed above, failure to disclose the opinions and documents now relied upon in Dr. Porter's Supplemental Expert Report was not harmless in this case. A great deal of prejudice would redound to Astra if Astra was forced to respond to this new evidence at such a late stage in the trial.

**FOOTNOTES**

[4] Cheminor reminds the court that Dr. Porter did include the TC-5 brochure in his original Expert Report. (*See* Cheminor 2/18/02, at 2.) Of course, to the extent that Dr. Porter's original Expert Report discussed the TC-5 brochure (Reference 4 in Section A of Dr. Porter's Supplemental Expert Report), Dr. Porter may testify concerning the document and those opinions.

C. CONCLUSION: EXPERT REPORTS

*HN4* **[\*16]** The factors identified by the Second Circuit in <u>*Softel Inc. v. Dragon Medical & Scientific Comm., Inc.*, 118 F.3d 955, 962 (2d Cir. 1997)</u>, to be considered when granting a motion to preclude expert testimony that was not properly disclosed support the court's decision to preclude both Dr. Story and Dr. Porter from testifying to the opinions set forth in their Supplemental Expert Reports. Those factors are (1) the explanation for failure to comply with a discovery order, (2) the

importance of the new evidence, (3) the prejudice suffered by the opposing party as a result of having to meet the new evidence, and (4) the possibility of a continuance. *Id.* at 962 (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988). Not one of those factors weighs in favor of permitting the new opinions in this case. Moreover, the first and third factors weigh heavily for preclusion. [5] Accordingly, both Dr. Story and Dr. Porter are precluded from testifying to the new opinions they disclosed only this month in their Supplemental Expert Reports. *See, e.g., Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 2000 U.S. Dist. LEXIS 4075, 2000 WL 356412, [*17] at *2 (S.D.N.Y. Apr. 2, 2000) (holding that "direct testimony by any expert witness at trial shall be limited to the contents of the Expert Report"); *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp. 2d 1045, 1061-62 & 1064 (D. Minn. 1999) (striking a party's eleventh-hour expert report, characterizing it as "trial by ambush").

## FOOTNOTES

[5] Defendant Genpharm attempts to distinguish the result in *Softel* in part by claiming that there is no prejudice to Astra by permitting Dr. Story's new opinions. (*See* Letter from Genpharm to court of 2/18/02, at 2 n.1.) As noted above, however, Genpharm's argument is unpersuasive. Even the limited proffer of additional testimony and the 1969 brochure in Dr. Story's Supplemental Expert Report would involve serious prejudice if Astra were forced to meet claims that the brochure constitutes a prior art publication for invalidity purposes.

## III. DOCUMENTS

On December 3, 2001, Astra submitted a related motion to the court--Astra's Motion in Limine to Limit [*18] Each Defendant to Offering as Prior Art the Evidence It Identified in Its Expert Reports and in Response to Contention Interrogatories. On February 22, 2002, Astra renewed that motion with respect to the '505 and '230 patents. At bottom, this motion seeks to preclude Defendants from relying on numerous documents listed in their § 282 statements that were not properly identified during discovery. As Astra itself notes, Defendants may introduce at trial prior art either relied on in expert reports or identified in responses to contention interrogatories. There are, however, two other categories of documents at issue. First, there are documents listed in expert reports that are not specifically addressed by the expert in the report. Second, there are the documents listed on the § 282 statement that were neither discussed by experts nor disclosed in responses to interrogatories. Since the issue is one of notice, the court must decide the motion document by document, taking into account all the circumstances surrounding disclosure of each document during discovery. [6]

## FOOTNOTES

[6] An issue related to the question of proper disclosure of the documents during discovery is that of whether each Defendant included the documents in the list required by 35 U.S.C. § 282. Section 282 provides:

HN5 In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Claims Court, as showing the state of the art, and the name and address of any person who may be relied upon as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.

*HN6*⊕Disclosure sufficient to meet the requirements of § 282 is generally necessary for Defendants to use documents in their invalidity case, but it is not sufficient. *See ATD Corp. v. Lydall, Inc., 159 F.3d 534, 551 (Fed. Cir. 1998)* ("The purpose of § 282, like that of the Federal Rules, is to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence."). First, Defendants must demonstrate that the documents were properly disclosed during discovery as required by this court's orders and the Federal Rules. Defendants must then demonstrate that the strictures of § 282 were met. However, if Defendants inadvertently failed to meet those requirements or if the failure is harmless, the court may exercise its discretion to permit supplementation of the § 282 statements and allow the documents to be used at trial. *See Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874 (Fed Cir. 1986).*


**[*19]  A. GENPHARM**

In response to the court's request that each Defendant submit a list of the prior art upon which it intends to rely during its invalidity case with respect to the '505 and '230 patents, Genpharm submitted a binder to the court on February 19, 2002, that listed eleven documents. Those documents are exhibits G13, G23A, G25, G26, G31, G32, G345, G765, G767, G864, and K58. Also in response to a request by the court, Genpharm submitted copies of all expert reports submitted by its expert Dr. John Michael Story with respect to the '505 and '230 patents. (*See* Story Rep. (discussing invalidity); Expert Rebuttal Rep. of Dr. Michael John Story ("Story Reb.") (discussing infringement); Story Supp. (discussing invalidity).) Clearly, Genpharm may rely on documents G23A, G25, G26, G31, and G32 during its invalidity case on the '505 and '230 patents because each of those documents is discussed in Dr. Story's original Expert Report submitted on August 23, 2000; moreover, all of those documents are listed in Genpharm's § 282 statements.

Genpharm may also rely on documents G13 and K58 because they were identified in Dr. Story's Expert Report as documents "reviewed" by Dr. Story,  **[*20]**  (*see* Story Rep. Ex. 3), and listed in Genpharm's § 282 statements. Therefore, Astra had notice that the documents were at issue. While Genpharm will be permitted to introduce both documents at trial, Dr. Story may not provide any opinions concerning the documents or rely on the documents if such opinions or reliance were not disclosed during discovery. The court notes that Dr. Story did opine on K58 at length during his deposition, (*see, e.g.*, Story Dep. of 11/16/00, at 273-89), and Dr. Story may testify to his opinions as disclosed therein. Astra may object to particular use of these documents at trial should objection be appropriate.

Genpharm may rely on Exhibit G345 at trial when examining fact witnesses or during cross-examination, if appropriate. Astra acknowledges that it received notice that the document was in issue through Genpharm's Notice Letters. Moreover, Genpharm listed this document in response to Astra's contention interrogatories concerning both the '505 and the '230 patents. (*See* Def. Genpharm's Supp. Resp. to Pls.' Contention Interrogs. at 11-12.) Although the document was inadvertently omitted from Genpharm's § 282 statements, the court will permit **[*21]** Genpharm to supplement its § 282 statements to add this document. *See* discussion *infra* Part IV.A. However, the document was neither discussed nor listed in Dr. Story's expert reports, and the court cannot find a reference to the document during Dr. Story's depositions. Dr. Story may neither testify to any previously undisclosed opinion with respect to this document nor rely on this document as support or basis for an opinion unless he disclosed it as such during discovery. Astra may object to particular use of this document at trial should objection be appropriate.

Genpharm may also rely on exhibits G765 and G767 at trial when examining fact witnesses or during cross-examination, if appropriate. [7] Genpharm has indicated to the court that it does not intend to have Dr. Story testify to either exhibit G765, (*see* Letter from Genpharm to court of 2/23/02 ("Genpharm 2/23/02")), or exhibit G767, (*see* Genpharm 2/22/02, at 3). Astra is correct that Genpharm did not include either of these references in its answers to Astra's contention interrogatories, and they are not listed in Genpharm's § 282 statements. However, permitting Genpharm to rely on these documents would not **[*22]** prejudice Astra in any way; therefore, the court will permit Genpharm to rely on the documents at trial. Exhibit G765--British Patent No. 829,055--is part of the certified file history of the '230 patent and was produced by Astra to

Genpharm in January 2001. (Astra 2/22/02.) As part of the certified file history, the document was already admitted into evidence on January 3, 2002. Exhibit G767--U.S. Patent No. 4,540,685--was produced by Astra on November 16, 1998. (Genpharm 2/22/02, at 3.) Of course, Astra's expert Dr. Langer will be permitted to offer opinions as to these documents.

**FOOTNOTES**

7 Astra suggests that non-expert witnesses should not be permitted to testify concerning prior art because "the test in patent law is not what a reference means to a lay person, but rather what it means to a person skilled in the art." (Letter from Astra to court of 2/25/02, at 2.) While Astra is correct that neither the court nor a lay witness not skilled in the art can be confident that it has understood a particular reference without guidance, fact witnesses who are skilled in the art, including the named inventors of the '505 and '230 patents, are competent to testify concerning prior art documents.

**[*23]**  For reasons already discussed, Genpharm may not rely on G864, the 1969 Shinetsu brochure, at trial. *See* discussion *supra* Part II.A.

Genpharm also submitted an Offer of Proof Regarding the Authenticity and Admissibility of Four Shinetsu Pamphlets and the Book *Coating of Drugs* on February 12, 2002. On February 19, 2002, Astra responded with its Opposition, and on February 21, 2002, Genpharm submitted its Reply. The motion is relevant to the documents under consideration in this Order. In particular, the offer of proof discusses two of the documents Genpharm will be permitted to rely on at trial--the 1975 brochure and *Coating of Drugs*. The court has reviewed these motion papers but will not decide the issues of authenticity and admissibility until the documents are offered at trial.

**B. CHEMINOR**

In response to the court's request that each Defendant submit a list of the prior art upon which it intends to rely during its invalidity defense with respect to the '505 and '230 patents, Cheminor submitted a list of nearly fifty documents. (*See* Letter from Cheminor to court of 2/20/02 ("Cheminor 2/20/02").) Cheminor also provided the court with additional information in **[*24]** chart format. (*See* Letter from Cheminor to court of 2/22/02 ("Cheminor 2/22/02").) Cheminor included within that chart a column indicating the witnesses who would be questioned concerning each document listed. Only expert witnesses were listed; therefore, Cheminor will not be permitted to question any fact witnesses about these documents at trial. Moreover, Dr. Porter will not be permitted to address items 19-33. (*See* Cheminor 2/20/02, at 1; *see also* Letter from Cheminor to court of 2/25/02 ("Cheminor 2/25/02").) For all documents Cheminor is permitted to introduce at trial, Dr. Porter himself may not provide any opinions concerning the documents or rely on the documents unless such opinions or reliance were disclosed during discovery.

Cheminor may rely for all purposes on items numbered 4, 5, 6, 8, 9, 10c, 11, 14, 15, 16, 17, 18 and U.S. Patent No. 4,738,974 (part of item 2), the Nishimura, et al., reference (part of item 12), and Japanese Patent Application No. 57-130188 (part of item 13). 8 Those documents were all discussed in Dr. Porter's initial Expert Report and listed in Cheminor's § 282 statements. Several of those documents were also included in Cheminor's **[*25]**  responses to Astra's contention interrogatories.

**FOOTNOTES**

8 Cheminor did not supply the court with document exhibit numbers in its submissions. Therefore, the numbers used by the court refer to the list numbers provided by Cheminor in the chart submitted to the court by letter on February 22, 2002.

Cheminor may also rely on European application EP 124,495 (part of item 2) and items numbered 20, 21, 22, 25, 26, and 27 at trial. The documents were included in Cheminor's responses to Astra's

contention interrogatories and listed in Cheminor's § 282 statements. Several of the documents were also disclosed in Cheminor's Factual and Legal Basis Letter sent to Astra. However, since these documents were not discussed in Dr. Porter's Expert Report, he may not express previously undisclosed opinions or reliance on these documents.

Cheminor has indicated that it will not rely on documents 19 and 24, so the court need not address those references. (See Cheminor 2/22/02; Cheminor 2/25/02.)

With respect to the remaining references,  **[*26]**  it is clear that Cheminor did not provide appropriate, adequate disclosure to Astra that *Cheminor* would be relying on the documents at trial to demonstrate invalidity. Items numbered 3, 7, 23, 28, 29, 30, 31, 32, and 33, however, were properly disclosed as invalidity references by Genpharm. The first eight references were discussed in the analysis portions of Dr. Story's Expert Report, and item 33 was listed as a document reviewed by Dr. Story. Astra was on notice , therefore, that the documents were at issue with respect to validity. Clearly, Dr. Porter, who never opined on these documents at any time before trial, may not now opine upon them or rely on them. Based on Astra's notice that the documents were in the case, however, the court finds no prejudice to Astra in permitting Cheminor to rely on them at trial to the extent appropriate. Since Cheminor's expert will not be permitted to testify about the documents and Cheminor did not designate any fact witnesses to testify about the documents, the only witness with whom Cheminor may address these documents is Dr. Langer.

The IDS dated July 6, 1987 (part of item 1), GB-A-1485 676 (part of item 12), Japanese Published Application **[*27]**  No. 59-20219 (part of item 13), and the documents numbered 10a, 10b, 10d, and 10e were not appropriately disclosed as evidence upon which Cheminor would rely to prove invalidity. Cheminor may not introduce these documents at trial.

In addition to the chart of documents, Cheminor includes a list of "Background Reference Materials for Invalidity Case." (Cheminor 2/22/02, at 6.) While it is, of course, acceptable for an expert to consult reference materials to create a background for an opinion at trial, Dr. Porter's testimony concerning those references may not exceed the boundaries of the disclosure made in his initial Expert Report and during his deposition. Cheminor indicates that it "may elect to discuss one or more of these with Dr. Porter on redirect," (Cheminor 2/22/02, at 1), or "to the extent Dr. Porter's opinions are called into question," (Cheminor 2/26/02, at 3). If Dr. Porter's opinions lack support, Cheminor should have supplemented them long ago. Dr. Porter may not testify about these previously undisclosed documents unless Astra first employs them on cross-examination. If Cheminor establishes that these documents are learned treatises, they may also be used on cross-examination **[*28]**  of Astra's expert to the extent appropriate.

C. ANDRX

In addition to the submissions by Defendants Genpharm and Cheminor, Defendant Andrx submitted a Memorandum in Opposition to Astra's Renewed Motion in Limine to Limit Each Defendant to Offering as Prior Art with Respect to the '505 and '230 Patents Evidence Identified in Expert Reports and Answers to Contention Interrogatories on February 25, 2002. That paper does not raise any additional arguments that the court must address, nor does it delineate with any specificity any additional evidence Andrx intends to offer. Astra may object to particular documents if used by Andrx improperly at trial.

IV. SECTION 282 STATEMENTS

A. GENPHARM

On December 3, 2001, Defendant Genpharm moved to supplement its 35 U.S.C. § 282 statements to add four documents. For the following reasons, the court grants in part Genpharm's motion. With respect to the first document discussed in Genpharm's motion, European Patent Application No. 0 124 495 A2, Astra does not object to its addition to Genpharm's § 282 statement because the document was listed in Genpharm's Notice Letters, which provided Astra with notice of Genpharm's reliance **[*29]**  on the document, which was addressed during fact and expert discovery. (See Astra's Mem. Opposing Def. Genpharm's Mot. to Supplement its 35 U.S.C. § 282 Statements at 1.)

Moreover, Genpharm listed this document in response to Astra's contention interrogatories concerning both the '505 and the '230 patents. (*See* Def. Genpharm's Supp. Resp. to Pls.' Contention Interrogs. at 11-12.) Therefore, the court permits supplementation of Genpharm's § 282 statement with respect to European Patent Application No 0 124 495 A2.

Genpharm also seeks to supplement its § 282 statements to add U.S. Patent No. 4,540,685 and British Patent No. 829,055. The court permits supplementation of Genpharm's § 282 statement with respect to these two documents. *HN7↗Section 282* is a notice provision whose objective is to "prevent unfair and prejudicial surprise by the production of unexpected and unprepared for prior-art references at trial." *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879 (Fed. Cir. 1986). However, § 282 does not require "an arbitrary or absolute **[\*30]** rule barring introduction of relevant, material evidence on the purely formalistic rule that notice of reliance was lacking." *Eaton*, 790 F.2d at 879. The court has broad discretion to permit a § 282 statement to be supplemented and to allow references not mentioned in the statement to be offered into evidence at trial. *See Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879 (Fed. Cir. 1986) (admitting references at trial); *Trans-World Manufacturing Corp. v. Nyman Sons, Inc.*, 750 F.2d 1552, 1561-1562 (Fed. Cir. 1984) (admitting references with 23 days' notice); *North American Lace Co. v. Sterling Laces, Inc.*, 185 F. Supp. 623 (S.D.N.Y. 1960) (admitting references without 30 days' notice). The court has already found that there is no prejudice to Astra by the admission of these two documents. *See* discussion *supra* Part II.A. Therefore, the court will permit Genpharm to supplement its § 282 statements by adding these two references.

The fourth document Genpharm seeks to add to its § 282 statements, a Neri reference, relates to the patents that will be at issue during the third phase of this trial. **[\*31]** The court reserves decision on this document.

## B. CHEMINOR

By letter dated December 5, 2001, Cheminor joined Genpharm's motion seeking to add three of the references--U.K. Patent No. 829,055, U.S. Patent No. 4,540,685, and the Neri reference--to its 35 U.S.C. § 282 statements. Cheminor, however, did not include either U.K. Patent No. 829,055 or the Neri Reference among the list of documents upon which it is relying for its invalidity case. (*See* Letter from Cheminor to court of 2/20/02.) As noted above, the Neri reference relates to the patents that will be at issue during the third phase of this trial. Therefore, the court reserves decision on this document. Since Cheminor has chosen not to rely upon the U.K. patent during this phase, the court finds the motion moot as to that reference.

The court grants Cheminor's motion to supplement its § 282 statements with the 685 patent. The document, item 27 in Cheminor's chart, was appropriately disclosed as an invalidity reference by Cheminor in its responses to Astra's contention interrogatories. The court has already found that there is no prejudice to Astra by permitting Cheminor to rely on this document. **[\*32]** *See* discussion *supra* Part III.B. Therefore, the court permits Cheminor to supplement its § 282 statements by adding this reference.

## V. CONCLUSION

Astra sought to depose both Dr. Story and Dr. Porter to the extent that they were permitted to testify concerning the opinions expressed in their Supplemental Expert Reports. (*See* Letter from Astra to court of 2/22/02; Astra's Rep. in Supp. of Its February 11, 2002 Mot. to Preclude at 3-4.) The decision by the court to preclude both Dr. Story and Dr. Porter from testifying to the new opinions in their Supplemental Expert Reports moots this application. Astra also sought leave to supplement its expert submissions to address any new documents. (*See id.*) The court has indicated the documents to which Dr. Langer will be permitted to provide a supplemental response. *See* discussion *supra* Part III. Given the very limited nature of those documents, Astra need not submit a formal expert report to disclose that supplemental response.

**SO ORDERED:**

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

Dated: New York, New York

February 26, 2002

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 3225**
View: Full
Date/Time: Monday, July 16, 2007 - 1:08 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**     About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.