# EXHIBIT A

Mains vs Sea Ray Boats, Inc.

2/10/2004                                                                          Bruce Pfund

```
 1

 2        UNITED STATES DISTRICT COURT
            DISTRICT OF CONNECTICUT
 3
     - - - - - - - - - - - - - - - - - )
 4                                     )
     PETER D. MAINS and                )NO. 301 CV 2402 (AWT)
 5   LORI M. MAINS                     )
              PLAINTIFFS               )
 6                                     )
     VS.                               )
 7                                     )
     SEA RAY BOATS, INC.               )
 8            DEFENDANT                )
                                       )
 9   - - - - - - - - - - - - - - - - - )

10

11

12

13

14
              DEPOSITION OF:  BRUCE PFUND
15            ON: FEBRUARY 10, 2004
              HELD AT: DAY, BERRY & HOWARD, LLP
16                    CITYPLACE I
                      HARTFORD, CONNECTICUT
17

18

19

20

21

22     Reporter:  IRENE J. PARRISH, RMR, LSR #85
            BRANDON SMITH REPORTING SERVICE, LLC
23                  44 Capitol Avenue
                    Hartford, CT  06106
24                  Tel:  (860) 549-1850
                    Fax:  (860) 549-1537
25
```

Page 1

COPY

| | | |
|---|---|---|
| 1 | | foredeck. Is there a reason that you chose to |
| 2 | | document those but not some of Mr. Knowles' |
| 3 | | other concerns like things with gel cracks and |
| 4 | | loose stanchions? |
| 5 | A | Yes, there is a very specific reason. I would |
| 6 | | characterize composite problems in general in |
| 7 | | two very broad categories, those having |
| 8 | | structural consequences and those having |
| 9 | | cosmetic consequences. I would hasten to add |
| 10 | | that both these conditions can affect the value |
| 11 | | of the boat and the condition of the boat. My |
| 12 | | concern was with investigating and documenting |
| 13 | | the problems on the Mains' boat that appeared |
| 14 | | to have structural considerations attached to |
| 15 | | them. |
| 16 | Q | Okay. So the gelcoat cracks and the loose |
| 17 | | stanchions, those are cosmetic? |
| 18 | A | No. I would say that loose stanchions might |
| 19 | | have a significant safety aspect for the boat, |
| 20 | | but, as previously noted, the stanchions were |
| 21 | | very tightly wrapped in the shrink-wrap cover, |
| 22 | | and to conduct an inspection, it would have |
| 23 | | been necessary to do some disassembly, and we |
| 24 | | were not authorized to do that. |
| 25 | Q | Were the gelcoat cracks that Mr. Knowles noted |

Mains vs Sea Ray Boats, Inc.

2/10/2004                                                                 Bruce Pfund

Page 110

```
 1         question regarding any aspect of the vessel
 2         that I observed?
 3    Q    Your inspection was of the composite
 4         construction, right?
 5    A    You asked me what I observed, not what I
 6         inspected, I believe.
 7    Q    Well, if you'd like to tell me something that
 8         you observed, that's fine.
 9    A    Well, I would say that the problems with the
10         composites can be successfully repaired to
11         industry standards.
12    Q    Okay.
13    A    I might add that I'm concerned about the
14         retrofitted exhaust system, and although the
15         repairs can be completed to industry standard,
16         the practice is to return the boat to predamage
17         condition.  I see that these repairs would have
18         significant consequences for the market value
19         of the boat.
20    Q    Okay.  And when you're talking about the
21         repairs that would have an effect on the market
22         value of the boat, you're talking about the
23         repairs that we've talked about so far today.
24         You're not talking about the engine and the
25         exhaust?
```

Page 111

| | | |
|---|---|---|
| 1 | A | I'm concerned about them, too, but I'm not here to render an expert opinion about them. |
| 3 | Q | Okay. |
| 4 | A | My comment -- we can focus it exclusively on the vessel's composite construction. |
| 6 | Q | Why would the repairs that you've recommended have an effect on the value of the boat? |
| 8 | A | Were I to be retained by someone considering purchasing this vessel, after disclosure of the various problems that the vessel has had and the efforts made to repair it, I believe my advice to this hypothetical client would be that there are many other sister ships to this vessel that have not had these problems and these repairs and that might represent a more credible investment than this particular boat. |
| 17 | Q | Do you know what the -- I'm going to use the term the blue book value. I realize that's probably not a term that's applicable to boats -- but the blue book value of a comparable vessel to this would be? |
| 22 | A | Comparable in that it's been returned to the factory for unsuccessful repairs and has now had -- describe to me the condition at which the vessel is being appraised. |

Mains vs Sea Ray Boats, Inc.

2/10/2004                                                                 Bruce Pfund

Page 112

```
 1   Q    Let's start with a 1998 Sea Ray, this model, in
 2        good condition.
 3   A    And is that -- I would not characterize this
 4        vessel as one in good condition.
 5   Q    I understand that.
 6   A    So I'm concerned with an apples and oranges
 7        comparison.
 8   Q    I understand that.  I'd like to get a baseline
 9        first, and then I'll ask you what your
10        impression of the value of this vessel is.
11   A    I don't do condition and valuation surveys or
12        inspections.  I don't do appraisals.  I don't
13        read the blue book or pay any attention to the
14        values so I really have no perspective on what
15        the market value of this individual boat is
16        relative to sister ships of similar age and
17        service history.
18   Q    Okay.  Okay.  Does that mean the answer is "I
19        don't know"?
20   A    The answer is I can't come up with a numerical
21        value for this, but I would say that the value
22        of the boat has been diminished by the problems
23        that it's had, by Sea Ray's failure to correct
24        them and by the problems that the boat still
25        has and that in my opinion the value would be
```

Page 133

1                    CERTIFICATE OF REPORTER

2

3    I, Irene J. Parrish, a Registered Merit
     Reporter/Commissioner within and for the State of
4    Connecticut, do hereby certify that I took the
     deposition of BRUCE PFUND, on FEBRUARY 10, 2004, who
5    was by me duly sworn to testify to the truth and
     nothing but the truth; that he was thereupon
6    carefully examined upon his oath and his examination
     reduced to writing under my direction by means of
7    Computer Assisted Transcription, and that this
     deposition is a true record of the testimony given by
8    the witness.

9

10   I further certify that I am neither attorney nor
     counsel for, nor related to, nor employed by any of
11   the parties to the action in which this deposition is
     taken and further that I am not a relative or
12   employee of any attorney or counsel employed by the
     parties hereto, nor financially interested in the
13   outcome of the action.

14

15   IN WITNESS THEREOF, I have hereunto set my hand
     February 20, 2004.

16

17
                    _Irene J. Parrish_
18                   Irene J. Parrish

19

20   Notary Public   License No. 00085
     My commission expires:  12/31/08
21

22

23

24

25