UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER D. MAINS and LORI M. MAINS | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiffs, | : | 3:01CV2402 (AWT) |
| | : | |
| v. | : | |
| | : | |
| SEA RAY BOATS, INC., | : | |
| | : | |
| Defendant. | : | MARCH 28, 2008 |

**PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION IN LIMINE TO
PRECLUDE TESTIMONY OF MARK VARRONE**

**I.**

**INTRODUCTION**

Plaintiffs Peter D. Mains and Lori M. Mains respectfully submit this Objection to Defendant's motion in limine to preclude testimony of Mark Varrone dated March 26, 2008.

Plaintiffs' fact witness, Mark Varrone (hereinafter referred to as "Varrone") is the Service Manager at Bassett Boat Company, an authorized Sea Ray boat dealer (hereinafter referred to as "Bassett Boat"). He and his company were engaged by Defendant in this matter to coordinate the repair of the subject vessel at Brewer Pilots Point Marina. Furthermore, he and his company have had substantial experience and interactions with Defendant relating to Sea Ray boats with water ingestion problems.

Therefore, and for the reasons set forth more fully herein, Plaintiffs respectfully request that this Court deny Defendant's motion in limine to preclude the testimony of Varrone.

## II.
## FACTUAL BACKGROUND

During the course of more than four decades, both Sea Ray (the boat manufacturer) and MerCruiser (the engine manufacturer and sister division within the Brunswick Corporation), were aware of problems with the defective design and manufacture of Sea Ray yachts and the engines and exhaust systems installed therein. See, e.g. MerCruiser Service Bulletin No. 63-13, Section C, MerCruiser Service Bulletin No. 84-1, MerCruiser Service Bulletin No. 96-1, Sea Ray InfoGram #02-07, attached collectively hereto as Exhibit A.

Yet despite this knowledge and awareness of a problem that usually rendered these pleasure craft incapable of operation on the water (the only use that they have), Defendant continued to sell its defective product to consumers and made every effort to conceal the breadth of its knowledge of these defects from its consumers and from the courts.

Plaintiffs Peter and Lori Mains (hereinafter referred to as the "Mains") fell victim to this deception and defective design and manufacture when they purchased the subject vessel, a new 1998 Sea Ray 330 fiberglass motor yacht (hereinafter referred to as the "Vessel").

Problems with the manufacture and condition of the new boat and its equipment were apparent as early as the date of delivery of the Vessel in 1998, and additional defects became evident as the months progressed. Over the course of many months, Plaintiffs communicated these concerns, and various repairs were attempted by Defendant and its agents and representatives.

The damage was so extensive that it was deemed necessary to return the Vessel to the Sea Ray factory in Tennessee at the conclusion of the 2000 boating season to attempt to effect the needed repairs.

At some point during the course of inspecting the Vessel at its facilities and attempting to cure the ongoing problems, Sea Ray determined sua sponte that the exhaust system required replacement. Rather than installing or substituting a new replacement engine or parts in conjunction with the "collector" style exhaust system which was originally manufactured and sold onboard the new yacht, Sea Ray deemed the collector style engine sufficiently defective to necessitate the complete replacement of the Boat's original "collector style" exhaust system with a materially different "retrofit," a "water lift style" exhaust system.

Plaintiffs were never consulted as to whether they would consent to the complete overhaul of the exhaust system which they had purchased with their new Boat. Nor were Plaintiffs given the opportunity to examine or document the placement, installation, or defects that had been revealed in the old exhaust system.

Instead, after months at Defendant's facilities and mere days before the repaired Vessel was to be returned to them, the Mains were suddenly informed by Defendant that the exhaust system onboard their Boat had been replaced with a system of an entirely different style. This unauthorized action and unforeseen announcement was coupled with a blanket assurance that this new exhaust system would remedy any and all problems without interfering with or altering any other aspects of the Boat's operation, maintenance or performance. No other explanation for the mysterious installation of this unrequested new exhaust system was provided by Defendant.

While the Vessel was in Sea Ray's custody, it was subject to further damage in the hands of Sea Ray employees and agents.

The Vessel was not returned to its owners until on or around April 20, 2001.

On the date of the Vessel's return, Plaintiffs immediately inspected the boat and determined that not all repairs promised by Sea Ray had been effected. Furthermore, the Boat had sustained additional new damages while in the hands or control of Sea Ray and its agents, servants and employees.

**Varrone has knowledge of the attempted repairs to Plaintiffs' vessel and of Defendant's policies and products:**

Varrone is the Service Manager for Bassett Boat.

In or around May of 2001, Defendant engaged Bassett Boat to coordinate the repair of the Vessel. It was to be delivered by Plaintiffs to the Brewer Pilots Point Marina facility in Westbrook, Connecticut, where it was anticipated that repair work would begin on or about June 11, 2001. See Deposition of Thomas Wicander, pages 14, 27, 31, 118-119, 126-127, 132-133, attached hereto as Exhibit B.

Thomas Wicander (hereinafter referred to as "Wicander") of Pilots Point Marina, one of Plaintiffs' expert witnesses in this case, has conducted and reported on inspections and tests relating to the condition of the Vessel.

Varrone and his company have communicated and collaborated with Sea Ray and Wicander to resolve the ongoing problems and repairs with the subject boat as well as other Sea Ray yachts with similar exhaust systems. See Exhibit B.

In such matters, Wicander works as a subcontractor for Bassett Boat to perform repairs. After Wicander submits his findings to Bassett Boat, Varrone generally confirms those findings and, in turn, contacts Sea Ray or MerCruiser regarding the same. See Exhibit B, Wicander Deposition pages 118-119, 126-127.

In addition, Bassett Boat provides Wicander and other Sea Ray subcontractors with relevant installation manuals, inboard water damage worksheets, and other MerCruiser and Sea Ray communications and bulletins. See Exhibit B, Wicander Deposition pages 14, 126-127.

Defendant's assertion that Varrone's testimony "consists entirely of alleged problems with other Sea Ray boats" overlooks his direct involvement with the Plaintiffs' yacht and the events surrounding its repairs.

**The testimony of Varrone was not addressed in Defendant's motion in limine to exclude evidence of complaints by other consumers:**

During his deposition in February of 2004, Wicander disclosed the important role of Bassett Boat and Varrone in the present case. See Exhibit B.

On or about May 29, 2007, Defendant filed a motion in limine to exclude evidence of complaints by other consumers which failed to address the potential testimony of Varrone or other representatives of Bassett Boat.

This Court's ruling on that motion did not address the testimony of Varrone.

Plaintiffs have filed a motion for this Court to reconsider its decision to exclude evidence of complaints by other consumers, and they hereby reiterate and incorporate their arguments set forth therein.

### III.
### THE TESTIMONY OF MARK VARRONE SHOULD BE ALLOWED

A. **The testimony of Mark Varrone pertaining to the facts surrounding the attempted repairs to the Plaintiffs' Vessel is relevant and probative.**

The testimony of Varrone is of great relevance to the present case.

As the service manager for Bassett Boat, Varrone is in a position to accurately describe the sequence of events and decisions surrounding the arrangement for Plaintiffs' yacht to be repaired at Brewer Pilots Point Marina following its return from Defendant's factory in 2001.

Through his experiences interacting with Sea Ray, Varrone can describe Defendant's policies and practices in responding to consumer claims for repairs. He is also able to define the chain of communications as from customers and repairmen to Defendant. See Exhibit B, Wicander Deposition pages 27, 118-119.

In addition, Varrone and his company are familiar with literature authored by Defendant relating to the defects at issue in the present case. As such, he can identify and explain the distribution of the installation manuals, inboard water damage worksheet, and other MerCruiser and Sea Ray communications and bulletins relating to Plaintiffs' claims. See Exhibit B, Wicander Deposition pages 14, 126-127.

Therefore, Defendant's contentions that Varrone's "consists entirely of alleged problems with other Sea Ray boats" is both false and misleading and Plaintiffs respectfully request that this Court deny the motion in limine.

Alternatively, should this Court find any deficiencies in the proposed testimony, Plaintiffs respectfully request leave to amend or supplement the Joint Trial Memorandum to remedy any defects.

B. **Varrone's testimony and records of other consumer complaints relating to Sea Ray's exhaust systems is admissible for the non-hearsay purpose of demonstrating notice thereof.**

Evidence of complaints by other consumers and problems with their Sea Ray yachts is both relevant and probative with regard to demonstrating that Sea Ray had notice and knowledge of the defects in design, manufacture, and installation of their boats and the exhaust systems and parts contained therein.

To the extent that Varrone would be testifying *that he communicated reports* of such problems or defects to Sea Ray, his statement would not be offered to prove the truth of the matter asserted (i.e. the defects or problems themselves) but rather Defendant's knowledge and awareness thereof. See, Federal Rule of Evidence 801(c) (restricting the definition of hearsay to evidence "offered to prove the truth of the matter asserted"); Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1385 (4th Cir. 1995) (case reports and summary charts were not hearsay because they were offered to prove notice).

The lines of communications between Varrone, Basset Boat, and Defendant are described by Wicander. Bassett Boat receives reports of defects and repair information from its subcontractors and customers and Varrone communicates these findings to Sea Ray and or MerCruiser. See Exhibit B, Wicander Deposition page 118.

Contrary to Defendant's assertion that such evidence would constitute hearsay, Varrone's testimony would not be hearsay to the extent that he was describing his own first-hand observations of damaged or deficient exhaust systems while at the trial.[1] Additionally, written complaints and maintenance report records kept by Bassett Boat

---

[1] Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, *other than one made by the declarant while testifying at the trial* or hearing, *offered* in evidence *to prove the truth of the matter asserted.* (Emphasis added.)"

would qualify under the business records exception to the hearsay rule pursuant to Federal Rule of Evidence 803(6).

## IV.
## EVIDENCE OF OTHER CONSUMER COMPLAINTS AND EXHAUST SYSTEM PROBLEMS IS HIGHLY PROBATIVE AND SHOULD BE ALLOWED TO PROVE BOTH DEFECT AND NOTICE

Defendant's contentions that the instant evidence is not relevant and that the probative value is outweighed by potential prejudice are unfounded.

It is well established that evidence of other accidents and complaints is relevant and admissible both to: (1) prove the existence of a defect or danger in a product; and (2) show that the defendant had notice of the defect or danger; so long as the other accidents are "substantially similar" to the accident at issue in the litigation. See, e.g., Mihailovich v. Laatsch, 359 F.3d 892, 908 (7th Cir. 2004).[2]

In assessing the potential reasons for excluding the evidence, the key consideration is substantial similarity between the other incidents and the one at issue. Mihailovich, 259 F.3d 892, 911.

In assessing the degree of commonality, courts will look to whether the various incidents "share a common cause." If they do, they are admissible absent other factors suggesting that their admission will result in undue prejudice. Mihailovich, 259 F.3d 892, 908.

---

[2] In Mihailovich, the Court held that the district court had abused its discretion by excluding evidence of other accidents that had occurred the same location. 359 F.3d 892, 894, 914.

The increased number of complaints and accidents arising out of a dangerous segment of roadway and requests to remedy the situation were deemed relevant and should have been admitted, even though there was already ample evidence in the record establishing that the area was dangerous. Id at 906.

> **'Substantially similar' does not mean 'identical.'** . . . the range between similar and identical is **a matter to be addressed on cross-examination**. (Emphasis added.)

Id. See also, Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1126 (10th Cir. 2004)("we do not require a showing of exact similarity); Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1248 (10th Cir. 2000) ("*The substantial similarity rule does not require identical products; nor does it require us to compare the products in their entireties. The rule requires substantial similarity among the variables relevant to the plaintiff's theory of defect*. (Emphasis added.)").

A lesser degree of similarity is needed when the other incidents are offered solely to establish notice of a potential danger than when they are offered as proof of a dangerous situation. See Mihailovich, 259 F.3d 892, 908; Benedi, 66 F.3d 1378, 1386.

"To be admissible on the theory of notice, the incidents must be similar enough to the event in question that they would have alerted the defendant to the problem or danger at issue." Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1248.

Whether or not a past complaint or incident resulted in litigation "really is of very limited use in weighing the probative value." Mihailovich, 259 F.3d at 912.

Differences in subsequent models of a product do not necessarily destroy similarity for purposes of determining probative value, even where the later models involve additional safety controls. See Bitler v. A.O. Smith Corp., 391 F.3d 1114 (evidence of prior accidents involving unscreened safety valves was admissible, notwithstanding the fact that the safety valve involved in the explosion contained a mesh screen).

Any dissimilarities between the prior incidents can be developed on cross-examination, and they go to the weight of the evidence. See, e.g. Jones & Laughlin Steel Corp. v. Matherne, 348 F.2d 394, 400-401 (5th Cir. 1965) (evidence of other failures of the same product was properly admitted where there was no surprise because the defendant had been asked to disclose information relating to prior failures in the interrogatories and where the differences between the circumstances of the other accidents could have been developed, on cross-examination, to go to the weight to be given to such evidence by the jury); Benedi, 66 F.3d at 1386.

A balancing test of probative value of the evidence versus unfair prejudice is set forth in Rule 403 of the Federal Rules of Evidence.

Evidence that the Defendant or industry was aware of the defects or problems at issue is relevant and highly probative to the issues of notice and defect. See, e.g. Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1278; Bitler, 391 F.3d at 1126 ("Offering evidence that the industry was aware as early as 1967 [of the problem at issue] served the purpose of demonstrating notice to [defendant] and of highlighting the potential existence of a defect – part of the underlying theory of the plaintiff's case . . .")

The consideration of substantial similarity and the weighing of probative value against unfair prejudice in contexts similar to the present case is exemplified by Benedi v. McNeil P.P.C., Inc., supra. In Benedi, as in the present case, defendants asserted that certain case reports and charts should have been excluded: (1) because the case reports were not substantially similar to the plaintiff's case and thus not admissible to prove notice; and (2) under Federal Rule of Evidence 403 because the danger of unfair prejudice outweighed any probative value. The court determined that this evidence was

properly admitted for the purpose of proving notice, and noted that the district judge had

properly given a limiting instruction to the jury that it could not consider the reports and

case summaries for the truth of the matter asserted.  See Benedi, 66 F.3d 1378, 1385-

1386.

> **When prior incidents are admitted to prove notice, the required similarity of the prior incidents to the case at hand is more relaxed** than when the prior incidents are admitted to prove negligence.  **The incidents need only be sufficiently similar to make the defendant aware of the dangerous situation.**  (Emphasis added.)

Benedi, 66 F.3d 1378, 1386.

Furthermore, the court noted that the dissimilarities between the plaintiff's

situation and those reported in the reports and case summaries at issue went to the weight

given the evidence by the jury, not to admissibility:

> The dissimilarities between Benedi's situation and those reported in the DERs do not affect the admissibility of the evidence, but rather go to the weight that the jury gives to the evidence. . . . Whether the dissimilarities were significant was for the jury to determine.

Benedi, 66 F.3d at 1386.

> The probative value of these reports was not outweighed by the danger of unfair prejudice, because **the reports were highly probative on the issue of notice** and because [the defendant] was free to, and did, offer testimony rebutting the significance of these reports. (Emphasis added.)

Benedi, 66 F.3d at 1386.

Varrone's testimony regarding problems relating to boats owned by other Sea Ray

consumers would satisfy this "substantially similar" test in that they involved the same

collector-style exhaust system which is relevant to the theory of defect in this matter.  See

Wicander Deposition pages 101-103, attached hereto as Exhibit C (Sea Rays have a

"unique exhaust system.  It's their own." "They're the only ones that I've seen with their [collector-style] style exhaust system"); Smith v. Ingersoll-Rand Co., 214 f.3d 1235, 1248.

The bulletins authored by both the MerCruiser and Sea Ray divisions of Brunswick Corporation further illustrate that the MerCruiser engines and exhaust systems installed in Sea Ray yachts and the water ingestion problems pertaining thereto are sufficiently similar so as to warrant a common set of bulletins and instructions from the boat and engine manufacturers relating to their installation and repair.  See Exhibit A.

Furthermore, the past complaints by other consumers also establish notice, which requires a lesser showing of similarity.

The great probative value of this evidence substantially outweighs any danger of prejudice, and any differences among the incidents may be developed by Defendant on cross-examination, where they will go to the weight given to the evidence by the jury.

As such, Varrone's proposed testimony should be admitted and the motion in limine should be denied.

## V.
### THE TESTIMONY OF VARRONE WAS NOT ADDRESSED IN THE MOTION IN LIMINE TO EXCLUDE EVIDENCE OF COMPLAINTS BY OTHER CONSUMERS

Defendant's motion in limine to exclude evidence of complaints by other consumers did not address the testimony of Varrone.

Similarly, this Court's ruling on that motion did not address the testimony of Varrone.

Plaintiffs have filed a motion for this Court to reconsider its decision to exclude evidence of complaints by other consumers. To the extent that Defendant suggests that the testimony of Varrone falls under the purview of that order, Plaintiffs hereby reiterate and incorporate the arguments set forth in their motion for reconsideration.

## VI.
## CONCLUSION

For all of the reasons set forth herein, Plaintiffs respectfully request that this Court deny Defendant's motion in limine to preclude the testimony of Mark Varrone.

Respectfully submitted,

PLAINTIFFS,
PETER D. MAINS and LORI M. MAINS

By _____ /s/ Rachel D. Lev _____
    Rachel D. Lev, Esq.
    Connecticut Federal Bar Number PHV02527
    HERRICK NIKAS
    1201 Dove Street, Suite 560
    Newport Beach, California 92660
    Telephone: (714) 546-1400
    Facsimile: (714) 546-4111
    rlev@herricknikas.com
    Their Attorney

## CERTIFICATION

I hereby certify that on this date a copy of the foregoing **Plaintiffs' Objection to Defendant's Motion in Limine to Preclude Testimony of Mark Varrone** were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

            /s/ Rachel D. Lev
Rachel D. Lev
Connecticut Federal Bar Number  PHV02527