UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PETER D. MAINS and LORI M. MAINS  : CASE NO.  3:01cv2402 (AWT)
               :
       Plaintiffs,   :
v.               :
               :
SEA RAY BOATS, INC.      :
               :
       Defendant.  : MARCH 31, 2008

**<u>DEFENDANT'S OBJECTION TO PLAINTIFFS'</u>**
**<u>MOTION TO RECONSIDER RULING ON MOTION IN LIMINE TO EXCLUDE</u>**
**<u>EVIDENCE OF COMPLAINTS BY OTHER CONSUMERS</u>**

**I. INTRODUCTION**

   Sea Ray respectfully submits this Objection to Plaintiffs' <u>Motion for Reconsideration</u>.

<u>See</u> Docket No. 148 (Mar. 27, 2008).  This Motion is based largely on a baseless claim that Sea

Ray has "concealed" certain published service bulletins relating to engine water ingestion.  As

set forth below, however, Plaintiffs' local counsel has had copies of at least some of these

bulletins since 2006, and their new Pro Hac Vice counsel claims that he "was able, in less than a

week, to locate [these] bulletins . . . ." <u>Mem.</u> at 17.  In addition, notwithstanding representations

made in the Affidavits submitted by Attorneys Senning and Nikas in support of Plaintiffs'

Motion to Admit Attorney Nikas pro hac vice that that Motion would not result in modification

of scheduling orders in this case,[1] Plaintiffs assert that this untimely Motion for Reconsideration

---

[1] <u>See</u> <u>Aff. of R. Nikas in Support of Motion to Admit Pro Hac Vice</u> ¶ 10, Docket No.
140, Attachment 4 (Mar. 24, 2008):

> The Motion for my admission as counsel Pro Hac Vice in this case is not intended to
> delay the trial of same as presently scheduled and  if granted would not require the
> modification of a scheduling order issued pursuant to Fed. R. Civ. P. 16 (b) or deadlines
> established by the Standing Order on scheduling in civil cases <u>notwithstanding any
> concurrent request for continuance of trial based on other factors which will be brought to
> the attention of the Court.</u>

should be permitted based in part upon the alleged failures of their local counsel to properly prosecute this case. Mot. to Reconsider at 27; see also L. Civ. R. 7 (c)(1) (motions for reconsideration to be filed within ten days of the order as to which reconsideration is requested).

Like their recent Motion to Amend the Complaint and Supplement to the Joint Trial Memorandum, the instant Motion is an untimely effort to change their entire theory of this case on the eve of trial. Even when viewed on its merits, there is no basis for this Motion. Sea Ray therefore requests that the Motion be denied

## II.    ARGUMENT

### A.    Plaintiffs Have Claimed to Have Discovered Concealed Evidence of Water Ingestion Problems Since 2006

#### 1.    Bulletins Published by Sea Ray and MerCruiser

Plaintiffs claim that their untimely Motion for Reconsideration is warranted because engine manufacturer MerCruiser – to which Plaintiffs inaccurately refer as "Defendant" – has allegedly known since at least 1963 that water ingestion is a problem afflicting engines that operate in the water, and that one means of water ingress in a boat engine is through the exhaust system. Furthermore, Plaintiffs claim that Sea Ray has "made every effort to conceal" its awareness of these issues. This claim is absurd on its face, and was rejected by this Court the last time the Plaintiffs attempted to justify an untimely attempt to change the nature of this case.

---

(emphasis added); see also Aff. of J. Senning in Support of Motion to Admit Pro Hac Vice ¶¶ 7, 8, Docket No. 140, Attachment 3; Mem. of Law in Support of Mot. to Admit Pro Hac Vice at 3, Docket No. 140, Attachment 1. Similar statements are made in Affidavits supporting the Motion to Admit Attorney Rachel D. Lev Pro Hac Vice. See Motion to Admit Pro Hac Vice, Docket No. 139, and Attachments thereto (Mar. 24, 2008).

2.    Publication and Distribution to Consumers Is Not Concealment

Even apart from the fact that Sea Ray is not, and has never been, MerCruiser,[2] the fact that Sea Ray has allegedly published bulletins regarding this subject since 1963 is flatly inconsistent with Plaintiffs' claim that "Sea Ray has attempted to sweep this highly probative and damaging evidence under the proverbial rug . . . ." See Mot. to Reconsider at 5.  Plaintiffs expressly describes these allegedly concealed bulletins as documents that MerCruiser and Sea Ray "customarily distributed to their dealers, service centers, and customers." Id. at 17; see also id. at 18 ("MerCruiser and Sea Ray . . . were publishing a barrage of bulletins and warnings relating to water ingestion issues.").  Plaintiffs' accusation against Sea Ray of "hiding the ball" with respect to this matter is specious.  See id. at 6.


3.    The Plaintiffs' 2006 Motion to Compel Was Based on This Same Evidence

Although discovery in this case has been closed since May of 2004, in 2006, the Court granted Plaintiffs leave to file an untimely Motion to Compel.  See Order, Docket. No. 62 (June 16, 2006).  In their Motion to Compel, Plaintiffs asserted that Sea Ray's objection in part to certain of Plaintiffs' Interrogatories should be overruled because

> The Defendant itself well knows and has known for some time which model Sea Ray boats and which particular make and size of engine are problematic with respect to "water ingestion" / "resonance reversion". This is clearly established by the Defendant's own publication of numerous documents over a period of time since 2001 including but not limited to Infogram #02-07 dated October 11, 2001 (attached hereto as A) (Bates Nos. PSDR071-PSDR74) as well as Sea Ray's sister corporation MerCruiser Mercury Marine in its Service Bulletins nos. 2001-10 (June 2001) and 2001-13 (August 2001) (attached hereto as Exhibits B and C) (Bates No. PSDR058 – PDR066).  These documents only recently became known and available to Plaintiffs' counsel through collateral sources.

--------------------------------

[2] In fact, for most of the time period described in Plaintiff's motion, Sea Ray was a separate corporation known as "Sea Ray, Inc."  See, e.g., Pls.' Ex. 1 (Release in favor of "Sea Ray Inc." dated 1998).

-3-

<u>Mem. of Law in Support of Mot. to Compel</u> at 7, Docket No. 67 (Aug. 3, 2008).[3]  The Plaintiffs'

Motion to Compel did not demand that Sea Ray produce service bulletins, because those

bulletins had not been the subject of any discovery requests.[4]

Plaintiffs did not identify these bulletins as a basis for their original Objection to Sea

Ray's Motion in Limine to preclude evidence of other incidents, perhaps because the Court did

not accept this argument when Plaintiffs' counsel made it in 2006.  There is no reason for

Plaintiffs' attempt to raise this issue now, other than to smear Sea Ray and its counsel.

4.      <u>The Bulletins Are Irrelevant to This Motion and Have Little If Any
        Probative Value</u>

The bulletins at issue in this case suggest at most that MerCruiser has known since 1963

that water ingestion is a problem afflicting engines that operate in the water, and that one means

of water ingress in a boat engine is through the exhaust system.  One might have supposed that

---

[3] Similarly, in their Reply in further support of their Motion to Compel, Plaintiffs asserted as follows:

> While Plaintiffs were aware that "water ingestion" problems had been experienced with many Sea Ray boats and that numerous engines had been replaced by Sea Ray, the exact extent, scope and identification of the commonality of the problem to boats equipped with V-drive/collector exhaust systems was not known to them or their legal counsel until early 2006 when a copy of the Sea Ray Info Gram dated October 11, 2001, Exhibit A to Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel first came into their possession from collateral sources.

<u>See</u> <u>Reply</u> at 4-5, Docket No. 81 (Sept. 19, 2006).

[4] Thus, Plaintiffs' statement that "Defendant's Failure to Identify the Bulletins and InfoGrams of Its Own Accord Demonstrates a Failure to Comply With Plaintiffs' Prior Discovery Requests" is not only irrelevant to this Motion, but is also entirely unfounded.  <u>See</u> <u>id.</u> at 16.  In fact, these documents were not produced because (1) Plaintiffs never issued any document requests in this case, (2) Plaintiffs' interrogatories did not request information about service bulletins, and (3) Plaintiffs did not request further information about these service bulletins in their Motion to Compel, despite the fact that that Motion was purportedly brought in response to Plaintiffs' discovery of those bulletins.

every manufacturer of marine engines has known that water ingestion is possible for as long as they have been manufacturing such engines. Nonetheless, Plaintiffs argue that this is probative of whether the original exhaust system, or the engines, on their 1998 Sea Ray boat were defective. This is akin to arguing that a General Motors memorandum from 1963 discussing the problem of occupant safety, and the need for occupant restraint systems, is evidence that every restraint system manufactured or installed by General Motors since that time has been defective.

**B.    Plaintiffs' Other Claims of Misconduct by Sea Ray Are Also Specious**

1.    "Brazen Bad Faith"

In addition to claiming that Sea Ray concealed evidence contained in published service bulletins, Plaintiffs accuse Sea Ray of various other forms of misconduct. Most strikingly, Plaintiffs claim that Sea Ray acted in "brazen bad faith" by arguing in its Motion in Limine that evidence of other incidents was not relevant, or, in the alternative, that any probative value was outweighed by the likelihood of unfair prejudice. Mot. to Reconsider at 36. This accusation, which was not even hinted at in Plaintiffs' Objection to that Motion, is itself made in brazen bad faith, and Plaintiffs do not even attempt to support it. Instead, they merely rehash the arguments already made in their Objection that the application of pertinent law allegedly should have led the Court to deny the Motion. Plaintiffs nowhere suggest that Plaintiffs' Motion misstated the facts or even misconstrued the law.

2.    Statement "Hidden" in the First Sentence, and the Conclusion, of Sea Ray's Motion in Limine

Now that the Court has rejected the arguments made in Plaintiffs' Objection to the pertinent Motion in Limine, Plaintiffs wish to make new objections because they assert that Sea Ray "*surreptitiously*" included within the scope of its Motion not only alleged complaints by

other consumers, but other also "alleged problems with boats manufactured by Sea Ray, other

than those made by the Plaintiffs concerning boats owned by them."  Mot. at 7 (emphasis added);

see also id. at 41 (the motion "includes a ***hidden*** plea" to preclude such evidence)(emphasis

added).

In fact, the scope of Sea Ray's Motion was expressly set forth in the very first sentence of

that Motion:

> Defendant Sea Ray Division of Brunswick Corporation (improperly designated in the
> Complaint as "Sea-Ray Boats, Inc.") ("Sea Ray") respectfully submits this motion in
> limine to exclude evidence of any alleged consumer complaints, or alleged problems with
> boats manufactured by Sea Ray, other than those made by the Plaintiffs concerning boats
> owned by them.  In addition, Sea Ray seeks an order of this Court prohibiting plaintiffs'
> counsel from inquiring regarding these complaints in his examination and cross
> examination of witnesses.

Mot. in Limine at 1, Docket No. 107 (May 29, 2007) (emphasis added).  This statement was

repeated again in the last sentence – the Conclusion – of Sea Ray's Motion:

> For the reasons stated above, Sea Ray respectfully requests that the Court exclude all
> evidence of any alleged consumer complaints, or alleged problems with boats
> manufactured by Sea Ray, other than those made by the Plaintiffs concerning boats
> owned by them.

Id. at 7 (emphasis added).  These statements were also repeated in the fist and last sentences of

Sea Ray's Reply in further support of its Motion.  Reply in Further Support of Mot. in Limine at

1, 7, Docket No. 122 (July 16, 2007).  If Plaintiffs failed to read either the opening sentence or

the conclusion of Sea Ray's Motion before objecting to it, it was not because Sea Ray hid the

pertinent language.

### 3. Plaintiffs "Presume" That Documents They Never Requested, and Never Even Mentioned Prior to the Instant Motion, Were Improperly Destroyed

Plaintiffs further claim that "Sea Ray has failed to preserve any evidence, including any

records related to the repairs it performed on the Vessel or even keep for use at trial the exhaust

system that was replaced without the knowledge or consent of Plaintiffs."  <u>Mot. to Reconsider</u>  at

13 (underscore omitted).  Plaintiffs effectively admit that there is no basis for this allegation by

stating that "[a]s Plaintiffs have not been provided access to this key evidence to date, they can

only presume that it has been intentionally withheld or destroyed."  <u>Id.</u> at 22.  This "key

evidence," however, was never requested, formally or informally, nor does it relate to any

subject of their 2006 Motion to Compel.  This "key evidence" was never even mentioned until

Plaintiffs found it necessary to concoct arguments in support of their Motion for

Reconsideration.

Plaintiffs are not entitled to accuse Sea Ray of spoliation of evidence simply because they

have never made any inquiries concerning that evidence.  <u>See id.</u> at 27 (listing "spoliation of

evidence" by Sea Ray among alleged "obstacles" faced by Pro Hac Vice counsel).  Finally, this

accusation is as irrelevant to the instant Motion as it is baseless, because it has nothing to do with

whether Plaintiffs can establish that other alleged incidents of water ingestion occurred under

substantially the same conditions as in the instant case.

### C.    Plaintiffs Alleged "Confusion" Concerning the Scope of the Order

#### 1.    The Court's Order is Clear

As set forth above, the Motion in Limine at issue clearly set forth the scope of evidence

that Sea Ray sought to exclude thereby (namely, evidence of other incidents relating to Sea Ray

boats, whether in the form of other consumer complaints or otherwise).  That Motion was

granted in its entirety.  Nonetheless, Plaintiffs purport to be confused as to whether the Court's

Order on that Motion precludes evidence of alleged problems with other Sea Ray boats, in

addition to precluding evidence of complaints about those problems.

The Court' Order expressly addresses proffered evidence of other alleged problems relating to Sea Ray boats, and not just complaints relating to such problems. The Order expressly rejects Plaintiffs' argument that Mr. Wicander should be permitted to testify about other problems with Sea Ray boats – not other complaints about those boats – of which he was personally aware:

> Thomas Wicander has been identified by the plaintiffs as an expert witness. Wicander <u>personally serviced and/or supervised the service</u> of the boat engines of approximately 27 Sea Ray
> customers. . . .

> The plaintiffs argue that Wicander should be permitted to testify about other problems he observed in Sea Ray boats because:

>> His expert testimony is direct, relevant evidence of the existence of the exhaust system's design defect, the damage the design defect causes, the Defendant's ability to correct the defect, the magnitude of the danger of the defect, and the product's lack of safety for intended uses.

Order at 1-2 (emphasis added; citation omitted). The Court expressly rejected Plaintiffs' argument that Mr. Wicander should be permitted to testify on these subject, because he had not been disclosed as an expert on any of them. <u>Id.</u> at 2. Thus, Plaintiffs' statement that they "can only assume that the court only intended to exclude the specific evidence of <u>consumer complaints</u> addressed in its order"; <u>Mot. to Reconsider</u> at 42 (emphasis added); disregards the plain language of the Order itself.

       2.      <u>Plaintiffs Understood the Scope of the Motion When They Filed Their Objection</u>

Despite the plain language of Sea Ray's Motion and the Court's Order, Plaintiffs claim that they are "confused" as to whether the Order precludes evidence of problems with other boats manufactured by Sea Ray, other than evidence in the form of consumer complaints. Plaintiffs

had no such confusion when they filed their Objection to that Motion in 2007. Plaintiffs'

Memorandum of Law begins as follows:

> Expert Marine Mechanic Thomas Wicander personally serviced and/or supervised the service of the boat engines of approximately 27 Sea Ray customers. These boat engines had the same or substantially the same exhaust systems and engines as the Plaintiffs' Boat, and suffered water ingestion, the same or substantially the same problem as Plaintiffs. Wicander's expert testimony is direct evidence of the defect in the Plaintiff's Boats exhaust system, Sea Ray's notice of the defect, the magnitude of the danger of the defect, and the cause of the damage to Plaintiffs' boat.

Pls.' Mem. of Law in Support of Objection at 1, Docket No. 116 (June 29, 2007). Plaintiffs'

objection that Mr. Wicander's knowledge of other boat problems – not complaints about those

problems – should not be precluded pursuant to Sea Ray's Motion demonstrates that they were

fully aware that such evidence was within the scope of that Motion.

       3.     <u>The Scope of Sea Ray's Motion and the Court's Order Is Not Limited by The Scope of Plaintiffs' Objection</u>

Sea Ray's Motion in Limine expressly that the Court exclude an entire <u>category</u> of

evidence, i.e., evidence of other incidents relating to Sea Ray boats other than boats owned by

Plaintiffs. As noted by Sea Ray's Reply in further support of its Motion, Plaintiffs did not object

that any and all such evidence should be permitted; they objected only that Mr. Wicander should

be permitted to testify concerning other incidents of which he had personal knowledge. <u>Sea</u>

<u>Ray's Reply</u> at 1.[5] The Court overruled Plaintiffs' limited Objection, and granted Sea Ray's

Motion in its entirety.

---

[5] Sea Ray's Reply stated as follows:

> The Plaintiffs' Objection to Sea Ray's motion argues only that their expert, Mr. Thomas Wicander, should be able to testify with respect to water ingestion problems affecting Sea Ray boats that he has personally observed. . . . Sea Ray therefore respectfully submits that, to the extent that the Plaintiffs have not objected to its motion, that motion should be granted as unopposed.

Plaintiffs acknowledge that the bulletins that they wish to introduce into evidence are within the scope of the Court's Order by asking the Court to permit introduction of those exhibits notwithstanding that Order.  Specifically, Plaintiffs argue that Sea Ray did not specifically reference in its exhibits certain bulletins and InfoGrams  that were listed among Plaintiffs' exhibits in the Joint Trial Memorandum.  Mot. to Reconsider  at 15-16.  Sea Ray's Motion did not specifically mention Mr. Wicander either, although he too was identified by Plaintiffs in the Joint Trial Memorandum.  Plaintiffs objected only to the extent that Plaintiffs' Motion would have precluded portions of Mr. Wicander's testimony.  See Pls.' Obj. at 1-4.

In effect, Plaintiffs claim that the bulletins must not have been precluded precisely because they raised no objection concerning the bulletins, and accordingly, no such objection was specifically referenced by the Court's Order.  The objections that they did chose to raised were overruled by the Court.  Plaintiffs cannot limit the scope of the Order granting Sea Ray's Motion in its entirety simply because, as noted in Sea Ray's Reply, Plaintiffs objected to that Motion only in part.  See Sea Ray's Reply at 1.

4.      Neither the Scope of the Motion, Nor Plaintiffs' Misstatement of Its Scope, "Defies Logical Definition"

Plaintiffs claim not to understand the scope of Sea Ray's Motion, and the Court's Order granting that Motion, is due in part to Plaintiffs' misquoting the Motion and Order.  Specifically, Plaintiffs claim not to understand that part of the Motion in which Sea Ray requests that the Court preclude evidence of "alleged problems with boats manufactured by Sea Ray" because this category of evidence is allegedly "so broad as to defy a logical definition."  Mot. to Reconsider  at 41.  Sea Ray submits that the meaning of this phrase is perfectly clear.  Moreover,

Sea Ray's Reply at 1.

Sea Ray's Motion was in fact directed to "alleged consumer complaints, or alleged problems with boats manufactured by Sea Ray, <u>other than those made by the Plaintiffs concerning boats owned by them</u>."  <u>Sea Ray's Mot. in Limine</u> at 1, 7.  The full sentence from which Plaintiffs' quotation is drawn indicates that Sea Ray's Motion unambiguously sought no less than the preclusion of all evidence of other incidents.  The Court's Order was equally clear in granting Sea Ray's Motion in its entirety.

### D.    Plaintiffs' Misrepresentation of Their Expert's Opinions

As noted by Sea Ray's Reply brief, and the Court's Order, "Mr. Wicander never offered any opinion that the boat or its exhaust system suffered from any design defect, that any alleged 'defect' could have been corrected, or that any alleged "defect" rendered the boat dangerous or unsafe."  <u>Reply</u> at 2-3.  Plaintiffs now claim that Mr. Wicander did offer such opinions.  This claim is disingenuous.

With respect to alleged defects and the alleged dangerousness of the boat, Plaintiffs say his report "explicitly identifies" what <u>Plaintiffs</u> now claim is "fault and dangerous problems." <u>Mot. to Reconsider</u>  at 29.  Mr. Wicander, however, has never opined that the boat is "defective," or that any problems with the boat rendered it dangerous.  While Plaintiffs claim that Mr. Wicander's <u>conclusions</u> "demonstrate Mr. Wicander's opinion that Sea Ray was negligent and or defective in its manufacturing or installation"; <u>see id.</u> at 32; Plaintiffs do not claim that Mr. Wicander actually offered this opinion, because he did not.

With respect to whether any alleged "defect" could have been corrected, Plaintiffs say that Mr. Wicander "indicates the possibility of correction by stating that the elbows 'should have been upgraded when exhaust retrofit was performed.'"  <u>Id.</u>  Mr. Wicander's Report actually states, with respect to the starboard engine, "Note: . . . (2) Exhaust elbow *gaskets* were old style

and should have been replaced when exhaust retrofit was performed." <u>Wicander Report</u> at 2-3 (emphasis added). With respect to the part engine, he states "Note: Exhaust elbow **_gaskets_** were similar to [starboard] and should have been replaced at time of exhaust retrofit." <u>Id.</u> at 3 (emphasis added). This misquotation was apparently made to create the illusion that Mr. Wicander was referring to <u>exhaust elbows themselves</u>, the height of which plaintiffs claim demonstrates improper installation, rather than the need to replace gaskets, which does not suggest a broader problem with installation or design.

Plaintiffs state that Mr. Wicander's report "impl[ies] that the engines' problems of water ingestion spanned a greater timeframe [than the June 9, 2001 hydrolocking incident] as indicated by the extensive and wide-spread scoring in the cylinders." <u>Mot. to Reconsider</u> at 29. Even if Mr. Wicander could have concluded that this alleged damage was evidence of a design defect, he did not draw any such conclusion. Similarly, while Plaintiffs ask the Court to interpret the data in Mr. Wicander's report as illustrating "the magnitude of the danger and of the defect"; <u>id.</u> at 29; Mr. Wicander himself did not provide any such interpretation.

Plaintiffs go so far as to blame Sea Ray for not making inquiries into alleged opinions that were not expressed in Mr. Wicander's expert report. The fact that Sea Ray deposed Mr. Wicander's deposition for "more than three hours"; <u>id.</u> at 30; does not excuse Plaintiffs from disclosing any opinions that they wish to offer at trial. <u>See</u> <u>Doe v. Johnson</u>, 52 F.3d 1448, 1464 (7th Cir. 1995) (affirming exclusion of portions of an expert's opinion testimony formed after that expert's deposition because it was not disclosed before trial, despite appellant's contention that appellee could have obtained the opinions by asking the proper questions at deposition).

Plaintiffs assert that Mr. Wicander's testimony is relevant to the issue of notice, because he will testify that he had direct contact with Sea Ray personnel regarding "at least one" engine

-12-

replacement "involving exhaust resonance and water ingestion with the same exhaust system" as that with which the Plaintiffs' boat was originally equipped.  Mot. to Reconsider  at 33. Plaintiffs, however, do not claim that the water ingestion that allegedly occurred in that one other instance occurred under substantially similar conditions, or that boats equipped with the exhaust system at issue are somehow immune from other possible sources of water ingestion.  The rule under which Plaintiffs "must present a factual foundation for the court to determine that the other accidents were 'substantially similar' to the accident at issue. . . .  applies irrespective of whether the proponent attempts to introduce evidence of other accidents as proof of an alleged design defect, causation, or notice of a defect." Buckman v. Bombardier Corp., 893 F. Supp. 547, 552 (E.D.N.C. 1995)(citations omitted).

Finally, Plaintiffs argue that evidence of other incidents relating to the type of exhaust system with which Plaintiffs' boat was originally equipped would be a proper basis for Mr. Wicander's opinions.  Even if such evidence would be a proper basis for opinions that Mr. Wicander has actually offered, that evidence would still be admissible only if Plaintiffs could establish that any probative value that the evidence might have substantially outweighed its likely prejudicial effect.  Fed. R. Evid. 703.  Because  evidence of other incidents is "highly prejudicial," and Plaintiffs have offered to make no showing of substantial similarity of the cause of any other incidents (as opposed to showing that some boats that have ingested water have had similar exhaust systems), Plaintiffs cannot show that the prejudicial effect of their proposed evidence is substantially outweighed by its probative value.  Moreover, if Plaintiffs wished to object to Sea Ray's Motion on this basis, there is no reason for which they could not have done so in a timely manner.

**E.      Alleged Failure to Warn and Alleged Defect of the Replacement Exhaust System Are Irrelevant to This Motion**

Plaintiffs' Motion also includes Plaintiffs' version of events relating to Sea Ray's alleged failure to warn Plaintiffs' of an alleged change in the procedure for flushing engines, as well as their assertion that the replacement exhaust system installed on Plaintiffs' boat was also defective. <u>Mot. to Reconsider</u> at 22-26. These issues are irrelevant to the present Motion, and Plaintiffs' discussion of these topics does not even mention incidents relating to other boats.

**III.    <u>CONCLUSION</u>**

There is no basis whatsoever for Plaintiffs' untimely Motion to Reconsider the Court's Order. For the reasons set forth above, Sea Ray respectfully requests that Plaintiffs' Motion be denied.

Respectfully submitted,

DEFENDANT,
SEA RAY BOATS, INC.


By      /s/ Daniel J. Foster
        James H. Rotondo (ct05173)
        Daniel J. Foster (ct24975)
        Day Pitney LLP
        242 Trumbull Street
        Hartford, Connecticut  06103-1212
        (860) 275-0100
        (860) 275-0343 (fax)
        Its Attorney

## <u>CERTIFICATION</u>

I hereby certify that on this date a copy of foregoing **Objection to Motion to Reconsider Ruling on Motion in Limine** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                /s/ Daniel  J. Foster
            Daniel J. Foster (ct24975)

-15-