UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER D. MAINS and LORI M. MAINS | : CASE NO. 3:01cv2402 (AWT) |
| Plaintiffs, | : |
| v. | : |
| SEA RAY BOATS, INC. | : |
| Defendant. | : APRIL 1, 2008 |

## DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF WATER INGESTION

**I.   INTRODUCTION**

Sea Ray respectfully submits this Motion in Limine to preclude the introduction of any evidence purporting to establish that water ingestion occurred on the subject boat's engines. This evidence is of virtually no relevance to this case, in which Plaintiffs' Complaint and their mechanical expert Thomas Wicander admit that the engines on their boat (the "Boat") were damaged while being flushed with a freshwater hose. Motions filed by the Plaintiffs since Thursday, March 27, however, suggest that Plaintiffs now wish to make exhaust system water ingestion the focal point of this trial. These Motions, all of which are untimely, include their Motion to Amend the Complaint, their Supplement to the Joint Trial Memorandum, and their Motion to Reconsider the Court's Order on Sea Ray's Motion in Limine regarding other incidents involving Sea Ray boats, the latter of which includes all manner of baseless allegations of misconduct by Sea Ray. See Docket Nos. 146, 148, 149 (Mar. 27, 2008).[1]  Sea Ray respectfully submits that it has become evident that any probative value of evidence relating to

---

[1] Sea Ray respectfully submits that this Motion in Limine is timely, because it was precipitated by Plaintiffs' effort to change the nature of this case immediately prior to trial.

this issue will be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, and will result in waste of time. See Fed. R. Evid. 403.

## II.     FACTUAL BACKGROUND

### A.     The Boat's Engines Were Damaged by Flushing with a Hose, Not Water Ingestion Through the Exhaust System

Plaintiffs' Complaint affirmatively alleges that the Boat's engines were damaged as a result of being "hydrolocked," or filled with water, while being flushed with a freshwater hose. See Compl. ¶¶ 38-39 (on June 9, 2001, Plaintiff Peter Mains flushed the engines); id. ¶ 42 (on June 10, 2001, Plaintiffs discovered that the engines had become hydrolocked); id. ¶ 47 (Plaintiffs were advised on June 14, 2001, that the flushing procedure used by Plaintiffs would result in hydrolocking); id. ¶ 51 (on the basis of tests performed on June 18, 2001, "the engineers determined that both engines had been seriously damaged as a result of the Hydro-locking and that both engines require replacement in order to assure a safe, reliable and seaworthy Boat.").[2] Prior to the hydrolocking incident on or about June 9, 2001, the engines were performing properly, and Plaintiffs' only complaint regarding the engines in the preceding years had been that the engines were too loud.

Plaintiffs Complaint also alleges that the Boat's exhaust system was flawed and dangerous, that Sea Ray improperly concealed these alleged problems, and that Sea Ray failed to provide proper warnings relating to these alleged problems. See id. Count I ¶¶ 58, 59, 60 (c), 60 (g), Count IV ¶ 63 (c).[3] The Complaint does not, however, allege that any damage incurred by

---

[2] Plaintiffs maintain that Sea Ray is responsible for damage caused by this flushing of the engines because it allegedly provided unclear or incorrect instructions as to how the engines should be flushed.

[3] These Paragraphs demonstrate that Plaintiffs were aware of the possibility of water ingestion through the exhaust system when they filed their Complaint in 2001, but did not allege that the Boat's engines were damaged in this matter.

the Boat or its engines was caused by any such flaw in the design of the engines or exhaust systems. Although Plaintiffs made an untimely Motion to Amend the Complaint on March 27, 2008, that Motion seeks only to substitute Brunswick Corporation as the defendant in this case. See Mot. to Amend, Docket No. 146 (Mar. 27, 2008). Plaintiffs have never sought to amend their Complaint to allege that the Boat or its engines were damaged by water ingestion through its exhaust system.

Consistent with Plaintiffs' Complaint, their mechanical expert Thomas Wicander has testified that the hydrolocking incident at issue in this case was caused by flushing the engines, and not water ingestion through the exhaust system. Dep. of T. Wicander at 103:4-10.[4]

### B. Damage Discovered After Plaintiffs' Expert Had Already Concluded That "Both Engines Had Been Seriously Damaged as a Result of the Hydro-Locking and That Both Engines Required Replacement"

In August of 2003, after the Boat had been sitting idle for more than two years, Mr. Wicander also found extensive rust in the engines. Id. at 104:18-24, 105:10-23. Mr. Wicander was admittedly unable to say whether this damage occurred when the boat was equipped with its original exhaust system or when it was equipped with the replacement exhaust system installed in early 2001, and he could not even say if the damage occurred during the period when it was still in use:

> Q   Mr. Wicander, the corrosion that we discussed that you observed in your inspection of the engine in August of 2003, can you tell me when that corrosion occurred?
>
> A   I can't tell you exactly when that corrosion occurred.
>
> Q   It was over the course of the Mains' use of the boat?
>
> A   It may have been, yeah. I have no way of knowing when it actually happened.

---

[4] Pertinent pages of the transcript of Mr. Wicander's deposition are attached hereto as Exhibit A.

> Q  I assume that you are not telling me that it was because of the height of the exhaust elbow and the overboard discharge on the new exhaust system that was installed [prior to the 2001 boating season]?
>
> A  I have no way of knowing anytime when it was --when it occurred. I reported on what I found.

Id. at 123:17-124:7.

Mr. Wicander also testified that during his 2003 inspection he had found scoring on the inside of the cylinder bores, which he interpreted as evidence of long-term damage caused by water ingestion.[5] Although no such opinion appears in Plaintiffs' disclosure or Mr. Wicander's report, he suggested at his deposition that this scoring was caused by water being ingested through the exhaust system. See id. at 113:5-13.[6] Mr. Wicander expressly disavowed any opinion that the damage was caused by the relative height of the exhaust system's exhaust hose

---

[5] See Dep. of T. Wicander at 111:2-15:

> Q  Okay. You mentioned scoring in the cylinder bores which was -- well, I think you mentioned that that was caused by lack of lubrication or foreign objects in the cylinder?
>
> A  Correct.
>
> Q  What foreign objects are we talking about?
>
> A  Foreign objects -- when water comes back into a cylinder like that, it can bring rust and whatever else with it. Anything that's in the exhaust system or in the cooling water can come back with it, and lack of lubrication is caused -- once you get water in the cylinder, it disperses the oil which is the lubricant, and that's what causes the scoring.

[6] Mr. Wicander's report of October 7, 2003, indicates that he was asked to investigate "the condition of both engines due to the occurrence of both engines hydro locking on or about June 9, 2001 and the possibility of water ingestion over a period of time resulting from a defective exhaust systems." Wicander Report at 1 (Oct. 7, 2003)(emphasis added). That report does not, however, express any opinion that the exhaust system or systems were defective, or that any such defect caused water ingestion in this case. See id. at 3 ("It is my opinion that both engines have ingested water over a period of time prior to the hydrolocking on or about June 9, 2001. No single ingestion incident could have caused the damage present. Both engines need to be replaced.").

and overboard discharge, which was the only feature of the exhaust systems' design that he criticized during his deposition.[7]

Although Mr. Wicander concluded in August of 2003 that the engines had ingested water prior t the hydrolock, he admitted that this was "different from the conclusion that [he] reached in June of 2001." 122:8-18. In other words, nothing about the condition or performance of the engines prior to the hydrolocking incident in June of 2001 led him to suspect that the engines had incurred any damage.

## II.    ARGUMENT

### A.    Whether Alleged Water Ingestion Through the Exhaust System Would Have Shortened the Useful Life of the Engines Is Speculative and Irrelevant

The Boat's engines showed no ill effects as a result of any water ingestion before they became hydrolocked. In order to find that Plaintiffs suffered any form of harm as a result of alleged long-term water ingestion through the Boat's exhaust system, the jury would be required to speculate that, if not for the hydrolocking that occurred in 2001 when the boat was already three years old, this water ingestion would eventually have shortened the useful life, or otherwise interfered with the performance, of the Boat's engines. As set forth above, Plaintiffs' Complaint does not allege any such harm. Instead, they allege that, as a result of the hydrolocking incident, both of the Boat's engines required replacement. No expert has opined as to how many more years would have passed before this alleged ingestion would have interfered with the engines' performance, or caused any other harm to the Boat.

In short, if the engines required replacement as a result of hydrolocking, as Plaintiffs allege, whether they also showed signs of longer-term damage that may or may not have

---

[7] Mr. Wicander also stated at his deposition that the exhaust system's valves were leaking and should have been replaced by Sea Ray. He did not offer the opinion that the need to replace valves was somehow caused by the overall design or installation of the exhaust system.

occurred prior to the hydrolocking could not have made the engines any more or less in need of replacement.  Evidence of alleged water ingestion through the exhaust system is therefore irrelevant.

### B. Plaintiffs Have Not Suffered an Ascertainable Loss Due to Water Ingestion Through the Exhaust System

Nor can Plaintiffs recover under the Connecticut Unfair Trade Practices Act ("CUTPA") for Sea Ray's alleged concealment, or failure to warn, of alleged water ingestion problems.  See Conn. Gen. Stat. § 42-110a et seq.  "In order to state a cause of action under the CUTPA, a plaintiff must demonstrate that she has 'suffered any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b.'"  Maguire v. Citicorp Retail Servs., 147 F.3d 232, 238 (2d Cir. 1998) (quoting Conn. Gen. Stat. § 42-110g(a)).  "Plaintiff[s], the party claiming damages, has the burden of proving damages or 'ascertainable loss.'"  Id. (citation omitted).  As in Maguire, "[Plaintiffs'] complaint does not allege any injury or loss that resulted from" alleged water ingestion through the Boat's exhaust system.  See id. (affirming summary judgment on CUTPA claim, and remanding in part on other grounds).

### III. CONCLUSION

Plaintiffs' Complaint alleges, inter alia, that the Boat was damaged because Sea Ray provided improper instructions for flushing the engines, resulting in hydrolocking, and that Sea Ray caused various damage to the Boat while attempting to repair it.  It does not allege that Plaintiffs, or the Boat, were harmed by Sea Ray's alleged "concealing and failing to disclose substantial defects, including the defects in the engine and exhaust systems."  See Compl. Count IV ¶ 63 (a).  Accordingly, and for the reasons set forth above, Sea Ray respectfully requests that

Plaintiffs be precluded from offering any evidence of ingestion of water into marine engines, including the Boat's engines, through the engines' exhaust systems.

        Respectfully submitted,

        DEFENDANT,
        SEA RAY BOATS, INC.

        By   /s/ Daniel J. Foster
            James H. Rotondo (ct05173)
            Daniel J. Foster (ct24975)
            Day Pitney LLP
            242 Trumbull Street
            Hartford, Connecticut  06103-1212
            (860) 275-0100
            (860) 275-0343 (fax)
            Its Attorney

## CERTIFICATION

    I hereby certify that on this date a copy of foregoing **Motion in Limine to Preclude Evidence of Water Ingestion** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

            /s/ Daniel  J. Foster
        Daniel J. Foster (ct24975)