UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER D. MAINS and LORI M. MAINS | : | CASE NO. 3:01cv2402 (AWT) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SEA RAY BOATS, INC. | : | |
| | : | |
| Defendant. | : | APRIL 5, 2008 |

### DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Fed. R. Civ. P. 50 (a), Sea Ray respectfully submits this Motion for Judgment as a Matter of Law. Plaintiffs have failed to provide a "legally sufficient evidentiary basis" upon which the jury could reasonably find that Plaintiffs have proven claims under any of their four causes of action. See Fed. R. Civ. P. 50 (a). In addition, Plaintiffs have failed to introduce any evidence that would remove the amount of any damages from the realm of speculation, other than damages claimed in Count III, under which they claim revocation of their acceptance of the boat at issue in this case (the "Boat"). Because Plaintiffs are not entitled to relief under that Count, their acceptance of the Boat, they have failed to prove the amount of any damages to which they might otherwise be entitled. Accordingly, Sea Ray respectfully requests that Judgment as a Matter of Law be entered in its favor on all Counts. Finally, Sea Ray further respectfully submits that certain claims advanced at trial by Plaintiffs are governed by, and barred by, maritime law.

**I.    Count I: Connecticut Product Liability Act, Conn. Gen. Stat § 52-572m et seq.**

    **A.    Plaintiffs Have Offered No Evidence That the Boat Was Defective or Unreasonably Dangerous**

"Under Connecticut's product liability statute, General Statutes § 52-572m et seq., the plaintiffs must plead and prove that the [Boat was] defective and that the defect proximately

caused [damages]. . . . A product is defective when it is unreasonably dangerous to the consumer or user." Sharp v. Wyatt, Inc., 31 Conn. App. 824, 833, 627 A.2d 1347 (1993). This requirement applies to any theory under which a CPLA claim may be brought, including breach of warranty or failure to warn.[1] Although the CPLA provides a remedy against the manufacturer of a defective product, without a showing of negligence or fault, and without a showing of privity, that remedy is available only if the product at issue is defective and unreasonably dangerous.

In some cases, whether a product is unreasonably dangerous is determined by the expectations of an ordinary consumer, and therefore may be proven without expert opinion. Connecticut law, however, also recognizes that there are "instances in which an ordinary consumer may not be able to form expectations of safety. In such cases, a consumer's expectations may be viewed in light of various factors that balance the utility of the product's design with the magnitude of its risks." Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 694 A.2d 1319 (1997). Connecticut has therefore adopted "the reasoning of those jurisdictions that have modified their formulation of the consumer expectation test by incorporating risk-utility factors into the ordinary consumer expectation analysis." Id. at 220.[2]

---

[1] As indicated during oral argument, Sea Ray respectfully submits that Plaintiffs may not recover under the CPLA for any alleged failure to warn because they waived this claim by not properly asserting it in the Joint Trail Memorandum and corresponding jury instructions, and they did not subsequently indicate their reliance on this theory until after Sea Ray had rested its case.

[2] Although the Potter Court held that the modified consumer expectations test that it adopted did not require proof of a feasible alternative design, the Restatement 3d of Torts notes that "this holding inevitably steers Connecticut toward the reasonable alternative design requirement set forth in this Restatement." Restat 3d of Torts: Products Liability, § 2, Reporter's Notes Part II.C ("Jurisdictions That Apply a Consumer Expectations Test Based on Risk-Utility, Thereby Implicitly Requiring Proof of a Reasonable Alternative Design in Most Cases"). No such evidence has been introduced in this case.

Mechanical issues, and limitations involved in the design of marine engines and exhaust systems, are subjects as to which an ordinary consumer is not able to form expectations of safety. Plaintiffs allege that the Boat is defective because the design of its exhaust system might have caused the engines to fail, or to stop working properly, after a substantial (but unspecified) period of time if it had not been hydrolocked. The fact that the Boat has not been designed in such a way as to prevent engines from eventually wearing out does not, by itself, render the Boat unreasonably dangerous. To the contrary, "[a]ll parts will wear out sooner or later and thus have a limited effective life." Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 250 (2d Cir. 1986). Accordingly, expert testimony that the Boat is unreasonably dangerous in light of the risk-utility factors set forth in Potter would be required in order for Plaintiffs to prevail under the Connecticut Product Liability Act ("CPLA"). See Potter, 241 Conn. at 217-21; Estate of Lepage v. Horne, 262 Conn. 116, 125, 809 A.2d 505 (2002) ("Expert testimony is *required* 'when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors.'" (emphasis in original; citation omitted)).

Plaintiffs have offered no expert opinion that the Boat was unreasonably dangerous. Plaintiffs have not even offered any evidence from which the jury could infer (a) that it is possible to make a marine engine that is not subject to water ingestion, including ingestion of water through the exhaust system; (b) that it is possible to make an exhaust system that is any less susceptible to water ingestion than either the original or the replacement exhaust systems installed on the Boat; or (c) that it is possible to make marine engines or exhaust systems any safer than those that were installed on the Boat. Accordingly, Sea Ray is entitled to Judgment as a Matter of Law as to Count I of the Complaint.

### B. Repairs Are Outside the Scope of the CPLA

"[C]laims addressed to negligent repairs and service performed after the product was placed in the stream of commerce are not covered . . . by the [product liability statute]." American Nat'l Fire Ins. Co. v. A. Secondino & Sons, 832 F. Supp. 40, 43 (D. Conn. 1993)(citations omitted). To the extent that Plaintiffs may seek to recover under the CPLA for alleged defects in the replacement exhaust system installed in the Boat during the course of repairs in 2001, Sea Ray is entitled to Judgment as a Matter of Law for this additional reason.

### C. There Is No Evidence of Breach of Any Express Warranty

The only evidence of an express warranty is Sea Ray's Express Limited Transferable Warranty; Def.'s Ex. 94; and Plaintiffs did not present any evidence of a breach of that warranty. The engines were covered under a warranty issued by Mercruiser, not Sea Ray, and even with respect to that warranty, for which Sea Ray is not responsible, there is no evidence that Plaintiffs experienced engine problems during the three year extended warranty period under which the engines were covered.[3] E.g., Def.'s Ex. 98, 99. To the contrary, Peter Mains testified that the engines performed satisfactorily even on June 9, 2001, when Plaintiffs were traveling to the marina which he performed the flushing that hydrolocked the engines.

Notwithstanding any law that may be in effect in other jurisdictions, warranties in this case are not tolled until such time as alleged problems with the product at issue have been discovered by the buyer. "The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." Abraham v. Volkswagen of America, Inc., 795 F.2d at 250.

---

[3] Nor is there evidence based upon which Sea Ray could be found liable for breach of a warranty issued by MerCruiser. Plaintiffs have not introduced evidence that MerCruiser is controlled by, or is otherwise the agent of, Sea Ray.

> Moreover, virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

Id.

### D. There Is No Evidence of Breach of Any Implied Warranty

Nor is there any evidence to support Plaintiffs' claim that Sea Ray breached an implied warranty of merchantability.

> To be "merchantable" as that term is defined in the [Uniform Commercial] Code, goods must "pass without objection in the trade under the contract description," [and] be "fit for the ordinary purpose for which such goods are used . . . ." Conn. Gen. Stat. § 42a-2-314(2). Under this definition, "if the product conforms to the quality of other brands on the market, it will normally be merchantable." . . . . Moreover, a product may fall "considerably short of perfection," and yet be merchantable.

Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164, 185 (1984)(citations omitted). Whether the Boat would pass without objection in the boat trade, whether it is fit for its intended purpose, and whether it conforms to the quality of other brands on the market are all issues requiring expert testimony. Plaintiffs have provided no expert testimony, and no other legally sufficient evidentiary basis, relating to these issues.

## II. Count II: Negligence

To the extent that Plaintiffs' claim for negligence arises from repairs to the vessel – whether performed by Sea Ray or others – Plaintiffs cannot prevail because they have failed to introduce any expert opinion that Sea Ray or other individuals performing repairs breached the applicable standard of care. "The requirement of expert testimony . . . serves to assist lay people,

such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. . . . Expert testimony is *required* 'when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors.'"  Estate of Lepage v. Horne, 262 Conn. 116, 125, 809 A.2d 505 (2002).

In addition, Plaintiffs have introduced no evidence that Sea Ray acted negligently in relying on the engine flushing instructions provided by the engines' manufacturer, or in relying on the manufacturer to provide proper instructions.  Plaintiffs are therefore not entitled to recover from Sea Ray any damages arising from such instructions.

Finally, Plaintiffs may not recover in negligence for any new damages to the Boat that existed after it had been returned to them in May of 2001, because they have not introduced any evidence that (1) those damages were caused by Sea Ray personnel or while the Boat was still in Sea Ray's possession or control, as opposed to during return shipment; (2) that the individual or entity that possessed or controlled the Boat while it was in transit back to Connecticut was Sea Ray's agent; or (3) that Sea Ray acted negligently in selecting the individual or entity that delivered the Boat back to Connecticut.

### III.      Count III: Revocation of Acceptance

The Plaintiffs admittedly purchased the Boat from a dealer known as Surfside 3, not from Sea Ray.  Therefore, Plaintiffs cannot avail themselves of any remedy against Sea Ray for breach of the contract of sale, including rescission of the contract.  Plaintiffs are not entitled to revocation in this case for the additional reasons that they have not provided evidence that they revoked acceptance of the Boat, or that they revoked their acceptance within a reasonable time.

The elements of this claim were set forth in Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (1976):

> Section 42a-2-608 of the General Statutes sets up the following conditions for the buyer who seeks to justify revocation of acceptance: (1) a nonconformity which substantially impairs the value to the buyer; (2) acceptance (a) with discovery of the defect, if the acceptance is on the reasonable assumption that the nonconformity will be cured, or (b) without discovery of the defect, when the acceptance is reasonably induced by the difficulty of the discovery or the seller's assurances; (3) revocation within a reasonable time after a nonconformity was discovered or should have been discovered; and (4) revocation before a substantive change occurs in the condition of the goods not caused by their own defects. The buyer has the burden of establishing any breach with respect to the goods accepted. § 42a-2-607 (4).

Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 120, 374 A.2d 144, 148 (1976). In addition, "[t]o be entitled to the remedy of revocation, there must be a buyer-seller relationship . . . ." Id. at 172 Conn. 112, 125, 374 A.2d 144, 150. Moreover, Plaintiffs must present evidence that they in fact revoked the acceptance. The notice must be given to the seller, and must indicate that the buyer is asserting a legal right to return the goods, and not merely requesting or recommending that the goods be returned or exchanged. Conn. Gen. Stat. § 42a-2-608 (2); Luson Int'l Distributors, Inc. v. Fabricating & Production Machinery, Inc., 966 F.2d 9, 11-12 (1st Cir. 1992).

### IV. Count IV: Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.

#### A. There Is No Evidence of an Unfair Trade Practice

Plaintiffs cannot recover damages under the Connecticut Unfair Trade Practices Act ("CUTPA") because "[t]he record does not support a conclusion that [Sea Ray's alleged] negligence constituted an 'immoral, unethical, oppressive or unscrupulous' practice." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 593, 657 A.2d 212 (1995). Simple negligence or breach of contract does not rise to the level of a CUTPA violation. See Williams

Ford, Inc. v. Hartford Courant Co., 232 Conn. at 592-93; Boulevard Assocs. v. Sovereign Hotels, 72 F.3d 1029, 1039 (1995). The record does not support a conclusion that Sea Ray breached any contract at all. Nor would a violation of the CPLA, by itself, be compensible under CUTPA. As set forth below at Part V.C, to the extent that any of Plaintiffs' claims are within the scope of the CPLA, recovery for those claims under CUTPA is barred by the CPLA's exclusive remedy provision.

### B.  Statute of Limitations

Plaintiffs cannot recover under the Connecticut Unfair Trade Practices Act ("CUTPA") based on Sea Ray's sale of a Boat that Sea Ray allegedly knew would put Plaintiffs at risk, or Sea Ray's alleged concealment of problems with the Boat's exhaust system, at the time of sale. The statute of limitations serve as a jurisdictional bar to any CUTPA claim that is brought more than three years after the date of the alleged unfair trade practice, even if Plaintiffs were not aware of the unfair trade practice at the time at which it was committed. Conn. Gen. Stat. § 42-110g (f); Fichera v. Mine Hill Corp., 207 Conn. 204, 541 A.2d 472, 475-76 (1988); Avon Meadow Condo. Ass'n v. Bank of Boston Conn., 719 A.2d 66, 73, 50 Conn. App. 688 (1998); petition for review denied, 247 Conn. 946, 723 A.2d 320 (1998).

### C.  Plaintiffs Have Suffered No Harm Compensible under CUTPA

"In order to state a cause of action under the CUTPA, a plaintiff must demonstrate that she has 'suffered any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b.'" Maguire v. Citicorp Retail Servs., 147 F.3d 232, 238 (2d Cir. 1998) (quoting Conn. Gen. Stat. § 42-110g(a)). "Plaintiff[s], the party claiming damages, ha[ve] the burden of proving damages or 'ascertainable loss.'" Id. (citation omitted). As in Maguire, "[Plaintiffs'] complaint does not allege any injury

-8-

or loss that resulted from" alleged water ingestion through the Boat's exhaust system, as opposed to being caused by water damage caused by the hydrolocking. See id. (affirming summary judgment on CUTPA claim, and remanding in part on other grounds).

Plaintiffs have failed to provide evidence of any harm that they suffered as a result of alleged water ingestion through the Boat's exhaust system, other than "scoring" on the inside of the cylinder bores after three years of use that could be discovered only by dismantling the engines. Even if this might otherwise constitute an ascertainable loss, which is denied, it would constitute harm caused by a product, and any recovery for that harm under CUTPA would be precluded by the CPLA's exclusive remedy provision. See Conn. Gen. Stat. § 52-572n (a).

V.  **PLAINTIFFS HAVE FAILED TO PROVE THE AMOUNT OF THEIR ALLEGED DAMAGES**

"In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages. He need not prove the amount of loss with mathematical precision; but the jury is not allowed to base its award on speculation or guesswork." Sir Speedy, Inc. v. L&P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992); see also Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 554, 733 A.2d 197 (1999) ("Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.") Plaintiffs have failed to provide such evidence in this case. Because the amount of any damages would be speculative, no damages may be awarded.

The measure of damages that may be recovered for harm to personal property not resulting in a total destruction in value is either "the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the

original value and the value after repairs," as well as damages for loss of use where appropriate. Restat 2d of Torts, § 928. There was no evidence, and the jury could not reasonably infer, that the damages alleged in this case resulted in the total destruction of the Boat.

Plaintiffs have offered no evidence of the diminution of value of the Boat cased by the damages to the Boat that they allege. Plaintiffs are not entitled to elect the reasonable cost of repair or installation in this case, because they admittedly elected not to perform any such repairs. Indeed, they admittedly refused even to permit Sea Ray to perform those repairs, testified that they did not want to keep the Boat after the hydrolocking incident in any event. Although Plaintiffs may "elect[ ] . . . in an appropriate case," to claim "the reasonable cost of repair or restoration"; id. (emphasis added); they may not elect to do so in a patently inappropriate case simply because they have failed to obtain or introduce evidence relevant to the proper measure of damages.

Nor are Plaintiffs entitled to recover for any loss of use. Plaintiffs have provided no evidence of loss of use of the Boat caused by the harms alleged. All of the evidence in this case indicates that, prior to the engine hydrolock, Plaintiffs scheduled repairs before or after the boating season, and made regular use of the boat during the boating season on weekends when the weather was suitable and they were not prevented from using the Boat due to their work schedules. Following the hydrolock, their failure to use the Boat resulted from their decision not to replace the engines or otherwise repair the Boat. Plaintiffs are not entitled to collect damages for loss of use in perpetuity where they have chosen not to make the Boat usable.

Even if Plaintiffs were entitled to damages for loss of use, they have failed to provide the jury with any evidence from which the amount of any damages for loss of use could be determined with reasonable certainty. The amount of damages for loss of use is ordinarily the

rental value of the item for the period during which it could not be used.  E.g., id. cmt. (b).  Plaintiffs have provided no evidence of the number of days, if any, on which they were unable to use the Boat due to its alleged deficiencies,  and no evidence of the rental or daily use value of the Boat.  Therefore, they may not recover damages for loss of use.  See Johnson v. Flammia, 169 Conn. 491, 363 A.2d 1048 (1975) (reversing jury award for temporary loss of use of swimming pool where "there was no evidence printed in the appendix to the plaintiffs' brief which would permit the jury (1) to approximate the number of days that the pool was unusable, (2) to approximate the extent of the actual or intended use made of the pool by the plaintiffs and their children when the pool was usable and (3) to establish a daily value use of the pool.").

Finally, Plaintiffs may not recover punitive damages, interest, attorneys' fees or costs, because there is no legal basis for awarding any such damages in light of the evidence in this case.  "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights."  Gargano v. Heyman, 203 Conn. 616, 622, 525 A.2d 134 (1987) (standard for punitive damages under CUTPA); Berry v. Loiseau, 223 Conn. 786, 811, 614 A.2d 414 (1992) (standard for punitive damages for torts); see also Conn. Gen Stat. § 52-240b ("Punitive damages may be awarded [in product liability actions] if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product."  No evidence would support such a finding in this case.  Interest is not justified, because Plaintiffs have not suffered any liquidated loss for which they may recover damages against Sea Ray, and because there is no evidence that Sea Ray unduly delayed the progress of this case.

Even if Plaintiffs could otherwise be entitled to attorneys' fees or costs, which is expressly denied, they have failed to provide any evidence of those fees or costs. Connecticut law imposes an "undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an *appropriate evidentiary showing*. . . . no award for an attorney's fee may be made when the evidence is insufficient." Smith v. Snyder, 267 Conn. 456, 471, 839 A.2d 589 (2004) (emphasis in original; citations omitted).

## VI.   COUNTS ONE, TWO, AND FOUR ARE GOVERNED BY, AND BARRED BY, MARITIME LAW

Plaintiffs' claims relate to damage to the Boat that allegedly occurred while the Boat was traversing navigable waters, and if such damage occurred as Plaintiffs claim, it would have had a potentially disruptive impact on maritime commerce. Accordingly, and as set forth in Sea Ray's Motion to Dismiss of February 28, 2002, Counts I, II, and IV of Plaintiffs' Complaint are governed by, and barred by, maritime law. See Docket No. 4 (Feb. 28, 2002); see also Sisson v. Ruby, 497 U.S. 358, 364 (1990). As set forth in that Motion, the Supreme Court has established a two-part test for determining whether a tort action falls within the admiralty jurisdiction:

> First, the alleged tort must have occurred over "navigable waters." Second, the activity giving rise to the incident must have had a substantial relationship to traditional maritime activity such that the incident had a potentially disruptive influence on maritime commerce.

Leblanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999) (citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)); see Sisson v. Ruby, 497 U.S. 358, 362-364 (1990).

The Court denied Sea Ray's Motion to Dismiss, setting forth its reasons in the following endorsement:

> A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime

-12-

> commerce. Here, we have no incident the general features of which were likely to disrupt maritime commerce. Thus, there is no admiralty jurisdiction.

Endorsement Denying Motion to Dismiss (Sept. 27, 2002).

Sea Ray respectfully requests that the Court reconsider this ruling in light of the evidence presented at trial. The harm of which Plaintiffs now principally complain is not that their engines were damaged when as a result of being flushed while docked at a marina,[4] or that the Boat sustained various other sorts of damage while being serviced by, or returned from, Sea Ray. Plaintiffs instead allege principally that, a result of ongoing water ingestion that occurred while the Boat was in use in navigable waters such as Long Island Sound and the Connecticut River, the engines on the Boat were damaged, and they were exposed thereby to the risk of being stranded aboard the Boat while at sea. The facts, as alleged by Plaintiffs, represent a potentially disruptive impact on maritime commerce:

> A yacht in distress on the high seas . . . easily could prompt commercial vessels in the vicinity to lend assistance, thereby diverting such vessels from their charted courses and disrupting their commercial operations. In a more hazardous scenario, a disabled recreational yacht may pose a threat of collision to commercial vessels . . . . [T]hese examples suffice despite the fact that the likelihood of their occurrence is remote, for "a remote possibility of impact on maritime commerce [is] . . . enough to support admiralty jurisdiction."

Marshall v. Wellcraft Marine, Inc., 103 F. Supp. 2d 1099, 1107 (S.D. Ind. 1999) (quoting Great Lakes Dredge & Dock Co. v. City of Chicago, 3 F.3d 225, 228 (7th Cir. 1993))(emphasis added). Plaintiffs cannot claim damages because the installation of a particular exhaust system on the Boat, or a failure to warn of its allegedly dangerous propensities, allegedly exposed them to the risk of being stranded at sea, while at the same time denying that they are seeking recovery for

---

[4] Sea Ray continues to assert that a boat docked at a marina satisfies the "location test" for determining the applicability of maritime law.

an incident or incidents "the general features of which were likely to disrupt maritime commerce."

Moreover, the relevant location for this analysis is not the place where alleged wrong originated, but "the place where the alleged negligence took effect." See Anderson v. Whittaker Corp., 692 F. Supp. 764, 767 (W.D. Mich. 1988) (citing Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 266 (1972)).[5] The damage allegedly incurred by the engines, i.e., long-term water ingestion through the exhaust system, took place on navigable waters. Similarly, Plaintiffs' claims relating to alleged problems with the flushing instructions, or the replacement exhaust system, also concern the potential for damage to the engines that could result in their being stranded at sea.

For these reasons, and those set forth in Sea Ray's Motion to Dismiss, Plaintiffs' common law and statutory tort claims, as well as their unfair trade practices claim, are barred by substantive maritime law. Sea Ray respectfully submits that it is therefore entitled to Judgment on Counts I, II, and IV.

---

[5] See Anderson v. Whittaker Corp., 692 F. Supp. 764, 768 (W.D. Mich. 1988)(citations omitted):

> This Court is impressed with the fact that this case involves the manufacture and design of a boat, a product that is inherently maritime in character. The design defects complained of bear directly upon the boat's ability to function as a boat, and to withstand operations on water. The suit was brought on behalf of the boat's operators, who had a right to rely upon the boat's integrity under foreseeable marine conditions. The risks posed by the defect were that of swamping, sinking, and loss of crew and passengers on the water; these risks are exclusive to a maritime locale. These characteristics distinguish this case from many of the products liability cases in which admiralty jurisdiction was found not to lie.

## VII. CONCLUSION

For the reasons set forth above, Sea Ray respectfully requests that judgment be entered in its favor as to all Counts.

> Respectfully submitted,
>
> DEFENDANT,
> SEA RAY BOATS, INC.
>
> By   /s/ Daniel J. Foster
> James H. Rotondo (ct05173)
> Daniel J. Foster (ct24975)
> Day Pitney LLP
> 242 Trumbull Street
> Hartford, Connecticut  06103-1212
> (860) 275-0100
> (860) 275-0343 (fax)
> Its Attorneys

## CERTIFICATION

I hereby certify that on this date a copy of foregoing **Motion for Judgment as a Matter of Law** was hand delivered to all counsel of record in this case.

> /s/ Daniel J. Foster
> Daniel J. Foster (ct24975)